# *United States Court of Appeals*

**FIFTH CIRCUIT**
**OFFICE OF THE CLERK**

**LYLE W. CAYCE**
**CLERK**

**TEL. 504-310-7700**
**600 S. MAESTRI PLACE,**
**Suite 115**
**NEW ORLEANS, LA 70130**

May 10, 2019

Mr. Tony R. Moore
Western District of Louisiana, Shreveport
United States District Court
300 Fannin Street
Suite 1167
Shreveport, LA 71101-0000

          No. 18-30694    USA v. Robert Cuff
                          USDC No. 5:14-CV-3384

Dear Mr. Moore,

Enclosed is a copy of the judgment issued as the mandate.

                         Sincerely,

                         LYLE W. CAYCE, Clerk

                         *Shea E. Pertuit*
                         By:
                         Shea E. Pertuit, Deputy Clerk
                         504-310-7666

cc w/encl:
     Ms. Carol Mignonne Griffing
     Mr. Michael Robert Levine
     Ms. Cristina Walker
     Mr. John Luke Walker

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE FIFTH CIRCUIT

———————

No. 18-30694

———————

UNITED STATES OF AMERICA,

Plaintiff-Appellee

v.

ROBERT CUFF, also known as DD0040, also known as Slapalot, also known as Robert E. Cuff,

Defendant-Appellant

———————

Appeal from the United States District Court
for the Western District of Louisiana

———————

O R D E R:

Robert Cuff, now federal prisoner # 80239-280, represented by counsel, has applied for a certificate of appealability (COA) for an appeal from the denial of his motion under 28 U.S.C. § 2255 and his motion to alter or amend the order denying the § 2255 motion. He wishes to challenge his conviction of engaging in a child exploitation enterprise. Cuff's motions for leave to file a supplemental brief and for leave to file a corrected brief are DENIED.

Federal courts must determine whether jurisdiction exists over an appeal. *Crone v. Cockrell*, 324 F.3d 833, 836 (5th Cir. 2003). Filing a timely notice of appeal within 60 days of the entry of judgment when the United States is a party is a jurisdictional prerequisite. 28 U.S.C. § 2107(b); *Hamer v. Neighborhood Hous. Servs.*, 138 S. Ct. 13, 16-17, 20 (2017). The district court's

order denying § 2255 relief was entered on March 14, 2018, and Cuff did not file a notice of appeal until June 1, 2018. Because the notice of appeal was not filed within 60 days, we lack jurisdiction unless there was a reason the appeal period was extended.

Cuff timely filed a motion pursuant to Federal Rule of Civil Procedure 59(e), which could extend the time for filing a notice of appeal until the entry of an order disposing of the motion. *See* FED. R. APP. P. 4(a)(4)(A)(iv). However, a Rule 59(e) motion that attacks a federal court's previous resolution of the claims on the merits is construed as a successive § 2255 motion. *Williams v. Thaler*, 602 F.3d 291, 303-04 (5th Cir. 2010); *Gonzalez v. Crosby*, 545 U.S. 524, 531-32 (2005). Because Cuff's Rule 59(e) motion attacked the district court's resolution of claims raised in the original § 2255 motion, it is properly characterized as a successive § 2255 motion, which did not toll the period for timely filing a notice of appeal. FED. R. APP. P. 4(a)(4)(A); *see Uranga v. Davis*, 893 F.3d 282, 284 (5th Cir. 2018); *see also Williams*, 602 F.3d at 303-04. Thus, the notice of appeal was untimely as to the district court's order denying § 2255 relief, and this court lacks jurisdiction to consider that order.

Although the notice of appeal is timely as to the order denying the Rule 59(e) motion, that motion has been construed as a successive § 2255 motion and Cuff did not obtain authorization from this court prior to filing it in the district court. Accordingly, the district court lacked jurisdiction and this court lacks appellate jurisdiction to consider the merits of the district court's order denying relief. *See* 28 U.S.C. §§ 2255(h), 2244(b)(3)(A); *Crone*, 324 F.3d at 836-38; *United States v. Key*, 205 F.3d 773, 774 (5th Cir. 2000). The motion for a COA is DENIED.

/s/ James L. Dennis

_____

JAMES L. DENNIS
UNITED STATES CIRCUIT JUDGE

1   Stephen R. Hormel
2   Hormel Law Office, L.L.C.
    421 West 1st Avenue
3   Spokane, Washington 99201
    Telephone: (509) 926-5177
4   Facsimile: (509) 926-4318
5

6                  UNITED STATES DISTRICT COURT
7                  WESTERN DISTRICT OF LOUISIANA
                              (Shreveport)
8

9   UNITED STATES OF AMERICA,        )
10                                    )
                                      )
11           Plaintiff,               )        5:11-CR-00062-SMH-MLH-21
                                      )
12   vs.                             )         MOTION TO VACATE, SET ASIDE
                                      )         OR CORRECT THE SENTENCE
13   ROBERT CUFF,                     )         PURSUANT TO 28 U.S.C. § 2255
                                      )
14                                    )
             Defendant/Movant.        )
15   _____)

16          MOVANT, ROBERT CUFF, through counsel, STEPHEN R. HORMEL for
17
18   Hormel Law Office, L.L.C., moves the Court to Vacate, Set Aside or Correct the
19   Sentence Pursuant to 28 U.S.C. § 2255, based on the following, and further
20   supported by declarations, documents and reports, filed herewith and filed under
21
22   seal, and also supported by the Memorandum in Support of Motion to Vacate, Set
23   Aside or Correct the Sentence Pursuant to 28 U.S.C. § 2255.  Under seal
24   documents will be served upon the government electronically.
25
26
27   Motion to Vacate, Set Aside
     or Correct the Sentence

                                          1

MOTION UNDER 28 U.S.C. § 2255 TO VACATE, SET ASIDE, OR CORRECT
SENTENCE BY A PERSON IN FEDERAL CUSTODY

| United States District Court | District   Louisiana Western (Shreveport) |
|---|---|
| Name (under which you were convicted):<br>Robert Cuff, aka, DD0040, aka, Slapalot | Docket or Case No.:<br>5:11-CR-00062-21 |
| Place of Confinement:<br>Butner FMC | Prisoner No.:<br>80239-280 |
| UNITED STATES OF AMERICA<br><br>v. | Movant (include name under which you were convicted)<br><br>Robert Cuff (Movant) |

### MOTION

1. (a) Name and location of court that entered the judgment of conviction you are challenging:

   United States District Court for the Western District of Louisiana, Shreveport Division


   (b) Criminal docket or case number (if you know):  5:11-CR-00062-21

2. (a) Date of the judgment of conviction (if you know):  12/1/2011


   (b) Date of sentencing:  7/13/2012

3. Length of sentence:  Life

4. Nature of crime (all counts):

   Engaging in a Child Exploitation Enterprise




5. (a) What was your plea? (Check one)

   (1)    Not guilty ❑           (2)    Guilty ☑           (3)    Nolo contendere (no contest) ❑

   (b) If you entered a guilty plea to one count or indictment, and a not guilty plea to another count
   or indictment, what did you plead guilty to and what did you plead not guilty to?

   Pleaded Guilty to Count 1 Engaging in a Child Exploitation Enterprise and Pleaded Not Guilty to
   Count 2 Conspiracy to Advertise the Distribution of Child Pornography (Docket Report 245).



6. If you went to trial, what kind of trial did you have? (Check one)       Jury ❑       Judge only ❑

Case 5:11-cr-00062-SMH-MLH  Document 732  Filed 12/06/14  Page 3 of 17 PageID #:  3453
Case: 18-30694  Document: 58  Page: 7  Date Filed: 05/22/2019

Page 3

7.  Did you testify at a pretrial hearing, trial, or post-trial hearing?     Yes ❑     No ☑

8.  Did you appeal from the judgment of conviction?     Yes ☑     No ❑

9.  If you did appeal, answer the following:

   (a) Name of court:  Fifth Circuit Court of Appeals

   (b) Docket or case number (if you know):  12-30765

   (c) Result:  Affirmed

   (d) Date of result (if you know):  8/7/2013

   (e) Citation to the case (if you know):  United States v. Cuff, 538 Fed.Appx. 411 (5th Cir. 2013).

   (f) Grounds raised:

   1.  Whether the guilty plea was made knowingly, voluntarily and intelligently in light of Movant's
   Post-Traumatic Stress Disorder and other mental conditions learned of after the plea hearing.
   2.  Whether the district court's failure to inform Movant of all consequences of his plea, including the
   failure to advise Movant of sex offender registration requirement, invalidated his guilty plea.
   3.  Whether there was an inadequate factual basis to support the plea of guilty.
   4.  Whether the district court erred in not allowing Movant to withdraw from his guilty plea based on
   "fair and just reasons."

   (g) Did you file a petition for certiorari in the United States Supreme Court?     Yes ☑  No ❑

      If "Yes," answer the following:

      (1) Docket or case number (if you know):  13-7299

      (2) Result:

      Petition for Writ of Certiorari Denied

      (3) Date of result (if you know):  12/9/2013

      (4) Citation to the case (if you know):  134 S.Ct. 807 (2013)

      (5) Grounds raised:

      The issue presented asked whether the seven factor standard for permiting a criminal
      defendant to withdraw from a guilty plea before sentencing contained in the Fifth Circuit's
      decision in United States v. Carr, 740 F.2d 339 (5th Cir. 1984) "contradict the plain language of
      Federal Rule of Criminal Procedure 11(d) and the case law of [the United States Supreme
      Court] because it imposes a heightened standard."

10. Other than the direct appeals listed above, have you previously filed any other motions,
    petitions, or applications concerning this judgment of conviction in any court?
         Yes ❑   No ☑

11. If your answer to Question 10 was "Yes," give the following information:

   (a)  (1) Name of court:

        (2) Docket or case number (if you know):

        (3) Date of filing (if you know):

Case 5:11-cr-00062-SMH-MLH   Document 732   Filed 12/06/14   Page 4 of 17 PageID #:  3454
Case: 18-30694     Document: 58     Page: 8     Date Filed: 05/22/2019

Page 4

(4) Nature of the proceeding:

(5) Grounds raised:

(6) Did you receive a hearing where evidence was given on your motion, petition, or application?     Yes ❑   No ❑

(7) Result:

(8) Date of result (if you know):

(b) If you filed any second motion, petition, or application, give the same information:

    (1) Name of court:

    (2) Docket or case number (if you know):

    (3) Date of filing (if you know):

    (4) Nature of the proceeding:

    (5) Grounds raised:

    (6) Did you receive a hearing where evidence was given on your motion, petition, or application?     Yes ❑   No ❑

    (7) Result:

    (8) Date of result (if you know):

(c) Did you appeal to a federal appellate court having jurisdiction over the action taken on your motion, petition, or application?

    (1)  First petition:     Yes ❑   No ❑

    (2)  Second petition:     Yes ❑   No ❑

Case 5:11-cr-00062-SMH-MLH   Document 732   Filed 12/06/14   Page 5 of 17 PageID #:  3455
Case: 18-30694      Document: 58      Page: 9      Date Filed: 05/22/2019

Page 5

(d) If you did not appeal from the action on any motion, petition, or application, explain briefly why you did not:

12. For this motion, state every ground on which you claim that you are being held in violation of the Constitution, laws, or treaties of the United States.  Attach additional pages if you have more than four grounds.  State the facts supporting each ground.

GROUND ONE:

Breach of the Plea Agreement and vacate the guilty plea for violation of a non-prosecution clause.

(a) Supporting facts (Do not argue or cite law.  Just state the specific facts that support your claim.):

Movant executed a Plea Agreement with the Government in the Western District of Louisiana (Docket Report 387).  It contained this clause: "If the Defendant completely fulfills all of his obligations and agreements under this plea agreement, the Government agrees ... it will not prosecute the Defendant for any other offense known to the United States Attorney's Office, based on the investigation which forms the basis of the Second Superseding Indictment."  The investigation lead to the siezure of videos produced in the Western District of Texas.  The videos were used to support a five (5) level increase in Movant's offense level in this case.  The trial court sentenced Movant to life in prison based the videos.  Trial counsel relied on the non-prosecution clause to advise Movant to plead gulity believing the Government in this case, and in Texas, would not charge Movant with federal offenses relating to the videos.  Unbeknownst to Movant and his counsel, thirteen days after Movant pleaded guilty, the Government in the Western District of Texas obtained an under seal Indictment (11-CR-3016) charging Movant with offenses relating to the videos. Had trial counsel known of the Government's intent to charge Movant in Texas, trial counsel would have advised Movant against pleading guilty in Louisiana.  Had trial counsel learned of the Texas charges before the sentencing hearing, he would have moved to withdraw from, and to vacate, the guilty plea. The guilty plea should be vacated due to the Government's breach of the non-prosecution clause in the Plea Agreement.

(b) **Direct Appeal of Ground One:**

(1) If you appealed from the judgment of conviction, did you raise this issue?

Yes ❑     No ☑

(2) If you did not raise this issue in your direct appeal, explain why:

This issue requires developing facts outside the trial court record and would be properly raised in post-conviction proceedings.

(c) **Post-Conviction Proceedings:**

(1) Did you raise this issue in any post-conviction motion, petition, or application?

Yes ❑     No ☑

(2) If your answer to Question (c)(1) is "Yes," state:

Type of motion or petition:

Name and location of the court where the motion or petition was filed:

Case 5:11-cr-00062-SMH-MLH  Document 732  Filed 12/06/14  Page 6 of 17 PageID #:  3456
Case: 18-30694     Document: 58     Page: 10     Date Filed: 05/22/2019

Page 6

Docket or case number (if you know):

Date of the court's decision:

Result (attach a copy of the court's opinion or order, if available):


(3) Did you receive a hearing on your motion, petition, or application?

    Yes ❑   No ❑

(4) Did you appeal from the denial of your motion, petition, or application?

    Yes ❑   No ❑

(5) If your answer to Question (c)(4) is "Yes," did you raise this issue in the appeal?

    Yes ❑   No ❑

(6) If your answer to Question (c)(4) is "Yes," state:

Name and location of the court where the appeal was filed:


Docket or case number (if you know):

Date of the court's decision:

Result (attach a copy of the court's opinion or order, if available):


(7) If your answer to Question (c)(4) or Question (c)(5) is "No," explain why you did not appeal or raise this issue:




**GROUND TWO:**

Ineffective assistance of trial counsel for failure to move for competency review under 18 U.S.C. 4241.

(a)  Supporting facts (Do not argue or cite law.  Just state the specific facts that support your claim.):

Trial counsel knew prior to the guilty plea hearing on December 1, 2011 that Movant suffered from Post Traumatic Stress Disorder and Depresssion.  After the guilty plea hearing, trial counsel obtained additional information that Movant's judgment and insight were impaired.  Trial counsel continued to receive even more information that Movant was suffering from headaches, a lack of concentration, impaired intellectual functioning and dizziness prior to sentencing.  Experts conducting interviews of Movant and who observed Movant's behavior reported to trial counsel, between the time of the guilty plea hearing and the sentencing hearing on July 13, 2012, information that established that Movant's mental condition continually declined.  In May 2012, just two months prior to the sentencing hearing, Movant was hospitalized due to a seizure of unknown origin and Movant was unresponsive at the time of his hospitalization.  After the hospitalization, Dr. Nevin, an expert in neurotoxicity, reviewed Movant's medical records.  From his review, Dr. Nevin concluded that Movant suffered from brain damage due to neurotoxicity from ingesting an antimalarial medication, mefloquine, while in the military.  Due to Movant's mental impairments and his ongoing declining mental condition, trial counsel should have sought a review of Movant's competency to understand the proceedings and to assist counsel in his defense prior to the sentencing hearing.  Trial counsel's failure to seek a competency review pursuant to 18 U.S.C. 4241, prior to the sentencing hearing, constitutes ineffective assistance of counsel and prejudiced Movant's defense.

Case 5:11-cr-00062-SMH-MLH   Document 732   Filed 12/06/14   Page 7 of 17 PageID #: 3457
Case: 18-30694      Document: 58      Page: 11      Date Filed: 05/22/2019

Page 7

(b) **Direct Appeal of Ground Two:**

    (1) If you appealed from the judgment of conviction, did you raise this issue?

        Yes ☐   No ☑

    (2) If you did not raise this issue in your direct appeal, explain why:

    This is a claim of ineffective assistance of counsel properly raised in post-conviction proceedings.

(c) **Post-Conviction Proceedings:**

    (1) Did you raise this issue in any post-conviction motion, petition, or application?

        Yes ☐   No ☑

    (2) If your answer to Question (c)(1) is "Yes," state:

    Type of motion or petition:

    Name and location of the court where the motion or petition was filed:

    Docket or case number (if you know):

    Date of the court's decision:

    Result (attach a copy of the court's opinion or order, if available):

    (3) Did you receive a hearing on your motion, petition, or application?

        Yes ☐   No ☐

    (4) Did you appeal from the denial of your motion, petition, or application?

        Yes ☐   No ☐

    (5) If your answer to Question (c)(4) is "Yes," did you raise this issue in the appeal?

        Yes ☐   No ☐

    (6) If your answer to Question (c)(4) is "Yes," state:

    Name and location of the court where the appeal was filed:

    Docket or case number (if you know):

    Date of the court's decision:

    Result (attach a copy of the court's opinion or order, if available):

Case 5:11-cr-00062-SMH-MLH Document 732 Filed 12/06/14 Page 8 of 17 PageID #: 3458
Case: 18-30694     Document: 58     Page: 12     Date Filed: 05/22/2019

Page 8

(7) If your answer to Question (c)(4) or Question (c)(5) is "No," explain why you did not appeal or raise this issue:

**GROUND THREE:**

Trial counsel was ineffective for failure to investigate insanity or involuntary intoxication defenses.

(a)  Supporting facts (Do not argue or cite law.  Just state the specific facts that support your claim.):

Movant's criminal conduct in this case is aberrant and out of character considering his twenty-eight year military career, having achieved the highest rank for an enlistee in the Navy, Chief Master Petty Officer.  Movant had no prior criminal history and no brushes with the law prior to these proceedings. Before Movant pleaded guilty, trial counsel learned that Movant suffered from mental diseases or defects, namely post-traumatic stress disorder and depression.  During the course of the proceedings, counsel eventually learned that Movant likely suffered from ongoing brain damage caused by neurotoxicity from taking a prescribed medication, mefloquine, an anitmalarial medication, while serving various tours of duty in the Navy.  Trial counsel advised Movant to enter a Plea Agreement and plead guilty within one month from Movant's arraignment.  Prior to advising Movant to enter a guilty plea, trial counsel failed to investigate the presence of any mental defenses, including an insanity defense, diminished capacity or an involuntary intoxication defense.  Defense counsel's failure to investigate the existence of any mental defenses prior to advising his client to enter a guilty plea constitutes ineffective assistance of counsel and prejudiced Movant's defense.

(b) **Direct Appeal of Ground Three:**

(1) If you appealed from the judgment of conviction, did you raise this issue?

Yes ❑  No ☑

(2) If you did not raise this issue in your direct appeal, explain why:

This is a claim of ineffective assistance of counsel properly raised in post-conviction proceedings.

(c) **Post-Conviction Proceedings:**

(1) Did you raise this issue in any post-conviction motion, petition, or application?

Yes ❑  No ☑

(2) If your answer to Question (c)(1) is "Yes," state:

Type of motion or petition:

Name and location of the court where the motion or petition was filed:

Docket or case number (if you know):

Date of the court's decision:

Case 5:11-cr-00062-SMH-MLH   Document 732   Filed 12/06/14   Page 9 of 17 PageID #:  3459
Case: 18-30694      Document: 58      Page: 13      Date Filed: 05/22/2019

Page 9

Result (attach a copy of the court's opinion or order, if available):


(3) Did you receive a hearing on your motion, petition, or application?

   Yes ❑  No ❑

(4) Did you appeal from the denial of your motion, petition, or application?

   Yes ❑  No ❑

(5) If your answer to Question (c)(4) is "Yes," did you raise this issue in the appeal?

   Yes ❑  No ❑

(6) If your answer to Question (c)(4) is "Yes," state:

Name and location of the court where the appeal was filed:


Docket or case number (if you know):

Date of the court's decision:

Result (attach a copy of the court's opinion or order, if available):



(7) If your answer to Question (c)(4) or Question (c)(5) is "No," explain why you did not appeal or raise this issue:




**GROUND FOUR:**

 Trial counsel's failure to conduct an investigation constitutes ineffective assistance.

(a)  Supporting facts (Do not argue or cite law.  Just state the specific facts that support your claim.):

Count 1 of the Second Superceding Indictment alleges that Movant was a member of a Child Exploitation Enterprise (Docket Report 245).  In particular, this indictment alleges that Movant used the name "slapalot" on three occasions in October 2009 to "knowingly publish on the Dreamboard Internet Bulletin Board an advertisement offering to distribute" child pornography (Docket Report 245 at 13). Trial counsel failed to conduct an investigation to determine if the Government could prove a nexus between the three October 2009 Dreamboard posts and Movant.  Trial counsel did not conduct any investigation as to the location of the IP Addresses used to access Dreamboard with the username "slapalot" for the three October 2009 posts.  No investigation was conducted to identify other individuals who may have accessed the Dreamboard using the name "slapalot" in October 2009.  An investigation would have revealed that the user name "slapalot" was not a name unique to Movant, nor was it unique to any one person.  The user name "slapalot" was used by different individuals.  The Government's proof that Movant accessed Dreamboard using the name "slapalot" in October 2009 is speculative. Trial counsel's failure to investigate the IP Address locations used to post the three advertisements on Dreamboard with user name "slapalot" in October 2009, constitutes ineffective assistance of counsel and prejudiced Movant's defense.

Case 5:11-cr-00062-SMH-MLH   Document 732   Filed 12/06/14   Page 10 of 17 PageID #:  3460
Case: 18-30694     Document: 58     Page: 14     Date Filed: 05/22/2019

Page 10

(b)  **Direct Appeal of Ground Four:**

    (1) If you appealed from the judgment of conviction, did you raise this issue?

        Yes ❑  No ☑

    (2) If you did not raise this issue in your direct appeal, explain why:

    This is a claim of ineffective assistance of counsel properly raised by post-conviction proceedings.

(c) **Post-Conviction Proceedings:**

    (1) Did you raise this issue in any post-conviction motion, petition, or application?

        Yes ❑  No ☑

    (2) If your answer to Question (c)(1) is "Yes," state:

    Type of motion or petition:

    Name and location of the court where the motion or petition was filed:

    Docket or case number (if you know):

    Date of the court's decision:

    Result (attach a copy of the court's opinion or order, if available):

    (3) Did you receive a hearing on your motion, petition, or application?

        Yes ❑  No ❑

    (4) Did you appeal from the denial of your motion, petition, or application?

        Yes ❑  No ❑

    (5) If your answer to Question (c)(4) is "Yes," did you raise this issue in the appeal?

        Yes ❑  No ❑

    (6) If your answer to Question (c)(4) is "Yes," state:

    Name and location of the court where the appeal was filed:

    Docket or case number (if you know):

    Date of the court's decision:

    Result (attach a copy of the court's opinion or order, if available):

Case 5:11-cr-00062-SMH-MLH   Document 732   Filed 12/06/14   Page 11 of 17 PageID #:  3461
Case: 18-30694      Document: 58      Page: 15      Date Filed: 05/22/2019

Page 11

(7) If your answer to Question (c)(4) or Question (c)(5) is "No," explain why you did not appeal or raise this issue:

13. Is there any ground in this motion that you have <u>not</u> previously presented in some federal court?

If so, which ground or grounds have not been presented, and state your reasons for not presenting them:

Ground One was not presented in any federal court.  This ground requires development of evidence outside the trial record for support.  Ground Two, Three and Four have not been presented in any federal court.  These grounds involve a claim of ineffective assistance of counsel that are usually developed and raised in post-conviction proceedings.  Ground Five was raised indirectly on direct appeal to the Fifth Circuit, under a plain error standard, but was not raised specifically in the manner raised here which includes a claim of ineffective assistance of counsel.  Ground Six was not raised in any other federal court and involves a claim of ineffective assistance of counsel that are usually developed and raised in post-conviction proceedings.

14. Do you have any motion, petition, or appeal <u>now pending</u> (filed and not decided yet) in any court for the judgment you are challenging?      Yes ❑   No ☑

If "Yes," state the name and location of the court, the docket or case number, the type of proceeding, and the issues raised.

15. Give the name and address, if known, of each attorney who represented you in the following stages of the judgment you are challenging:

(a) At preliminary hearing:

  Stephen P. Karns, 6116 N. Central Expy., Ste 45, Dallas, TX 75206.

(b) At arraignment and plea:

  Stephen P. Karns, 6116 N. Central Expy., Ste 45, Dallas, TX 75206.

(c) At trial:

(d) At sentencing:

  Stephen P. Karns, 6116 N. Central Expy., Ste 45, Dallas, TX 75206; Eric H. Schweitzer, 620 DeWitt Ave., Ste 102, Clovis CA 93612.

Case 5:11-cr-00062-SMH-MLH   Document 732   Filed 12/06/14   Page 12 of 17 PageID #:  3462
Case: 18-30694     Document: 58     Page: 16     Date Filed: 05/22/2019

Page 12

(e) On appeal:

 Sara Johnson, & Herbert Larson,  700 Camp Street, New Orleans, 70130.

(f) In any post-conviction proceeding:


(g) On appeal from any ruling against you in a post-conviction proceeding:


16. Were you sentenced on more than one count of an indictment, or on more than one indictment, in the same court and at the same time?      Yes ❏ No ☑

17. Do you have any future sentence to serve after you complete the sentence for the judgment that you are challenging?      Yes ❏ No ☑

(a)  If so, give name and location of court that imposed the other sentence you will serve in the future:


(b) Give the date the other sentence was imposed:

(c) Give the length of the other sentence:

(d) Have you filed, or do you plan to file, any motion, petition, or application that challenges the judgment or sentence to be served in the future?    Yes ❏   No ❏

Case 5:11-cr-00062-SMH-MLH   Document 732   Filed 12/06/14   Page 13 of 17 PageID #:  3463
Case: 18-30694      Document: 58      Page: 17      Date Filed: 05/22/2019

Page 13

18. TIMELINESS OF MOTION: If your judgment of conviction became final over one year ago, you must explain why the one-year statute of limitations as contained in 28 U.S.C. § 2255 does not bar your motion.*

---

\* The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") as contained in 28 U.S.C. § 2255, paragraph 6, provides in part that:

A one-year period of limitation shall apply to a motion under this section.  The limitation period shall run from the latest of —

(1) the date on which the judgment of conviction became final;

(2) the date on which the impediment to making a motion created by governmental action in violation of the Constitution or laws of the United States is removed, if the movant was prevented from making such a motion by such governmental action;

(3) the date on which the right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

(4) the date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence.

Case 5:11-cr-00062-SMH-MLH   Document 732   Filed 12/06/14   Page 14 of 17 PageID #:  3464
Case: 18-30694     Document: 58     Page: 18     Date Filed: 05/22/2019

Page 14

Therefore, movant asks that the Court grant the following relief:

To order the Government to respond to said motion, to grant an evidentiary hearing. Thereafter, vacate and set aside Movant's conviction and/or vacate, set aside or correct Movant's sentence.

or any other relief to which movant may be entitled.

<u>s/Stephen R. Hormel, Pro Hac Vice</u>

Signature of Attorney (if any)

I declare (or certify, verify, or state) under penalty of perjury that the foregoing is true and correct and that this Motion under 28 U.S.C. § 2255 was placed in the prison mailing system on

(month, date, year).

Executed (signed) on _____12/6/2014_____ (date).

_____

Signature of Movant

If the person signing is not movant, state relationship to movant and explain why movant is not signing this motion.

Movant is housed in Butner FMC currently undergoing competency restoration efforts from his pending federal proceedings in the Western District of Texas.  This counsel was retained by family to represent Movant in post-conviction proceedings, and was authorized by this Court to represent Movant, Pro Hac Vice, without sponsorhsip.  (Docket Report 726).  Counsel certifies that it would have been impracticable to obtain Movant's signature due to the distance needed to travel, the need to meet the Court's deadline, and considering that Movant has been found incompetent in Texas.

**GROUND FIVE:**

Movant's conviction for Engaging in a Child Exploitation Enterprise under 18 U.S.C. § 2252A(g) is constitutionally defective for lacking a *mens rea* element requiring the prosecution to prove that Movant *knowingly* acted in concert with three or more persons, and alternatively, trial counsel was ineffective for failing to raise the *mens rea* element in Movant's defense.

    a. <u>Facts</u>: The relevant portion of the Indictment relating to Engaging in a Child Exploitation Enterprise alleges: "[t]he child exploitation enterprise and the members therein, *in concert with three or more persons*, engaged in a series of felony violations of Title 18 United States Code, Section 2251(d)(1), that is, advertising the display and/or distribution of child pornography...." (Docket Report 245 at 6). The Indictment did not allege that Movant had to *knowingly* act in concert with three of more persons. Movant was not apprised at his guilty plea hearing that he was required to *knowingly* act in concert with three or more persons. (Docket Report 453 at 10-11). The factual basis of the plea did not set out facts that supported Movant *knowingly* acted in concert with three or more persons. In fact, the factual basis of the plea referred simply to a single "creator/administrator." (Docket Report 387-2). The Indictment is constitutionally defective for failure to contain a *mens rea* element that to violate that 18 U.S.C. § 2252A(g) a person must *knowingly* act in concert with three or more persons. The Indictment does not inform Movant of that element. The district court did not inform Movant of that element at the guilty plea hearing, and the factual basis of the plea fails to contain sufficient facts to demonstrate Movant *knowingly* acted in concert with three or more persons. The Supreme Court of the United States has historically required that a *mens rea* element attach to each element of a serious felony offense. Here, Movant's guilty plea and conviction are constitutionally defective for lacking the *mens rea* element and lacking in proof that Movant *knowingly* acted in concert with three or more persons, and alternatively, trial counsel was ineffective for failure to raise the lack of this *mens rea* element and prejudiced Movant's defense.

    b. <u>Direct Appeal of Ground Five</u>:

        (1)    A similar issue was raised under plain error on appeal, but not in relation to the constitutional defect for lack of a *mens rea* element as set out in this petition.

        (2)    This issue also involves a claim of ineffective assistance of counsel properly raised in post-conviction proceedings.

    c. <u>Post-Conviction Proceedings</u>

        (1)    No.

**GROUND SIX:**

Trial counsel was ineffective for failure to object to a five (5) level enhancement under 4B1.5(b) of the United States Sentencing Guidelines.

     a. <u>Facts</u>: Count 1 of the Second Superseding Indictment alleges that Movant was Engaging in a Child Pornography Enterprise. (Docket Report 245). Movant pleaded guilty to that allegations in Count 1. A factual basis to support the guilty plea was executed by Movant and the Government. (Docket Report 287-2). The district court utilized the factual basis to find Movant guilty on Count 1. (Docket Report 453 at 28-29). Neither the allegations in the Indictment, nor the factual basis for the guilty plea, establish that Movant's "instant offense of conviction [was a] sex offense committed against a minor" as required before the 5 level enhancement under U.S.S.G. 4B1.5(b) applies, according to both the commentary and background of that Guideline provision. The "instant offense of conviction" for Movant involved advertising for the distribution of child pornography which constitutes "trafficking in" child pornography. Trafficking in child pornography is excluded from operation of 4B1.5 in commentary note 2. Since the 5 level enhancement for repeat sex offenders applies only when the "instant offense of conviction" is a sex offense committed against a minor, trial counsel was ineffective for failing to object to the enhancement as set out in the Presentence Investigation Report. PSR at 8. The failure to object to this enhancement prejudiced Movant. Without the 5 level increase, the total offense level would have been level 38, with a guideline range of 235 to 327 months in prison. The 5 level increase resulted in an offense level of 43 with a Guideline range of life in prison.

     b. <u>Direct Appeal Ground Six</u>:

          (1)    No.

          (2)    Explain why: this issue involves a claim of ineffective assistance of trial counsel which is properly raised on post-conviction proceedings.

     c. <u>Post-Conviction Proceedings</u>:

          (1)    No.

Dated the 6th day of December, 2014.

Respectfully Submitted,

*s/Stephen R. Hormel, Pro Hac Vice*
Washington State Bar # 18733
Sponsor Counsel Waived by Court (Docket Report 726)
Attorney for Movant
Hormel Law Office, L.L.C.
421 West 1st Avenue
Spokane, Washington 99201
Telephone: (509) 926-5177
Facsimile: (509) 926-4318
Email: steve@hormellaw.com

## CERTIFICATE OF SERVICE

I hereby certify that on December 6, 2014, I electronically filed the foregoing with the

Clerk of the Court using the CM/ECF System which will send notification of such filing to the

following: John Luke Walker and Cristina Walker, Assistant United States Attorneys.

*s/Stephen R. Hormel, Pro Hac Vice*
Washington State Bar # 18733
Sponsor Counsel Waived by Court (Docket Report 726)
Attorney for Movant
Hormel Law Office, L.L.C.
421 West 1st Avenue
Spokane, Washington 99201
Telephone: (509) 926-5177
Facsimile: (509) 926-4318
Email: steve@hormellaw.com

1  Stephen R. Hormel
2  Hormel Law Office, L.L.C.
   421 West 1st Avenue
3  Spokane, Washington 99201
   Telephone: (509) 926-5177
4  Facsimile: (509) 926-4318

5
                    UNITED STATES DISTRICT COURT
6                   WESTERN DISTRICT OF LOUISIANA
7                            (Shreveport)

8  UNITED STATES OF AMERICA,        )
9                                   )   5:11-CR-00062-SMH-MLH-21
           Plaintiff,               )
10                                  )   AMENDED MOTION TO VACATE,
11  vs.                             )   SET ASIDE OR CORRECT THE
                                    )   SENTENCE PURSUANT TO
12  ROBERT CUFF,                    )   28 U.S.C. § 2255
                                    )
13         Defendant/Movant.        )
14  _____)

15         MOVANT, ROBERT CUFF, through counsel, STEPHEN R. HORMEL for

16  Hormel Law Office, L.L.C., pursuant to LR3.2, files without leave of the Court

17  this first amendment to the Motion to the Motion to Vacate, Set Aside or Correct

18  the Sentence Pursuant to 28 U.S.C. § 2255; this Amended Motion incorporates by

19  reference the initial Motion, the supporting exhibits, and the supporting

20  Memorandum filed on December 6 and 7, 2014 (Docket Report 732 and 733

21
22  Under Seal, and 735); and adds **Ground Seven** as set forth below, and is further

23  supported by the Memorandum in Support of Amended Motion to Vacate, Set

24
25  Aside or Correct the Sentence Pursuant to 28 U.S.C. § 2255.

26
   Motion to Vacate, Set Aside
27  or Correct the Sentence

                                    1

Case 5:11-cr-00062-SMH-MLH  Document 737  Filed 12/15/14  Page 2 of 18 PageID #: 3762
Case: 18-30694      Document: 58      Page: 23      Date Filed: 05/22/2019

Page 2

## MOTION UNDER 28 U.S.C. § 2255 TO VACATE, SET ASIDE, OR CORRECT
## SENTENCE BY A PERSON IN FEDERAL CUSTODY

| United States District Court | District | Louisiana Western (Shreveport) |
| --- | --- | --- |
| Name (under which you were convicted):<br>Robert Cuff, aka, DD0040, aka, Slapalot | | Docket or Case No.:<br>5:11-CR-00062-21 |
| Place of Confinement:<br>Butner FMC | | Prisoner No.:<br>80239-280 |
| UNITED STATES OF AMERICA<br><br>v. | | Movant (include name under which you were convicted)<br>Robert Cuff (Movant) |

### MOTION

1. (a) Name and location of court that entered the judgment of conviction you are challenging:

   United States District Court for the Western District of Louisiana, Shreveport Division

   (b) Criminal docket or case number (if you know):  5:11-CR-00062-21

2. (a) Date of the judgment of conviction (if you know):  12/1/2011

   (b) Date of sentencing:  7/13/2012

3. Length of sentence:  Life

4. Nature of crime (all counts):

   Engaging in a Child Exploitation Enterprise

5. (a) What was your plea? (Check one)

   (1)   Not guilty ❑        (2)   Guilty ☑        (3)   Nolo contendere (no contest) ❑

   (b) If you entered a guilty plea to one count or indictment, and a not guilty plea to another count or indictment, what did you plead guilty to and what did you plead not guilty to?

   Pleaded Guilty to Count 1 Engaging in a Child Exploitation Enterprise and Pleaded Not Guilty to Count 2 Conspiracy to Advertise the Distribution of Child Pornography (Docket Report 245).

6. If you went to trial, what kind of trial did you have? (Check one)        Jury ❑        Judge only ❑

Case 5:11-cr-00062-SMH-MLH   Document 737   Filed 12/15/14   Page 3 of 18 PageID #:  3763
Case: 18-30694      Document: 58      Page: 24      Date Filed: 05/22/2019

Page 3

7.  Did you testify at a pretrial hearing, trial, or post-trial hearing?    Yes ☐    No ☑

8.  Did you appeal from the judgment of conviction?    Yes ☑    No ☐

9.  If you did appeal, answer the following:

(a) Name of court:   Fifth Circuit Court of Appeals

(b) Docket or case number (if you know):   12-30765

(c) Result:   Affirmed

(d) Date of result (if you know):   8/7/2013

(e) Citation to the case (if you know):   United States v. Cuff, 538 Fed.Appx. 411 (5th Cir. 2013).

(f) Grounds raised:

1.  Whether the guilty plea was made knowingly, voluntarily and intelligently in light of Movant's Post-Traumatic Stress Disorder and other mental conditions learned of after the plea hearing.
2.  Whether the district court's failure to inform Movant of all consequences of his plea, including the failure to advise Movant of sex offender registration requirement, invalidated his guilty plea.
3.  Whether there was an inadequate factual basis to support the plea of guilty.
4.  Whether the district court erred in not allowing Movant to withdraw from his guilty plea based on "fair and just reasons."

(g) Did you file a petition for certiorari in the United States Supreme Court?    Yes ☑    No ☐

If "Yes," answer the following:

(1) Docket or case number (if you know):   13-7299

(2) Result:

Petition for Writ of Certiorari Denied

(3) Date of result (if you know):   12/9/2013

(4) Citation to the case (if you know):   134 S.Ct. 807 (2013)

(5) Grounds raised:

The issue presented asked whether the seven factor standard for permiting a criminal defendant to withdraw from a guilty plea before sentencing contained in the Fifth Circuit's decision in United States v. Carr, 740 F.2d 339 (5th Cir. 1984) "contradict the plain language of Federal Rule of Criminal Procedure 11(d) and the case law of [the United States Supreme Court] because it imposes a heightened standard."

10. Other than the direct appeals listed above, have you previously filed any other motions, petitions, or applications concerning this judgment of conviction in any court?

Yes ☐    No ☑

11. If your answer to Question 10 was "Yes," give the following information:

(a)  (1) Name of court:

(2) Docket or case number (if you know):

(3) Date of filing (if you know):

Case 5:11-cr-00062-SMH-MLH   Document 737   Filed 12/15/14   Page 4 of 18 PageID #:  3764
Case: 18-30694      Document: 58      Page: 25      Date Filed: 05/22/2019

Page 4

(4) Nature of the proceeding:

(5) Grounds raised:

(6) Did you receive a hearing where evidence was given on your motion, petition, or application?     Yes ❑  No ❑

(7) Result:

(8) Date of result (if you know):

(b) If you filed any second motion, petition, or application, give the same information:

(1) Name of court:

(2) Docket or case number (if you know):

(3) Date of filing (if you know):

(4) Nature of the proceeding:

(5) Grounds raised:

(6) Did you receive a hearing where evidence was given on your motion, petition, or application?     Yes ❑    No ❑

(7) Result:

(8) Date of result (if you know):

(c) Did you appeal to a federal appellate court having jurisdiction over the action taken on your motion, petition, or application?

(1)  First petition:      Yes ❑   No ❑

(2)  Second petition:     Yes ❑   No ❑

Case 5:11-cr-00062-SMH-MLH   Document 737   Filed 12/15/14   Page 5 of 18 PageID #: 3765
Case: 18-30694     Document: 58     Page: 26     Date Filed: 05/22/2019

Page 5

(d) If you did not appeal from the action on any motion, petition, or application, explain briefly why you did not:

12. For this motion, state every ground on which you claim that you are being held in violation of the Constitution, laws, or treaties of the United States. Attach additional pages if you have more than four grounds. State the <u>facts</u> supporting each ground.

GROUND ONE:

Breach of the Plea Agreement and vacate the guilty plea for violation of a non-prosecution clause.

(a) Supporting facts (Do not argue or cite law. Just state the specific facts that support your claim.):

Movant executed a Plea Agreement with the Government in the Western District of Louisiana (Docket Report 387). It contained this clause: "If the Defendant completely fulfills all of his obligations and agreements under this plea agreement, the Government agrees ... it will not prosecute the Defendant for any other offense known to the United States Attorney's Office, based on the investigation which forms the basis of the Second Superseding Indictment." The investigation lead to the siezure of videos produced in the Western District of Texas. The videos were used to support a five (5) level increase in Movant's offense level in this case. The trial court sentenced Movant to life in prison based the videos. Trial counsel relied on the non-prosecution clause to advise Movant to plead guilty believing the Government in this case, and in Texas, would not charge Movant with federal offenses relating to the videos. Unbeknownst to Movant and his counsel, thirteen days after Movant pleaded guilty, the Government in the Western District of Texas obtained an under seal Indictment (11-CR-3016) charging Movant with offenses relating to the videos. Had trial counsel known of the Government's intent to charge Movant in Texas, trial counsel would have advised Movant against pleading guilty in Louisiana. Had trial counsel learned of the Texas charges before the sentencing hearing, he would have moved to withdraw from, and to vacate, the guilty plea. The guilty plea should be vacated due to the Government's breach of the non-prosecution clause in the Plea Agreement.

(b) **Direct Appeal of Ground One:**

(1) If you appealed from the judgment of conviction, did you raise this issue?

Yes ❏     No ☑

(2) If you did not raise this issue in your direct appeal, explain why:

This issue requires developing facts outside the trial court record and would be properly raised in post-conviction proceedings.

(c) **Post-Conviction Proceedings:**

(1) Did you raise this issue in any post-conviction motion, petition, or application?

Yes ❏     No ☑

(2) If your answer to Question (c)(1) is "Yes," state:

Type of motion or petition:

Name and location of the court where the motion or petition was filed:

Case 5:11-cr-00062-SMH-MLH  Document 737  Filed 12/15/14  Page 6 of 18 PageID #: 3766
Case: 18-30694     Document: 58     Page: 27     Date Filed: 05/22/2019

Page 6

Docket or case number (if you know):

Date of the court's decision:

Result (attach a copy of the court's opinion or order, if available):

(3) Did you receive a hearing on your motion, petition, or application?

    Yes ❏   No ❏

(4) Did you appeal from the denial of your motion, petition, or application?

    Yes ❏   No ❏

(5) If your answer to Question (c)(4) is "Yes," did you raise this issue in the appeal?

    Yes ❏   No ❏

(6) If your answer to Question (c)(4) is "Yes," state:

Name and location of the court where the appeal was filed:

Docket or case number (if you know):

Date of the court's decision:

Result (attach a copy of the court's opinion or order, if available):

(7) If your answer to Question (c)(4) or Question (c)(5) is "No," explain why you did not appeal or raise this issue:

**GROUND TWO**:

  Ineffective assistance of trial counsel for failure to move for competency review under 18 U.S.C. 4241.

(a)  Supporting facts (Do not argue or cite law.  Just state the specific facts that support your claim.):

Trial counsel knew prior to the guilty plea hearing on December 1, 2011 that Movant suffered from Post Traumatic Stress Disorder and Depresssion.  After the guilty plea hearing, trial counsel obtained additional information that Movant's judgment and insight were impaired.  Trial counsel continued to receive even more information that Movant was suffering from headaches, a lack of concentration, impaired intellectual functioning and dizziness prior to sentencing.  Experts conducting interviews of Movant and who observed Movant's behavior reported to trial counsel, between the time of the guilty plea hearing and the sentencing hearing on July 13, 2012, information that established that Movant's mental condition continually declined.  In May 2012, just two months prior to the sentencing hearing, Movant was hospitalized due to a seizure of unknown origin and Movant was unresponsive at the time of his hospitalization.  After the hospitalization, Dr. Nevin, an expert in neurotoxicity, reviewed Movant's medical records.  From his review, Dr. Nevin concluded that Movant suffered from brain damage due to neurotoxicity from ingesting an antimalarial medication, mefloquine, while in the military.  Due to Movant's mental impairments and his ongoing declining mental condition, trial counsel should have sought a review of Movant's competency to understand the proceedings and to assist counsel in his defense prior to the sentencing hearing.  Trial counsel's failure to seek a competency review pursuant to 18 U.S.C. 4241, prior to the sentencing hearing, constitutes ineffective assistance of counsel and prejudiced Movant's defense.

Case 5:11-cr-00062-SMH-MLH Document 737 Filed 12/15/14 Page 7 of 18 PageID #: 3767
Case: 18-30694    Document: 58    Page: 28    Date Filed: 05/22/2019

Page 7

(b) **Direct Appeal of Ground Two:**

    (1) If you appealed from the judgment of conviction, did you raise this issue?

        Yes ❏   No ☑

    (2) If you did not raise this issue in your direct appeal, explain why:

    This is a claim of ineffective assistance of counsel properly raised in post-conviction proceedings.

(c) **Post-Conviction Proceedings:**

    (1) Did you raise this issue in any post-conviction motion, petition, or application?

        Yes ❏   No ☑

    (2) If your answer to Question (c)(1) is "Yes," state:

    Type of motion or petition:

    Name and location of the court where the motion or petition was filed:

    Docket or case number (if you know):

    Date of the court's decision:

    Result (attach a copy of the court's opinion or order, if available):

    (3) Did you receive a hearing on your motion, petition, or application?

        Yes ❏   No ❏

    (4) Did you appeal from the denial of your motion, petition, or application?

        Yes ❏   No ❏

    (5) If your answer to Question (c)(4) is "Yes," did you raise this issue in the appeal?

        Yes ❏   No ❏

    (6) If your answer to Question (c)(4) is "Yes," state:

    Name and location of the court where the appeal was filed:

    Docket or case number (if you know):

    Date of the court's decision:

    Result (attach a copy of the court's opinion or order, if available):

Case 5:11-cr-00062-SMH-MLH  Document 737  Filed 12/15/14  Page 8 of 18 PageID #:  3768
Case: 18-30694    Document: 58    Page: 29    Date Filed: 05/22/2019

Page 8

(7) If your answer to Question (c)(4) or Question (c)(5) is "No," explain why you did not appeal or raise this issue:

## GROUND THREE:

Trial counsel was ineffective for failure to investigate insanity or involuntary intoxication defenses.

(a)  Supporting facts (Do not argue or cite law.  Just state the specific facts that support your claim.):

Movant's criminal conduct in this case is aberrant and out of character considering his twenty-eight year military career, having achieved the highest rank for an enlistee in the Navy, Chief Master Petty Officer.  Movant had no prior criminal history and no brushes with the law prior to these proceedings. Before Movant pleaded guilty, trial counsel learned that Movant suffered from mental diseases or defects, namely post-traumatic stress disorder and depression.  During the course of the proceedings, counsel eventually learned that Movant likely suffered from ongoing brain damage caused by neurotoxicity from taking a prescribed medication, mefloquine, an anitmalarial medication, while serving various tours of duty in the Navy.  Trial counsel advised Movant to enter a Plea Agreement and plead guilty within one month from Movant's arraignment.  Prior to advising Movant to enter a guilty plea, trial counsel failed to investigate the presence of any mental defenses, including an insanity defense, diminished capacity or an involuntary intoxication defense.  Defense counsel's failure to investigate the existence of any mental defenses prior to advising his client to enter a guilty plea constitutes ineffective assistance of counsel and prejudiced Movant's defense.

(b) **Direct Appeal of Ground Three:**

(1) If you appealed from the judgment of conviction, did you raise this issue?

Yes ❑    No ☑

(2) If you did not raise this issue in your direct appeal, explain why:

This is a claim of ineffective assistance of counsel properly raised in post-conviction proceedings.

(c) **Post-Conviction Proceedings:**

(1) Did you raise this issue in any post-conviction motion, petition, or application?

Yes ❑    No ☑

(2) If your answer to Question (c)(1) is "Yes," state:

Type of motion or petition:

Name and location of the court where the motion or petition was filed:

Docket or case number (if you know):

Date of the court's decision:

Case 5:11-cr-00062-SMH-MLH   Document 737   Filed 12/15/14   Page 9 of 18 PageID #:  3769
Case: 18-30694      Document: 58      Page: 30      Date Filed: 05/22/2019

Page 9

Result (attach a copy of the court's opinion or order, if available):

(3) Did you receive a hearing on your motion, petition, or application?

    Yes ❑   No ❑

(4) Did you appeal from the denial of your motion, petition, or application?

    Yes ❑   No ❑

(5) If your answer to Question (c)(4) is "Yes," did you raise this issue in the appeal?

    Yes ❑   No ❑

(6) If your answer to Question (c)(4) is "Yes," state:

Name and location of the court where the appeal was filed:

Docket or case number (if you know):

Date of the court's decision:

Result (attach a copy of the court's opinion or order, if available):

(7) If your answer to Question (c)(4) or Question (c)(5) is "No," explain why you did not appeal or raise this issue:

**GROUND FOUR:**

 Trial counsel's failure to conduct an investigation constitutes ineffective assistance.

(a)  Supporting facts (Do not argue or cite law.  Just state the specific facts that support your claim.):

Count 1 of the Second Superceding Indictment alleges that Movant was a member of a Child Exploitation Enterprise (Docket Report 245).  In particular, this indictment alleges that Movant used the name "slapalot" on three occasions in October 2009 to "knowingly publish on the Dreamboard Internet Bulletin Board an advertisement offering to distribute" child pornography (Docket Report 245 at 13). Trial counsel failed to conduct an investigation to determine if the Government could prove a nexus between the three October 2009 Dreamboard posts and Movant.  Trial counsel did not conduct any investigation as to the location of the IP Addresses used to access Dreamboard with the username "slapalot" for the three October 2009 posts.  No investigation was conducted to identify other individuals who may have accessed the Dreamboard using the name "slapalot" in October 2009.  An investigation would have revealed that the user name "slapalot" was not a name unique to Movant, nor was it unique to any one person.  The user name "slapalot" was used by different individuals.  The Government's proof that Movant accessed Dreamboard using the name "slapalot" in October 2009 is speculative. Trial counsel's failure to investigate the IP Address locations used to post the three advertisements on Dreamboard with user name "slapalot" in October 2009, constitutes ineffective assistance of counsel and prejudiced Movant's defense.

Case 5:11-cr-00062-SMH-MLH   Document 737   Filed 12/15/14   Page 10 of 18 PageID #:  3770
Case: 18-30694      Document: 58      Page: 31      Date Filed: 05/22/2019

Page 10

(b)  **Direct Appeal of Ground Four:**

    (1) If you appealed from the judgment of conviction, did you raise this issue?

        Yes ☐ No ☑

    (2) If you did not raise this issue in your direct appeal, explain why:

    This is a claim of ineffective assistance of counsel properly raised by post-conviction proceedings.

(c) **Post-Conviction Proceedings:**

    (1) Did you raise this issue in any post-conviction motion, petition, or application?

        Yes ☐ No ☑

    (2) If your answer to Question (c)(1) is "Yes," state:

    Type of motion or petition:

    Name and location of the court where the motion or petition was filed:

    Docket or case number (if you know):

    Date of the court's decision:

    Result (attach a copy of the court's opinion or order, if available):

    (3) Did you receive a hearing on your motion, petition, or application?

        Yes ☐    No ☐

    (4) Did you appeal from the denial of your motion, petition, or application?

        Yes ☐    No ☐

    (5) If your answer to Question (c)(4) is "Yes," did you raise this issue in the appeal?

        Yes ☐    No ☐

    (6) If your answer to Question (c)(4) is "Yes," state:

    Name and location of the court where the appeal was filed:

    Docket or case number (if you know):

    Date of the court's decision:

    Result (attach a copy of the court's opinion or order, if available):

Case 5:11-cr-00062-SMH-MLH   Document 737   Filed 12/15/14   Page 11 of 18 PageID #:  3771
Case: 18-30694      Document: 58      Page: 32      Date Filed: 05/22/2019

Page 11

(7) If your answer to Question (c)(4) or Question (c)(5) is "No," explain why you did not appeal or raise this issue:

13. Is there any ground in this motion that you have <u>not</u> previously presented in some federal court?

If so, which ground or grounds have not been presented, and state your reasons for not

presenting them:

Ground One was not presented in any federal court.  This ground requires development of evidence outside the trial record for support.  Ground Two, Three and Four have not been presented in any federal court.  These grounds involve a claim of ineffective assistance of counsel that are usually developed and raised in post-conviction proceedings.  Ground Five was raised indirectly on direct appeal to the Fifth Circuit, under a plain error standard, but was not raised specifically in the manner raised here which includes a claim of ineffective assistance of counsel.  Ground Six and Seven were not raised in any other federal court and involves a claim of ineffective assistance of counsel that are usually developed and raised in post-conviction proceedings.

14. Do you have any motion, petition, or appeal <u>now pending</u> (filed and not decided yet) in any court

for the judgment you are challenging?        Yes ☐   No ☑

If "Yes," state the name and location of the court, the docket or case number, the type of

proceeding, and the issues raised.

15. Give the name and address, if known, of each attorney who represented you in the following

stages of the judgment you are challenging:

(a) At preliminary hearing:

  Stephen P. Karns, 6116 N. Central Expy., Ste 45, Dallas, TX 75206.

(b) At arraignment and plea:

  Stephen P. Karns, 6116 N. Central Expy., Ste 45, Dallas, TX 75206.

(c) At trial:

(d) At sentencing:

  Stephen P. Karns, 6116 N. Central Expy., Ste 45, Dallas, TX 75206; Eric H. Schweitzer, 620 DeWitt Ave., Ste 102, Clovis CA 93612.

Case 5:11-cr-00062-SMH-MLH   Document 737   Filed 12/15/14   Page 12 of 18 PageID #:  3772
Case: 18-30694     Document: 58     Page: 33     Date Filed: 05/22/2019

Page 12

(e) On appeal:

 Sara Johnson, & Herbert Larson,  700 Camp Street, New Orleans, 70130.

(f) In any post-conviction proceeding:


(g) On appeal from any ruling against you in a post-conviction proceeding:


16. Were you sentenced on more than one count of an indictment, or on more than one indictment, in the same court and at the same time?        Yes ❑ No ☑

17. Do you have any future sentence to serve after you complete the sentence for the judgment that you are challenging?        Yes ❑ No ☑

(a)  If so, give name and location of court that imposed the other sentence you will serve in the future:


(b) Give the date the other sentence was imposed:

(c) Give the length of the other sentence:

(d) Have you filed, or do you plan to file, any motion, petition, or application that challenges the judgment or sentence to be served in the future?    Yes ❑   No ❑

Case 5:11-cr-00062-SMH-MLH   Document 737   Filed 12/15/14   Page 13 of 18 PageID #:  3773
Case: 18-30694      Document: 58      Page: 34      Date Filed: 05/22/2019

Page 13

18. TIMELINESS OF MOTION: If your judgment of conviction became final over one year ago, you
must explain why the one-year statute of limitations as contained in 28 U.S.C. § 2255 does not
bar your motion.*

---

* The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") as contained in 28 U.S.C.
§ 2255, paragraph 6, provides in part that:

    A one-year period of limitation shall apply to a motion under this section.  The limitation period
shall run from the latest of —

        (1) the date on which the judgment of conviction became final;

        (2) the date on which the impediment to making a motion created by governmental action in
violation of the Constitution or laws of the United States is removed, if the movant was
prevented from making such a motion by such governmental action;

        (3) the date on which the right asserted was initially recognized by the Supreme Court, if
that right has been newly recognized by the Supreme Court and made retroactively
applicable to cases on collateral review; or

        (4) the date on which the facts supporting the claim or claims presented could have been
discovered through the exercise of due diligence.

Case 5:11-cr-00062-SMH-MLH   Document 737   Filed 12/15/14   Page 14 of 18 PageID #:  3774
Case: 18-30694      Document: 58      Page: 35      Date Filed: 05/22/2019

Page 14

Therefore, movant asks that the Court grant the following relief:

To order the Government to respond to said motion, to grant an evidentiary hearing. Thereafter, vacate and set aside Movant's conviction and/or vacate, set aside or correct Movant's sentence.

or any other relief to which movant may be entitled.

_s/Stephen R. Hormel, Pro Hac Vice_
_____
Signature of Attorney (if any)

I declare (or certify, verify, or state) under penalty of perjury that the foregoing is true and correct and that this Motion under 28 U.S.C. § 2255 was placed in the prison mailing system on _____ (month, date, year).

Executed (signed) on _____12/15/2014_____ (date).

_____
Signature of Movant

If the person signing is not movant, state relationship to movant and explain why movant is not signing this motion.

Movant is housed in Butner FMC currently undergoing competency restoration efforts from his pending federal proceedings in the Western District of Texas.  This counsel was retained by family to represent Movant in post-conviction proceedings, and was authorized by this Court to represent Movant, Pro Hac Vice, without sponsorhsip. (Docket Report 726).  Counsel certifies that it would have been impracticable to obtain Movant's signature due to the distance needed to travel, the need to meet the Court's deadline, and considering that Movant has been found incompetent in Texas.

**GROUND FIVE:**

Movant's conviction for Engaging in a Child Exploitation Enterprise under 18 U.S.C. §
2252A(g) is constitutionally defective for lacking a *mens rea* element requiring the prosecution
to prove that Movant *knowingly* acted in concert with three or more persons, and alternatively,
trial counsel was ineffective for failing to raise the *mens rea* element in Movant's defense.

    a. <u>Facts</u>: The relevant portion of the Indictment relating to Engaging in a Child
Exploitation Enterprise alleges: "[t]he child exploitation enterprise and the members therein, *in
concert with three or more persons*, engaged in a series of felony violations of Title 18 United
States Code, Section 2251(d)(1), that is, advertising the display and/or distribution of child
pornography...." (Docket Report 245 at 6). The Indictment did not allege that Movant had to
*knowingly* act in concert with three or more persons. Movant was not apprised at his guilty plea
hearing that he was required to *knowingly* act in concert with three or more persons. (Docket
Report 453 at 10-11). The factual basis of the plea did not set out facts that supported Movant
*knowingly* acted in concert with three or more persons. In fact, the factual basis of the plea
referred simply to a single "creator/administrator." (Docket Report 387-2). The Indictment is
constitutionally defective for failure to contain a *mens rea* element that to violate that 18 U.S.C.
§ 2252A(g) a person must *knowingly* act in concert with three or more persons. The Indictment
does not inform Movant of that element. The district court did not inform Movant of that
element at the guilty plea hearing, and the factual basis of the plea fails to contain sufficient facts
to demonstrate Movant *knowingly* acted in concert with three or more persons. The Supreme
Court of the United States has historically required that a *mens rea* element attach to each
element of a serious felony offense. Here, Movant's guilty plea and conviction are
constitutionally defective for lacking the *mens rea* element and lacking in proof that Movant
*knowingly* acted in concert with three or more persons, and alternatively, trial counsel was
ineffective for failure to raise the lack of this *mens rea* element and prejudiced Movant's defense.

    b. <u>Direct Appeal of Ground Five</u>:

        (1)    A similar issue was raised under plain error on appeal, but not in relation
to the constitutional defect for lack of a *mens rea* element as set out in this
petition.

        (2)    This issue also involves a claim of ineffective assistance of counsel
properly raised in post-conviction proceedings.

    c. <u>Post-Conviction Proceedings</u>

        (1)    No.

**GROUND SIX:**

Trial counsel was ineffective for failure to object to a five (5) level enhancement under 4B1.5(b) of the United States Sentencing Guidelines.

    a. <u>Facts</u>: Count 1 of the Second Superseding Indictment alleges that Movant was Engaging in a Child Pornography Enterprise. (Docket Report 245). Movant pleaded guilty to that allegations in Count 1. A factual basis to support the guilty plea was executed by Movant and the Government. (Docket Report 287-2). The district court utilized the factual basis to find Movant guilty on Count 1. (Docket Report 453 at 28-29). Neither the allegations in the Indictment, nor the factual basis for the guilty plea, establish that Movant's "instant offense of conviction [was] a sex offense committed against a minor" as required before the 5 level enhancement under U.S.S.G. 4B1.5(b) applies, according to both the commentary and background of that Guideline provision. The "instant offense of conviction" for Movant involved advertising for the distribution of child pornography which constitutes "trafficking in" child pornography. Trafficking in child pornography is excluded from operation of 4B1.5 in commentary note 2. Since the 5 level enhancement for repeat sex offenders applies only when the "instant offense of conviction" is a sex offense committed against a minor, trial counsel was ineffective for failing to object to the enhancement as set out in the Presentence Investigation Report. PSR at 8. The failure to object to this enhancement prejudiced Movant. Without the 5 level increase, the total offense level would have been level 38, with a guideline range of 235 to 327 months in prison. The 5 level increase resulted in an offense level of 43 with a Guideline range of life in prison.

    b. <u>Direct Appeal Ground Six</u>:

        (1)    No.

        (2)    Explain why: this issue involves a claim of ineffective assistance of trial counsel which is properly raised on post-conviction proceedings.

    c. <u>Post-Conviction Proceedings</u>:

        (1)    No.

**GROUND SEVEN (Added by Amendment LR3.2):**

Trial counsel was ineffective for failing to ensure that Movant fully understood at the change of plea hearing that the district court could impose a term of life in prison even if Movant pleaded guilty and waived his right to a jury trial, resulting in an involuntary and unknowing guilty plea.

     a. <u>Facts</u>: At the change of plea hearing, the district court inquired of Movant whether "anyone threatened [Movant] in any way that led [him] to plead guilty." (Docket Report 453 at 17). This inquiry prompted Movant to ask to speak to his lawyer. *Id.* Thereafter, defense counsel informed the district court that Movant believed "there's a threat that if he were to go to trial and lose, that he could end up with a higher sentence than if he were to plead guilty and accept responsibility ... [and] [t]he worst possible outcome is threatening." (Docket Report 453 at 17-18). Thereafter, the district court asked Movant, "[h]as anyone come forward and threatened you with adverse action taken against you as a result of your decision to go to trial." Movant responded, "[j]ust more ... time in jail, Your Honor." The district court informed Movant that "that's a risk that's inherent in every decision on whether to plead guilty or not." (Docket Report 453 at 18). The district court never advised Movant it could impose a life term of imprisonment, without the possibility of release, even if Movant pleaded guilty to Count 1. The record demonstrates that Movant did not understand that he could receive a life sentence if he pleaded guilty, and waived his right to a jury trial. Furthermore, the district court advised Movant "after you serve any confinement sentence, you'll be placed under supervised release...." The district court further advised, "[i]n this instance, the time that you'll be involved with the probation officer will be somewhere between 5 years and a lifetime length." (Docket Report 453 at 23). This implied that Movant would be released at some point after serving a prison sentence. Trial counsel was ineffective for failing to ensure that Movant understood at the change of plea hearing that the court could impose a life term in prison, even if Movant pleaded guilty and waived his right to a jury trial. Therefore, Movant's guilty plea was not knowing and voluntary in violation of due process. Movant would not have pleaded guilty, but for his understanding that he would not face the "threat" of life in prison if he pleaded guilty, and waived his right to a jury trial. The court should vacate and set aside the guilty plea.

     b. <u>Direct Appeal Ground Seven</u>:

          (1)    No.

          (2)    Explain why: this issue involves a claim of ineffective assistance of trial counsel which is properly raised on post-conviction proceedings.

     c. <u>Post-Conviction Proceedings</u>:

          (1)    No.

Dated the 15th day of December, 2014.

Respectfully Submitted,

_s/Stephen R. Hormel, Pro Hac Vice_
Washington State Bar # 18733
Sponsor Counsel Waived by Court (Docket Report 726)
Attorney for Movant
Hormel Law Office, L.L.C.
421 West 1st Avenue
Spokane, Washington 99201
Telephone: (509) 926-5177
Facsimile: (509) 926-4318
Email: steve@hormellaw.com

## CERTIFICATE OF SERVICE

I hereby certify that on December 15, 2014, I electronically filed the foregoing with the

Clerk of the Court using the CM/ECF System which will send notification of such filing to the

following: John Luke Walker and Cristina Walker, Assistant United States Attorneys.

_s/Stephen R. Hormel, Pro Hac Vice_
Washington State Bar # 18733
Sponsor Counsel Waived by Court (Docket Report 726)
Attorney for Movant
Hormel Law Office, L.L.C.
421 West 1st Avenue
Spokane, Washington 99201
Telephone: (509) 926-5177
Facsimile: (509) 926-4318
Email: steve@hormellaw.com

RECEIVED
USDC, WESTERN DISTRICT OF LA.
TONY R. MOORE, CLERK

DATE __12_/_1_/_11_____

BY_____DM_____

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

SHREVEPORT DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | CRIMINAL NO. 11-CR-00062-21 |
| | : | |
| VERSUS | : | |
| | : | |
| ROBERT CUFF | : | |
|   a/k/a dd0040 | : | JUDGE HICKS |
|   a/k/a slapalot | : | MAGISTRATE JUDGE HORNSBY |

## PLEA AGREEMENT

This document contains the complete plea agreement between the Government and ROBERT CUFF, a.k.a. dd0040, slapalot, the Defendant.  No other agreement, understanding, promise, or condition exists, nor will any such agreement, understanding, promise or condition exist unless it is committed to writing in an amendment attached to this document and signed by the Defendant, an attorney for the Defendant, and an attorney for the Government.  The terms of this plea agreement are only binding on the Defendant and the Government if the Court accepts the Defendant's guilty plea.

### THE DEFENDANT'S OBLIGATIONS:

ROBERT CUFF, a.k.a. dd0040, slapalot, shall appear in open court and plead guilty to Count 1 of the Second Superceding Indictment pending in this case.

### THE GOVERNMENT'S OBLIGATIONS:

1.     If the Defendant completely fulfills all of his obligations and agreements under this plea agreement, the Government agrees to dismiss the remaining Counts of the Second Superceding Indictment after sentencing and it will not prosecute the Defendant

for any other offense known to the United States Attorney's Office, based on the investigation which forms the basis of the Second Superceding Indictment.

2.     The Government will and hereby moves pursuant to U.S.S.G. § 3E1.1(b) for the Defendant to receive a one point reduction in his offense level should that offense level be 16 or greater, as the Defendant has assisted authorities in the investigation or prosecution of his own misconduct by timely notifying authorities of his intention to enter a plea of guilty, thereby permitting the Government to avoid preparing for trial and permitting the Government and the Court to allocate their resources efficiently.

**SENTENCING:**

ROBERT CUFF, a.k.a. dd0040, slapalot, understands and agrees that:

1.     the maximum punishment on Count 1 is a statutory mandatory minimum of sentence of not less than twenty (20) years nor more than life in prison (pursuant to 18 U.S.C. § 2252A(g)), or a fine of up to $250,000.00, (pursuant to 18 U.S.C. §3571), or both.

2.     he shall be required to pay a special assessment of $100 **at the time of the guilty plea** by means of a cashier's check, bank official check, or money order payable to "Clerk, U.S. District Court;"

3.     he may receive a term of Supervised Release of not less than five (5) years and up to life in length in addition to any term of imprisonment imposed by the Court;

4.     a violation of any condition of Supervised Release at any time during the period of Supervised Release may result in the Defendant being incarcerated over and above any period of imprisonment initially ordered by the Court;

2

5.    the period of incarceration for a violation of a condition of Supervised Release could be as much as the full term of Supervised Release initially ordered by the Court regardless of the amount of time of the Supervised Release the Defendant had successfully completed;

6.    in addition to the penalties set forth in the preceding paragraphs, the Court may order him to make restitution to the victim(s) in this case and that the amount of restitution and method of payment is in the discretion of the Court; the defendant specifically agrees to waive any challenges or appeals of restitution orders based upon Counts to which he did not plead guilty.

7.    as part of the presentence investigation the Government will make available to the Court all evidence developed in the investigation of this case;

8.    this case is governed by the Sentencing Reform Act, as modified by United States v. Booker, 543 U.S. 220 (2005), that the defendant has discussed the Sentencing Guidelines and their applicability with his counsel, and understands and acknowledges that a final determination of the applicable guidelines range cannot be made until the completion of the presentence investigation;

9.    the defendant has been advised, and understands, that pursuant to 18, United States Code, Section 2250, he must register as a sex offender and keep the registration current in each of the following jurisdictions: where he resides; where he is an employee; and where he is a student.  The defendant understands that the requirements for registration include providing his name, his residence address, and the names and addresses of any places where he is or will be an employee or a student, among other information.   The defendant further understands that the requirement to keep the

3

registration current includes informing at least one jurisdiction in which he resides, is an employee, or is a student not later than three business days after any change of his name, residence, employment, or student status.   The defendant has been advised, and understands, that failure to comply with these obligations subjects him to prosecution for failure to register which is punishable by a fine, or imprisonment, or both. The frequency of registration and the duration of the defendant's obligation to register shall be controlled by state law of the jurisdiction in which he resides, is employed, or is a student, as well as federal law pursuant to SORNA, 18 U.S.C. 2250.

**COOPERATION:**

1.      The Defendant agrees to cooperate fully and truthfully in the Government's investigation into this and any other criminal matter about which the defendant has knowledge.

2.      Cooperation shall include, but is not limited to, testifying before the grand jury or at trial if requested.  The Defendant understands that his failure to testify truthfully can result in the Defendant being prosecuted for perjury or giving false statements and in the Government withdrawing from this Plea Agreement.

3.      The Defendant understands that while he is being offered use immunity for all prospective statements to law enforcement agents and testimony, given as a result of this agreement, such statements and testimony are subject to the penalties of perjury and giving false statements if he is not completely honest and truthful, or that this Plea Agreement can be withdrawn if the Defendant makes false statements or substantially misrepresents his role in the offense.

4

4.     At or before the time of sentencing, the United States will advise the Court of any assistance provided by the Defendant.

5.     The United States may, but shall not be required to, make a motion, pursuant to section 5K1.1 of the United States Sentencing Guidelines, Title 18 United States Code, Section 3553(e) or Rule 35(b) of the Federal Rules of Criminal Procedure, requesting the Court to depart from the sentencing range called for by the guidelines in the event he provides "substantial assistance." This decision shall be in the sole and non-reviewable discretion of the United States Attorney.

6.     It is understood and agreed that a motion for departure shall not be made under any circumstances unless the Defendant's cooperation is deemed "substantial" by the United States Attorney. The United States has made no promise, implied or otherwise, that the Defendant will be granted a "departure" for "substantial assistance." Further, no promise has been made that a motion will be made for departure even if the Defendant complies with the terms of this agreement in all respects, but has been unable to provide "substantial assistance."

7.     It is understood that even if a motion for departure is made by the Government, based upon the Defendant's perceived "substantial assistance," the final decision as to how much, if any, reduction in sentence is warranted because of that assistance, rests solely with the District Court.

## SIGNATURE OF ATTORNEY FOR THE DEFENDANT, THE DEFENDANT, AND THE ATTORNEY FOR THE GOVERNMENT

I have read this plea agreement and have discussed it fully with my client ROBERT CUFF, a.k.a. dd0040, slapalot. It accurately and completely sets forth the entire plea

5

agreement.  I concur in the decision of ROBERT CUFF, a.k.a. dd0040, slapalot, pleading

guilty as set forth in this plea agreement.

Dated: 9. 2 7. 11

STEPHEN P. KARNS
Attorney for the Defendant

I have read this plea agreement and have discussed it with my attorney.  I fully

understand the plea agreement and accept and agree to it without reservation.  I do this

voluntarily and of my own free will.  No threats have been made to me, nor am I under the

influence of anything that could impede my ability to fully understand this plea agreement.

I affirm that absolutely no promises, agreements, understandings, or conditions have

been made or entered into in connection with my decision to plead guilty except those set

forth in this plea agreement.

I am satisfied with the legal services provided by my attorney in connection with this

plea agreement and the matters related to this case.

Dated: 9 /27/ 2011

ROBERT CUFF
a.k.a. dd0040, slapalot
Defendant

I accept and agree to this plea agreement on behalf of the United States of America.

Dated: 12 - 1 + 11

JOHN LUKE WALKER # 18077
Assistant United States Attorney
800 Lafayette Street, Suite 2200
Lafayette, Louisiana 70501-6832
Telephone:  (337) 262-6618

6

**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF LOUISIANA**
**SHREVEPORT DIVISION**

UNITED STATES OF AMERICA          CRIMINAL ACTION NO. 11-00062-21

VERSUS                            JUDGE S. MAURICE HICKS, JR.

ROBERT CUFF                       MAGISTRATE JUDGE HORNSBY

## MEMORANDUM RULING

Before the Court is Petitioner Robert Cuff's ("Cuff") Amended Motion to Vacate, Set Aside, or Correct Sentence pursuant to 28 U.S.C. § 2255. See Record Document 737. Cuff seeks to have his sentence corrected on seven grounds which will each be analyzed by the Court. For the reasons discussed herein, Cuff's Motion is **DENIED**.

## FACTUAL AND PROCEDURAL BACKGROUND

Cuff, also known as "dd0040" and "slapalot," joined "Dreamboard," an online bulletin board for the exchange of sexual videos and images on March 22, 2009. See Record Document 387-2 at 4. During his time as a member of "Dreamboard," he posted a total of forty-three images or files. See id. Most of these images were of young children posing in sexual positions or engaging in sexual acts with adults. See id. As a result of these postings, he was elevated to VIP status on the site. See id.

While conducting a search of Cuff's house pursuant to a search warrant, law enforcement seized a computer containing multiple sexual video files. The seized files included videos of Cuff sexually abusing a five-year old girl. The five-year old girl was the daughter of a woman, with whom Cuff had been involved.

On August 10, 2011, Cuff was charged by a federal grand jury in a second superseding indictment with one count of engaging in a child exploitation enterprise in violation of 18 U.S.C. § 2252A(g). See Record Document 245. Additionally, Cuff was

charged with one count of conspiracy to advertise the distribution of child pornography in violation of 18 U.S.C. §§ 2251(d)(1) and (e). See id. Furthermore, Cuff was charged with one count of conspiracy to distribute child pornography in violation of 18 U.S.C. §§ 2252A(a)(2)(A) and (b)(1). See id. Subsequent to the indictment, the Court permitted mental health professionals to conduct a mental evaluation of him at the place of incarceration. See Record Documents 340, 359, and 360. On August 30, 2011, the Court granted a motion permitting Stephen P. Karns ("Karns") to appear *pro hac vice*. See Record Document 296. Based on the record, Karns was the lead counsel in Cuff's case.

On December 1, 2011, Cuff pleaded guilty to count one, engaging in a child exploitation enterprise of the second superseding indictment. See Record Document 387. Again, the Court issued Orders permitting mental health professionals to interview and evaluate Cuff. See Record Documents 398, 405, and 408.

On January 23, 2012, the Presentence Report was issued. See Record Document 544. Due to an enhancement pursuant to U.S.S.G. § 4B1.5(b)(1), the recommended total offense level was 48 because Cuff "engaged in a pattern of activity involving prohibited sexual conduct." See id. His Criminal History Category was determined by the Probation Office to be a One (I). See id. Consequently, the combination of these scores led to a determination that Cuff's guideline imprisonment range was life imprisonment. See id.

On February 3, 2012, Karns filed a Motion to Continue Dates for Objections to the Presentence Report and Sentencing. See Record Document 436. In his Motion, Karns asserted that additional time was needed in order for his experts to complete their evaluations as well as to allow time for his counsel to prepare a motion for downward departure or variance. See id.  On February 6, 2012, the Court issued an Order granting

Karns' Motion and re-scheduled the sentencing for May 16, 2012. See Record Document 438. Karns' objections to the Presentence Report were due on April 18, 2012. See id. On April 10, 2012, Karns filed a second Motion to Continue Dates for Objections to the Presentence Report and Sentencing. See Record Document 461. Again, Karns cites the need for additional time in order for his experts to complete their evaluations as well as to allow time for him to prepare a motion for downward departure or variance. See id. On April 11, 2012, the Court issued an Order granting Karns' Motion and re-scheduled the sentencing for July 13, 2012. See Record Document 464. The objections to the Presentence Report were also due on June 13, 2012. See id.

On June 29, 2012, Karns filed a forty-page Pre-sentencing Memorandum, which incorporated a motion for downward departure. See Record Document 513. In his Pre-sentencing Memorandum, Karns advocated for the Court to impose a sentence that was less than the determined life imprisonment recommended in the Presentence Report. Karns attached thirty exhibits to the Memorandum, including photographs and letters attesting to Cuff's admirable work record while he was employed by the United States Navy. See Record Documents 513-516.

On July 5, 2012, roughly one week before the July 13, 2012 sentencing date, Eric H. Schweitzer ("Schweitzer") filed a Motion to Appear *Pro Hac Vice*. See Record Document 517. The Court granted the Motion on July 6, 2012. See Record Document 518. On July 9, 2012, four days before sentencing, Schweitzer filed a Motion to Substitute himself in place of Karns. See Record Document 521. In the Motion, Schweitzer argued that he learned of a brain injury sustained by Cuff and that this may constitute a defense to the charges levied against Cuff. See id. Schweitzer also asserted that Karns was

incapable of counseling Cuff in that regard. See id. The Motion further requested the Court "allow him sufficient time to prepare for sentencing and any other matters which [sic] this writer may deem advisable." See id. The Court denied this Motion on July 10, 2012. See Record Document 525. In denying the Motion, the Court reasoned that Schweitzer was already enrolled as co-counsel with Karns. See Record Documents 518 and 525. Therefore, because of his appointment as co-counsel, Schweitzer was permitted to attend the sentencing hearings, but Karns was required to participate. Furthermore, as it concerned a continuance, the Court reasoned that Cuff had already been granted a total of 220 days to prepare for sentencing and that this was his third request for a continuance. See Record Document 525. Thus, the Court denied Schweitzer's request for a third continuance.

Included in Schweitzer's Motion to Substitute, Schweitzer alerted the Court of his intent to file a Motion to Withdraw Cuff's Guilty Plea. See Record Document 521. On July 12, 2012, the day before the sentencing hearing, Schweitzer filed the Motion to Withdraw Cuff's Guilty Plea. See Record Document 529. The government filed its opposition the day of the sentencing hearing. See Record Document 530. At the sentencing hearing, the Court denied the Motion to Withdraw Cuff's Guilty Plea and also denied the request for a downward departure. The Court sentenced Cuff to life in prison, which was the sentence recommended under the advisory guidelines in the Presentence Report. See Record Document 540. Furthermore, the Court determined that the aforementioned sentence would be followed by a lifetime of supervised release should Cuff ever be released from prison. See id.

On July 12, 2012, Schweitzer filed a Notice of Appeal pursuant to 18 U.S.C. § 3742

on behalf of Cuff. See Record Document 537. On August 7, 2013, the United States Court

of Appeals for the Fifth Circuit affirmed Cuff's conviction and sentence. See Record

Document 679. The United States Supreme Court denied Cuff's Petition for Writ of

Certiorari. See Record Document 692. At this time, Cuff moves to Vacate, Set Aside, or

Correct Sentence pursuant to 28 U.S.C. § 2255. See Record Document 737. Cuff alleges

seven grounds as to why the present Section 2255 Motion should be granted:

> (1) Breach of the plea agreement and vacate the guilty plea for violation of the non-prosecution clause;[1]
>
> (2) Ineffective assistance of counsel for failure to move for competency review under 18 U.S.C. § 4241;
>
> (3) Ineffective assistance of counsel for failure to investigate insanity or involuntary intoxication defenses;
>
> (4) Ineffective assistance of counsel for failure to investigate;
>
> (5) The conviction for engaging in a child exploitation enterprise under 18 U.S.C. § 2252(A)(g) is constitutionally defective for lacking a *mens rea* element that would require the prosecution to prove that Cuff knowingly acted in concert with three or more persons, and alternatively, ineffective assistance of counsel for failure to raise the *mens rea* element in Cuff's defense;
>
> (6) Ineffective assistance of counsel for failure to object to a five (5) level enhancement under U.S.S.G. 4B1.5(b); and
>
> (7) Ineffective assistance of counsel for failing to ensure that Cuff fully understood at the change of plea hearing that the district court could impose

---

[1] Cuff argues that as part of his plea agreement, the government agreed not to prosecute him in conjunction with the investigation that formed the basis for the second superseding indictment. The investigation led to the seizure of videos produced in the Western District of Texas and the videos led to a five (5) level enhancement in the offense level. Based on the videos, Cuff argues that this Court sentenced him to life imprisonment. He also maintains, the government breached the plea agreement because thirteen days after he pleaded guilty in the Western District of Louisiana, the government in the Western District of Texas indicted Cuff based on the videos.

a term of life in prison even if Cuff waived his right to a jury trial, resulting in an involuntary and unknowing guilty plea.

See Record Document 737.

## LAW AND ANALYSIS

### I.    Motions to Vacate, Set Aside, or Correct a Sentence Under 28 U.S.C. § 2255

The federal habeas corpus remedy is contained in 28 U.S.C. § 2255, which provides that a prisoner serving a federal sentence may make a motion to vacate, set aside, or correct his sentence within a year after his conviction has become final. Review under Section 2255 is limited to four grounds: (1) the sentence was imposed in violation of the Constitution or laws of the United States; (2) the court was without jurisdiction to impose the sentence; (3) the sentence exceeds the statutory maximum sentence; or (4) the sentence is otherwise subject to collateral attack. See 28 U.S.C. § 2255. However, after conviction and exhaustion of a defendant's right to appeal, the Court is "entitled to presume that the defendant stands fairly and finally convicted." United States v. Shaid, 937 F.2d 228, 231-32 (5th Cir. 1991), (quoting United States v. Frady, 456 U.S. 152, 164, 102 S. Ct. 1584, 1592 (1982). The Supreme Court reasoned that, "our trial and appellate procedures are not so unreliable that we may not afford their completed operation any binding effect beyond the next in a series of endless post-conviction collateral attacks. Frady, 456 U.S. at 164-65, 102 S. Ct. at 1593. "To the contrary, a final judgment commands respect." Id.

Consequently, issues that can be presented in a motion filed under 28 U.S.C. § 2255 are limited. A defendant can challenge a final conviction only on issues of constitutional or jurisdictional magnitude. Shaid, 937 F.2d at 232. As the Fifth Circuit has stated:

> Relief under 28 U.S.C. § 2255 is reserved for transgressions of constitutional rights and for a narrow range of injuries that could not have been raised on direct appeal and would, if condoned, result in a complete miscarriage of justice. Non constitutional claims that could have been raised on direct appeal, but were not, may not be asserted in a collateral proceeding.

United States v. Vaughn, 955 F.2d 367, 368 (5th Cir. 1992) (citations omitted).

Even if a defendant wishes to assert issues that are constitutional or jurisdictional in nature, he may be procedurally barred from raising them. In order to raise an issue for the first time on collateral review, a defendant must show both "cause" for his procedural default and "actual prejudice" resulting from the error. Frady, 456 U.S. at 168, 102 S. Ct. at 1594. To establish "cause," defendant must show that some external impediment prevented him from raising the claim on direct appeal. See United States v. Flores, 981 F.2d 231, 235 (5th Cir. 1993). In order to meet the "actual prejudice" test, defendant must demonstrate not just the possibility of prejudice, "but an actual and substantial disadvantage, infecting his entire trial with error of constitutional dimension." Shaid, 937 F.2d at 233.

Accordingly, Cuff must have brought these claims on direct appeal or be able to show cause and prejudice for why he failed to do so. In the present action, Cuff's assertion that that government breached the plea agreement, specifically the non-prosecution clause contained therein, is constitutional in nature because the breach of a plea agreement "implicates constitutional due process concerns." United States v. Robinson, 117 F. App'x 973, 978 (5th Cir. 2004). However, Cuff failed to raise this claim on direct review. The Fifth Circuit opinion affirming the Court's sentence, stated that "[a]lthough Cuff complains of prosecutorial misconduct, he did not develop the facts supporting this claim, so we are not able to review it on appeal." Record Document 679 at 6.

Page **7** of **18**

Furthermore, Cuff was aware of the Texas indictment at the time of his appeal and could have established facts in order for the Fifth Circuit to review the present claim.

Nonetheless, defendants are still able to raise an issue for the first time on collateral review. As indicated supra, a defendant must show both "cause" for his procedural default and "actual prejudice" resulting from the error if he raises a constitutional or jurisdictional issue for the first time on collateral review. See Frady, 456 U.S. at 168, 102 S. Ct. at 1594. The Court finds that Cuff has failed to offer evidence that would establish some external element that prevented him from raising his claim on direct appeal. Cuff attempts to argue that the declaration from Karns that allegedly supports this claim that the government breached the plea agreement was obtained after his direct appeal. However, the fact that appellate counsel failed to provide the Fifth Circuit with Karns' declaration is not of issue with the Court. Appellate Counsel should have obtained Karns' declaration at the time he filed his Notice of Appeal.

Accordingly, the Court finds that Cuff's claim that the government breached the plea agreement is procedurally barred. Furthermore, Cuff attempts to couch this claim as an ineffective assistance of counsel claim in order to bring it within the ambit of a less stringent standard. However, the Court rejects such an argument because in Cuff's Amended Section 2255 Motion he clearly outlines his ineffective assistance of counsel claims in claims two, three, four, six, and seven, but fails to mention ineffective assistance of counsel in claim one.

## II.   Ineffective Assistance of Counsel

The general rule prohibiting a defendant from raising claims on collateral review absent "cause" and "actual prejudice" does not apply to claims of ineffective assistance of counsel. Massaro v. United States, 538 U.S. 500, 504, 123 S. Ct. 1690, 1693 (2003). This "procedural default rule is neither a statutory nor constitutional requirement, but it is a doctrine adhered to by the courts to conserve judicial resources and to respect the law's important interest in the finality of judgments." Id. at 504, 123 S. Ct. at 1693. Requiring a criminal defendant to bring claims of ineffective assistance of counsel on a direct appeal does not promote these objectives. See id. A claim of ineffective assistance of counsel cannot be properly resolved on appeal because there has been no opportunity to develop the record on the merits of these allegations. See id. Thus, a criminal defendant is permitted to bring ineffective assistance of counsel claims in a collateral proceeding under Section 2255, regardless of whether such claims could have been raised on direct appeal. See id.

To prevail on claims of ineffective assistance of counsel, a claimant must prove: (1) that his counsel's actions fell below an objective standard of reasonableness and (2) that his counsel's ineffective assistance was prejudicial. See Strickland v. Washington, 466 U.S. 668, 687, 104 S. Ct. 2052, 2064 (1984); Bryant v. Scott, 28 F.2d 1411, 1414-15 (5th Cir. 1994). Under the first prong of the Strickland analysis, a claimant must show that his counsel "made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." 466 U.S. at 687, 104 S. Ct. at 2064. The court is to presume that counsel's actions are encompassed within the wide range of reasonable competence. See id. at 690, 104 S. Ct. at 2065. The defendant may overcome

this presumption only by showing that under the totality of the circumstances, counsel's performance was "outside the wide range of professionally competent assistance." Id., 104 S. Ct. at 2066.

Under the second prong of the Strickland test, a claimant must show "that there is a reasonable probability that, but for counsel's specified errors, the result of the proceeding would have been different." 466 U.S. at 694, 104 S. Ct. at 2068; Murray v. Maggio, 736 F.2d 279, 282 (5th Cir. 1984). "A reasonable probability is a probability to undermine confidence in the outcome." Strickland, 466 U.S. at 694, 104 S. Ct. at 2068. A claimant must demonstrate that counsel's errors "were so serious as to render the proceeding unreliable and fundamentally unfair." United States v. Saenz-Forero, 27 F.3d 1016, 1021 (5th Cir. 1994) (citation omitted). "A court need not address both components of the inquiry if the defendant makes an insufficient showing on one." Armstead v. Scott, 37 F.3d 202, 210 (5th Cir. 1994).

Claims two, three, four, six, and seven of Cuff's Amended Section 2255 Motion raise ineffective assistance of counsel claims. The Court will address each claim separately in the following sections

## A. Claim that Karns was ineffective for failing to seek a competency review

Claim two of Cuff's Section 2255 Motion avers that Karns was ineffective because he failed to move for a competency review pursuant to 18 U.S.C. § 4241. Section 4241 states in pertinent part that a court can only grant this motion:

> if there is reasonable cause to believe that the defendant may presently be suffering from a mental disease or defect rendering him mentally incompetent to the extent that he is unable to understand the nature and consequences of the proceedings against him or to assist properly in his defense.

During the guilty plea, in response to the Court's question regarding his suffering from post-traumatic stress syndrome, Cuff, who was under oath, stated that he was starting treatment for the post-traumatic stress syndrome that he developed since being stationed in Somalia. See Record Document 453, Guilty Plea Tr. at 8. The Court specifically asked Cuff, "You have any mental or physical problems that would limit your ability to understand what is happening?" Cuff responded, "I don't believe so, Your Honor, no." Id. Further, both the Assistant United States Attorney and Karns stated that Cuff was competent. See id. at 9. Therefore, the Court stated, "The Court finds the defendant competent to plead guilty to Count 1 today." Id.

Sworn statements in "open court during a plea hearing 'carry a strong presumption of verity.'" United States v. Martinez-Molina, 64 F.3d 719, 733 (5th Cir. 1995) (citing Blackledge v. Allison, 431 U.S. 63, 74, 97 S. Ct. 1621, 1629 (1977)). In the present action, Cuff has failed to present any evidence to refute his statements made under oath. Furthermore, at the end of the guilty plea, the Court stated, "I am concerned over not a mental competency issue, I'm concerned over a mental status issue, and I have provided counsel with the name of a local Ph.D. psychologist, clinical psychologist, who can conduct that." Record Document 453 at 30. The Court stated that it was concerned that Cuff needed medication and that he was "properly classified" in his place of detention. Id. Thus, Karns' actions were not unreasonable nor prejudicial. Karns cannot be deemed ineffective for failing to raise a meritless claim. United States v. Gibson, 55 F.3d 173, 179 (5th Cir. 1995) ("Counsel is not required by the Sixth Amendment to file meritless motions."); Koch v. Puckett, 907 F.2d 524, 527 (5th Cir. 1990) ("[C]ounsel is not required to make futile motions or objections."). Accordingly, the Court rejects Cuff's claim that

Karns was ineffective for failing to seek a mental competency review pursuant to 18 U.S.C. § 4241.

### B. Claim that Karns was ineffective for failing to investigate "mental defenses" before advising Cuff as to his guilty plea

Cuff argues that Karns was ineffective because he did not investigate "mental defenses" before advising Cuff as to his guilty plea. The mental defenses that Cuff argues Karns failed to raise are insanity, involuntary intoxication, and diminished capacity. "In any ineffectiveness case, a particular decision not to investigate must be directly assessed for reasonableness in all the circumstances, applying a heavy measure of deference to counsel's judgments." Strickland v. Washington, 466 U.S. 668, 691, 104 S. Ct. 2052, 2066 (1984). Trial counsel are "entitled to formulate a strategy that was reasonable at the time and to balance limited resources in accord with effective trial tactics and strategies." Harrington v. Richter, 562 U.S. 86, 107, 131 S. Ct. 770, 789 (2011); United States v. Bernard, 762 F.3d 467, 474 (5th Cir. 2014). The decision not to pursue the insanity defense was strategic in the hopes of getting Cuff the best possible deal. United States v. Green, 116 F.3d 1115, 1122 (5th Cir. 1997) ("There is sufficient evidence demonstrating that the decision not to proffer an insanity defense was a 'conscious and informed' tactical one."). Furthermore, it should be noted that Karns had the opportunity to examine Cuff's medical evaluations and chose not to pursue a mental defense. Karns' actions are entitled to heavy deference. It should be noted that if we were to allow every defendant to second guess counsel's decisions, judicial efficiency would be severely eroded.

Nonetheless, Cuff attaches numerous exhibits in support of the proposition that the medication he took to prevent malaria was responsible for mental health issues

leading to his criminal conduct. However, this argument has already been rejected by the Court. During the argument on the Motion to Withdraw Cuff's Guilty Plea, the Court stated, "I am absolutely stunned that all of the information that you provide us as a theory does not match up with what was going on during the career of his military service, during the time of the video and all the other acts of molestation that were videoed that were viewed by the Court and the counsel this morning." Record Document 572, Sent. Tr. at 19. The Court remarked that Cuff was competent when he performed at a high level in the military. Thus, Cuff was competent when he engaged in criminal conduct. See id.

Moreover, in arguing the Motion to Withdraw Cuff's Guilty Plea, Schweitzer contended that he should be able to withdraw his plea and "be allowed to work up a case of insanity." Id. at 21. At that point, Schweitzer argued that Karns did not know at the time of the guilty plea that Cuff had been taking a medication for malaria that rendered him "insane." See id. at 22. The Court rejected this argument. Again, the Court pointed out that Cuff's work as well as his ability to mask his criminal behavior demonstrated a "highly functioning cognitive level of thinking." Id. at 25. For instance, the child pornography that was the subject of the case had been in his home computers. See id. at 26. The Court remarked that Cuff's actions, specifically with the five-year old girl, were not "connected to insanity" but rather were "connected to a very cold, calculating purposeful defendant, who on the one hand had what appears to be a sterling record in the United States Navy and high involvement requiring high cognitive functioning with respect to various projects assigned to him over the years." Id. at 38.

In denying the Motion to Withdraw Cuff's Guilty Plea, the Court stated, "Based on what I'm seeing, the causal connection between taking this one drug and his heinous acts

of child molestation…simply are deviant behavior with enough cognition in that frontal cortex area to hide this from the real world in which he lived and worked." Id. at 42. Therefore, based on the sentencing transcript and review of the record, the Court finds that Cuff has failed to present any evidence that would change the Court's position. Accordingly, Karns was not ineffective in failing to further investigate Cuff's potential mental defenses because such defenses would not have been viable and trial counsel is accorded a heavy measure of deference. See Strickland v. Washington, 466 U.S. 668, 691, 104 S. Ct. 2052, 2066 (1984).

### C. Claim that Karns was ineffective for failing to investigate the use of the name "slapalot"

Cuff contends that Karns was ineffective for failing to investigate the username "slapalot." Cuff argues that the username was used by others. Under oath, Cuff acknowledged that the factual basis was an accurate recitation of his "involvement in the role of the enterprise." Record Document 453, Guilty Plea Tr. at 6. This factual basis stated on at least four occasions that the Defendant was Robert Cuff a.k.a. slapalot. See Record Document 387-2 at 4. Accordingly, the Court finds that Karns cannot be considered ineffective for failing to investigate a meritless assertion.

### D. Claim that Karns was ineffective for failing to investigate the lack of the *mens rea* element in the indictment

Cuff contends that the indictment was constitutionally defective because it lacked a *mens rea* element. In the alternative, Cuff claims Karns was ineffective for failing to raise that issue.

The issue concerning the indictment is procedurally barred, as Cuff has not established cause or prejudice for failure to raise this claim before. A similar claim was

discussed on appeal in which Cuff argued that the factual stipulation submitted at the time of the guilty plea did not establish that he posted advertisements "in concert with three or more other persons." See Record Document 679. The Fifth Circuit remarked this issue was novel but found that factual stipulation did show that he acted in concert with three or more persons. See id. Cuff failed to raise the "knowingly" argument on direct appeal. Therefore, Cuff's claim is procedurally barred because he has failed to show cause and actual prejudice.

In the alternative, Cuff argues ineffective assistance of counsel due to Karns alleged failure to raise the *mens rea* element in his defense. Cuff contends that nothing in the record shows that he "knowingly" acted with anyone. As the description of the complex arrangement of Dreamboard shows, in submitting material, Cuff knew that he was acting with three or more individuals. Nevertheless, his counsel cannot be considered ineffective for failing to raise this novel issue. United States v. Seyfert, 67 F.3d 544, 548 (5th Cir. 1995) (not ineffective for counsel to fail to raise an "innovative sentencing issue"); Davis v. Wainwright, 547 F.2d 261, 264 (5th Cir. 1977) (effectiveness of counsel does not "require an imaginative assertion of every possible theory of defense or mitigation which might in the unpredictable future turn out to be accepted by some court some day in some case").

Accordingly, the Court finds that Cuff's claim is procedurally barred. In the alternative, Karns was not ineffective for failing to investigate the lack of the *mens rea* element in the indictment.

## E. Claim that Karns was ineffective for failing to object to the enhancement

Cuff argues that Karns was ineffective for failing to object to the enhancement under U.S.S.G. § 4B1.5(b). In order to show that counsel's performance at sentencing in a noncapital case was prejudicial under Strickland, a defendant must demonstrate that counsel's error led to some increase in the length of his imprisonment. Glover v. United States, 531 U.S. 198, 203, 121 S. Ct. 696, 700 (2001); United States v. Herrera, 412 F.3d 577, 581 (5th Cir. 2005).

Cuff asserts that the enhancement should not apply to child pornography offenses. However, Cuff did not plead guilty to a child pornography offense. Cuff pleaded guilty to engaging in child exploitation enterprise. See Record Document 387. Objecting to the enhancement would not have altered the Cuff's sentence, as he has not presented a viable basis for an objection. United States v. Rosales-Miranda, 434 F. App'x 404, 405 (5th Cir. 2011) (because an objection to a sentencing enhancement would have been unsuccessful, defendant could not establish ineffective assistance of counsel); United States v. Saenz-Forero, 27 F.3d 1016, 1021 (5th Cir. 1994) (sentencing court correctly applied enhancement; therefore, objection by counsel would have been fruitless, and defendant failed to establish ineffective assistance of counsel). Accordingly, the Court finds that Karns was not ineffective for failing to object to the sentencing enhancement pursuant to U.S.S.G. § 4B1.5(b) because Cuff pleaded guilty to engaging in a child exploitation enterprise, which results in a sentencing enhancement.

### F. Claim that Karns was ineffective for failing to advise Cuff that he would face a life sentence if he pleaded guilty

Cuff argues that Karns was ineffective in failing to advise him that he could face a life sentence if he pleaded guilty. At sentencing, in addressing the five-level enhancement which resulted in the Cuff's life sentence, Karns argued that Cuff was not aware of the possibility of that enhancement when he pleaded guilty. See Record Document 572, Sent. Tr. at 51. Karns, who had represented Cuff at the guilty plea stated, "I didn't advise him of the possibilities of a plus-five, yes." Id. The Court addressed that argument by stating "If every defense counsel advised of every possible enhancement, you would never stop advising." Id. at 52.

Moreover, Cuff was aware of that he could potentially face life imprisonment. The Court in accepting Cuff's guilty plea stated that the indictment says that Robert Cuff, a/k/a DD0040, Slapalot, understands and agrees, first, that the maximum punishment on Count 1 is a statutory mandatory minimum sentence of not less than 20 years nor more than life in prison. You see that?." Record Document 435, Guilty Plea Tr. at 22. Cuff responded, "Yes, your Honor." Id. The Court further stated "If you get to court and you have a fixed idea of what your sentence will be, if I sentence you to more time than you anticipate, I need you to understand this:  You're still bound by the guilty plea that you have entered, under oath, in this court today. Do you understand that?". Id. at 28. Cuff responded, "Yes, your Honor." Id.

Accordingly, the Court finds that Karns was not ineffective in failing to advise Cuff that he would potentially face a life sentence if he pleaded guilty.

## CONCLUSION

Cuff is procedurally barred from asserting claim one and claim five. As to Cuff's ineffective assistance of counsel claims, Cuff is unable to demonstrate both of the necessary elements of the <u>Strickland</u> test. Therefore, Cuff's Section 2255 Motion is **DENIED**.

Pursuant to Rule 11(a) of the Rules governing Section 2255 proceedings for the United States District Courts, this Court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant. Unless a Circuit Justice or a Circuit or District Judge issues a certificate of appealability, an appeal may not be taken to the court of appeals. In this instance, a certificate of appealability is **DENIED** because Cuff has failed to demonstrate a substantial showing of the denial of a constitutional right.

**THUS DONE AND SIGNED** at Shreveport, Louisiana, on this the 12th day of March, 2018.

S. MAURICE HICKS, JR., CHIEF JUDGE
UNITED STATES DISTRICT COURT

1  Stephen R. Hormel
2  Hormel Law Office, L.L.C.
   421 West 1st Avenue
3  Spokane, Washington 99201
   Telephone: (509) 926-5177
4  Facsimile: (509) 926-4318

5
           UNITED STATES DISTRICT COURT
6           WESTERN DISTRICT OF LOUISIANA
7                  (Shreveport)

8  UNITED STATES OF AMERICA,       )
9                                  )
          Plaintiff/Respondent,    )      5:11-CR-00062-SMH-MLH-21
10                                 )
11  vs.                            )      EXHIBIT 1 FOR GROUND ONE
                                   )      IN SUPPORT OF § 2255 MOTION
12  ROBERT CUFF,                   )
                                   )
13          Defendant/Movant.      )
14  ———————————————————————————)

15      ROBERT CUFF, through counsel, STEPHEN R. HORMEL for Hormel

16  Law Office, L.L.C., submits the attached Declaration of Stephen P. Karns, the

17  Indictment from the Western District of Texas, the Motion for Leave to Under

18  Seal, and Order to Seal, as Exhibit 1 in support of Ground One of the Motion to

19  Vacate, Set Aside or Correct the Sentence Pursuant to 28 U.S.C. § 2255:

20

21

22

23

24

25

26

27  Exhibit 1: Ground One

                              1

1 Stephen R. Hormel
  Hormel Law Office, L.L.C.
2 421 West 1st Avenue
  Spokane, WA 99201
3 Telephone: (509) 926-5177
4 Facsimile: (509) 926-4318

5
6            UNITED STATES DISTRICT COURT
           WESTERN DISTRICT OF LOUISIANA
7               (Shreveport Division)

8  UNITED STATES OF AMERICA,

9                    Plaintiff,        5:11-CR-00062-21

10
       vs.                            DECLARATION OF STEPHEN P.
11                                    KARNS 2255 MOTION

12 ROBERT CUFF, aka,
   dd0040, aka, slapalot,            JUDGE HICKS
13
14                   Defendant.        MAGISTRATE JUDGE HORNSBY

15

16 _____

17      I, Stephen P. Karns, declare as follows:

18      I am an attorney licensed to practice in the State of Texas, Texas Bar Number

19 00791001. On August 29, 2011, I moved for admission, *pro hac vice*, to represent

20 Mr. Cuff in the above matter (Docket Report 294). The Court granted my motion on

21 August 30, 2011 (Docket Report 296).

22      I appeared with Mr. Cuff for his arraignment on September 1, 2011. (Docket

23 Report 304). From September 1 through September 27, 2011, I worked to reach a

24 settlement between the United States and Mr. Cuff.

25      In attempting to settle the case, I spoke to Assistant United States Attorney

26 (AUSA), John Luke Walker. AUSA Walker informed me of the existence of child

27 pornographic videos produced by Mr. Cuff in the Western District of Texas. These

28 Declaration of Stephen
   P. Karns                        - 1

1   videos were seized during the executions of search warrants in the Western District of

2   Texas.

3       AUSA Walker indicated that he intended to rely on the Texas videos in the

4   Western District of Louisiana proceedings for sentencing purposes. I recall AUSA

5   Walker telling me something to the effect that the Government's use of the videos in

6   Western Louisiana would avoid having to directly involve the victim as a witness in

7   federal court proceedings. I told AUSA Walker that before Mr. Cuff would be able to

8   plead guilty, I would need to know if he was going to be prosecuted in Texas, and he

9   referred me to AUSA Brandy Gardes from the United States Attorney's Office in the

10  Western District of Texas.

11      On September 14, 2011, I contacted AUSA Gardes. My conversation with

12  AUSA Gardes was consistent with my conversation with AUSA Walker.

13      From my conversation with AUSA Gardes, I understood that the Government

14  would use the videos in the Western District of Louisiana proceedings to avoid having

15  to use the victim as a witness. It was my understanding from my conversation with

16  AUSA Walker and/or AUSA Gardes that the victim and/or her family were reluctant

17  to be involved and that the Government believed that using the videos in Western

18  Louisiana would permit the Government to avoid using the victim as a witness, but

19  still cause Mr. Cuff to be sentenced in Western Louisiana for the offenses which

20  occurred in Texas because the offenses were on the videos. I also learned from AUSA

21  Gardes that the state of Texas would not be prosecuting Mr. Cuff.

22      After these discussions, I received a proposed plea agreement. On September

23  27, 2011, Mr. Cuff and I executed the Plea Agreement (Docket Report 387). The Plea

24  Agreement was filed on December 1, 2011, the same date that Mr. Cuff entered his

25  guilty plea on Count 1 of the Second Superseding Indictment (Docket Report 387).

26  Count 1 charged Mr. Cuff with Engaging in a Child Exploitation Enterprise (Docket

27  Report 246).

28  Declaration of Stephen
    P. Karns                                    - 2 -

The Plea Agreement contained a non-prosecution clause as follows: "If the Defendant completely fulfills all of his obligations and agreements under this plea agreement, the Government agrees to dismiss the remaining Counts of the Second Superseding Indictment after sentencing and it will not prosecute the Defendant for any offense known to the United States Attorney's Office, based on the investigation which forms the basis of the Second Superseding Indictment."

At the time that Mr. Cuff and I executed the Plea Agreement, it was my belief that the Government would not be pursuing charges against him in Texas based on the contents of the videos. My conversations with both AUSA Walker and AUSA Gardes, in conjunction with the non-prosecution clause in the Plea Agreement, supported that belief. I conveyed this information and my belief that he would not be prosecuted in state or federal court in Texas to Mr. Cuff. I utilized this information to advise Mr. Cuff that he should accept the Plea Agreement.

At no time prior to December 1, 2011, did AUSA Walker or any representative from the Western District of Texas inform me of the Government's intent to pursue charges based on the contents of the videos in the Western District of Texas. Had the Government informed me of its intent to pursue charges in the Western District of Texas, I would not have allowed Mr. Cuff's guilty plea to go forward on December 1, 2011. I would have advised to Mr. Cuff not to plead guilty until I had the opportunity to address any potential federal charges in the Western District of Texas and advise him accordingly.

Mr. Cuff was sentenced on July 13, 2012. I have since learned that on December 12, 2011, the Western District of Texas obtained an Indictment charging Mr. Cuff with offenses relating to the contents of the videos. I did not know prior to this Court's imposition of Mr. Cuff's sentence of imprisonment to life that he had been charged in the Western District of Texas.

Declaration of Stephen
P. Karns                                    - 3

I do not believe the United States Probation Office in Western Louisiana knew of the Texas Indictment, nor do I believe that Judge Hicks knew of the Texas Indictment before imposing the life sentence. It is my understanding that the Texas Indictment was filed originally under seal.

I have reviewed a detainer letter dated January 9, 2012, showing that a detainer from the Western District of Texas was lodged in the Bossier Parish Medical Facility in Shreveport, LA, where Mr. Cuff was housed prior to his sentencing. That letter is attached to my declaration. I was not aware of this detainer before Mr. Cuff was sentenced.

It is my opinion that the Government breached its plea agreement with Mr. Cuff. The Government agreed not to prosecute Mr. Cuff for any offense it knew about based on the investigation that formed the basis of the Second Superseding Indictment. AUSA Walker told me about the videos when I appeared for the arraignment on September 1, 2011, and we discussed the impact the videos would have on sentencing proceedings in the Western District of Louisiana.

Based on my conversation with AUSA Walker and with ASUA Gardes, and based on the non-prosecution clause in the Plea Agreement, I had no reason to inquire further about any potential federal prosecution in Texas before Mr. Cuff entered his guilty plea on December 1, 2012. Had the non-prosecution clause in the Plea Agreement been specific to the United States Attorney's Office in the Western District of Louisiana, I would have made further inquiries into potential federal charges in Texas in order to properly advise Mr. Cuff.

The manner that the Indictment was obtained, and the timing in which the Indictment was obtained, prevented me from fully advising Mr. Cuff. Mr. Cuff was prevented from making a voluntary, knowing and intelligent plea under these circumstances. Had I learned that the Government in the Western District of Texas had indicted Mr. Cuff before his sentencing hearing, I would have moved to the Court

Declaration of Stephen
P. Karns                              - 4 -

1  to vacate the guilty plea, and moved the Court to allow Mr. Cuff to withdraw his

2  guilty plea based on the Government's breach of the Plea Agreement, and because Mr.

3  Cuff's guilty plea would not have been made knowingly, voluntarily and intelligently.

4  I believe the appropriate remedy is to vacate Mr. Cuff's guilty plea.

5      I declare under the penalty of perjury under the laws of the United States of

6  American, the foregoing is true and correct.

7      Dated this 3rd day of December, 2014.

8

9  _____

   Stephen P. Karns, Attorney at Law

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28  Declaration of Stephen
    P. Karns                              - 5

Case 5:11-cr-00062-SMH-MLH Document 732-1 Filed 12/06/14 Page 7 of 13 PageID #:
Case: 18-30694 Document: 58 Page: 70 Date Filed: 05/22/2019
3474
Case 3:11-cr-03016-KC Document 3 Filed 12/14/11 Page 1 of 5

Judge Kathleen Cardone

# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF TEXAS
### EL PASO DIVISION

2011 DEC 14 PH 4: 21

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | § | **S E A L E D** |
| **Plaintiff,** | § | **INDICTMENT** |
| | § | |
| **v.** | § | **Cause No. EP-11-CR -** _____ |
| | § | |
| ROBERT E. CUFF, | § | **VIOLATIONS:** |
| **Defendant.** | § | **(Count 1) 18 U.S.C. § 2241(c)** |
| | § | **Aggravated Sexual Abuse** |
| | § | **(Count 2) 18 U.S.C. § 2251(a)** |
| | § | **Sexual Exploitation of Children** |
| | § | **(Count 3) 18 U.S.C. § 2252(a)(2) and** |
| | § | **(b)(1) Receipt of Material** |
| | § | **Involving the Sexual Exploitation of** |
| | § | **Children,** |
| | § | **(Count 4) 18 U.S.C. § 2252(a)(4)(B) and (b)(2)** |
| | § | **Possession of Material Involving the** |
| | § | **Sexual Exploitation of Children** |
| | § | **Notice of Forfeiture** |

**EP11CR3016**

THE GRAND JURY CHARGES THAT:

### COUNT ONE
(18 U.S.C. § 2241(c) - Aggravated Sexual Abuse)

On or about July 4, 2011, in the Western District of Texas, and at a place within the special

maritime and territorial jurisdiction of the United States as defined in Title 18, United States Code,

Section 7(3), on land reserved and acquired for the use of the United States, to wit: Fort Bliss, Texas,

the Defendant,

### ROBERT EDWARD CUFF,

did knowingly engage in a sexual act, to wit, contact between the penis and vulva, contact between

the mouth and the penis, and contact between the mouth and vulva, with the victim, J.M.R., a person

Case 5:11-cr-00062-SMH-MLH   Document 732-1   Filed 12/06/14   Page 8 of 13 PageID #:
Case: 18-30694     Document: 58   Page: 71     Date Filed: 05/22/2019
Case 3:11-cr-03016-KC   Document 3   Filed 12/14/11   Page 2 of 5
347

who at that time had not attained the age of 12 years, in violation of Title 18, United States Code, Section 2241(c).

## COUNT TWO
### (18 U.S.C. § 2251(a) - Sexual Exploitation of Children)

Beginning on or about December 27, 2010 and continuing until on or about July 15, 2011, in the Western District of Texas and elsewhere, the defendant,

### ROBERT EDWARD CUFF,

did knowingly employ, use, persuade, induce, entice, and coerce minors, and attempt to employ, use, persuade, induce, entice and coerce minors, to engage in sexually explicit conduct for the purpose of producing any visual depiction of such conduct, using materials that have been mailed, shipped, and transported in and affecting interstate and foreign commerce by any means, including by computer, all in violation of Title 18, United States Code, Sections 2251(a).

## COUNT THREE
### (18 U.S.C. § 2252(a)(2)) and (b)(1) - Sexual Exploitation of Minors)

Beginning on or about September 1, 2010, and continuing until on or about July 15, 2011, in the Western District of Texas and elsewhere, the defendant,

### ROBERT EDWARD CUFF,

did knowingly receive and attempt to receive visual depictions of persons under the age of eighteen (18) engaging in sexually explicit conduct, as defined in Title 18, United States Code, Section 2256(2), which had been transported in interstate and foreign commerce, to wit: by computer, and the producing of which involved the use of a minor engaging in sexually explicit conduct and such visual depictions were of such conduct, all in violation of Title 18, United States Code, Section 2252(a)(2).

2

Case 5:11-cr-00062-SMH-MLH   Document 732-1   Filed 12/06/14   Page 9 of 13 PageID #:
Case: 18-30694     Document: 58   Page: 72     Date Filed: 05/22/2019
3434
Case 3:11-cr-03016-KC   Document 3   Filed 12/14/11   Page 3 of 5

## COUNT FOUR
(18 U.S.C. § 2252(a)(4)(B)) and (b)(2) - Possession of Sexual Exploitation of Minors)

On or about July 15, 2011, in the Western District of Texas, and elsewhere, the defendant,

### ROBERT EDWARD CUFF,

knowingly possessed matter containing one or more visual depictions involving the use of a person

under the age of eighteen (18), engaging in sexually explicit conduct as defined in Title 18, United

States Code, Section 2256(2), which visual depictions had been transported in interstate and foreign

commerce, to wit: by computer, and were produced using materials which had been shipped and

transported in interstate and foreign commerce by any means, including by computer, and the

producing of which involved the use of a minor engaging in sexually explicit conduct and such

visual depictions were of such conduct, in violation of Title 18, United States Code, Section

2252(a)(4)(B).

### Notice of Government's Demand for Forfeiture
### As to Counts Two, Three and Four
### (18 U.S.C. § 2253)

As a result of the commission of one or more of the offenses alleged in Counts Two, Three

and Four, the Defendant, **ROBERT E. CUFF**, shall forfeit to the United States, pursuant to Title

18, United States Code, Section 2253, all right, title and interest of the defendant in any and all

visual depictions described in Title 18, United States Code, Sections 2251, 2251A, 2252, 2252A,

and 2260, and any and all books, magazines, periodicals, films, videotapes, and other matters which

contain any such visual depiction, which were produced, transported, mailed, shipped or received

in violation of Chapter 110 of Title 18, Part I, United States Code; any property, real and personal,

constituting or traceable to gross profits or other proceeds obtained from such offenses; and any

property, real and personal, used or intended to be used to commit or to promote the commission of

3

Case 5:11-cr-00062-SMH-MLH  Document 732-1  Filed 12/06/14  Page 10 of 13 PageID #:
Case: 18-30694     Document: 58     Page: 73     Date Filed: 05/22/2019
Case 3:11-cr-03016-KC   Document 3   Filed 12/14/11   Page 4 of 5

such offenses, and any property traceable to such property, including but not limited to the following

items seized on or about July 15, 2011 from the defendant's residence:

1. Western Digital My Passport external hard drive, serial number XQ1A60V4300T;
2. IPOD 4 GB, serial number 6V6034GFS2C;
3. Netgear wireless router, serial number 1A14717B016DA;
4. Western Digital hard drive, serial number WXE807A38057;
5. Memorex USB drive 2.0;
6. SD card 512 MB;
7. HP Pavilion laptop, serial number 2CE715QF9;
8. Kodak camera, serial number KJCAC04601198;
9. Nikon Cool Pix camera, serial number 33025585;
10. Creative Zen XF2 MP3 Player;
11. IPOD silver in color, model AE320;
12. Seagate router, serial number 50D0T1Q7;
13. Acomdata router, serial number AC0903133833;
14. Vizio wireless router, serial number WGK01EAL300762;
15. Gateway video recorder, serial number 1098590410;
16. Cruzer mini USB drive 512 MB;
17. Seagate external hard drive, serial number 4LJ015TV;
18. F.A. Porsche silver external hard drive;
19. Mad Dog Multimedia hard drive;
20. Writeable media;
21. Various adult sex toys;
22. Written documents.

## Substitute Assets Provision

If any of the above-described forfeitable property, as a result of any act or omission of the

defendant:

(1)    cannot be located upon the exercise of due diligence;
(2)    has been transferred or sold to, or deposited with, a third person;
(3)    has been placed beyond the jurisdiction of the Court;
(4)    has been substantially diminished in value; or
(5)    has been commingled with other property which cannot be subdivided without
difficulty;

it is the intent of the United States, pursuant to 21 U.S.C. § 853(p), to seek forfeiture of any other

property of said defendant up to the value of the above forfeitable property.

4

Case 5:11-cr-00062-SMH-MLH   Document 732-1   Filed 12/06/14   Page 11 of 13 PageID #:
Case: 18-30694   Document: 58347   Page: 74   Date Filed: 05/22/2019
Case 3:11-cr-03016-KC   Document 3   Filed 12/14/11   Page 5 of 5

A TRUE BILL.

ORIGINAL SIGNATURE
REDACTED PURSUANT TO
E-GOVERNMENT ACT OF 2002

_____
FOREPERSON OF THE GRAND JURY

ROBERT PITMAN
UNITED STATES ATTORNEY

BY: _____
Assistant U.S. Attorney

5

Case 5:11-cr-00062-SMH-MLH   Document 732-1   Filed 12/06/14   Page 12 of 13 PageID #:
Case: 18-30694   Document: 58   Page: 75   Date Filed: 05/22/2019
Case 3:11-cr-03016-KC   Document 1   Filed 12/14/11   Page 1 of 3
347

Judge Kathleen Cardone

**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
EL PASO DIVISION**

2011 DEC 14  PM 4: 21

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | **SEALED** |
| | ) | |
| V. | ) | NO. EP-11-CR-_____ |
| | ) | |
| ROBERT E. CUFF | ) | **EP11CR3016** |

## MOTION FOR LEAVE TO FILE UNDER SEAL

Comes now the United States of America, by and through the United States Attorney for the

Western District of Texas and files this its Motion For Leave to File Under Seal the Indictment in

the above-styled cause and would respectfully show onto the Honorable Court as follows:

I.

On **December 14, 2011**, the Grand Jury returned a True Bill of Indictment, charging the

Defendant listed above. The disclosure of the existence of the Indictment would seriously jeopardize

the ability of law enforcement officers to locate the Defendant and apprehend him without incident.

The Government therefore seeks an Order of the Court placing the Indictment and related documents

under seal. When the Defendant is arrested, the Indictment and related documents will be unsealed.

WHEREFORE, premises considered, the United States respectfully prays that the Indictment

in the above entitled and numbered cause, and this Motion and Order, be SEALED. When the

Defendant is arrested, the Indictment and related documents will be unsealed.

Respectfully submitted,

ROBERT PITMAN
UNITED STATES ATTORNEY

BY: _____
DANIEL R. CRUMBY
Assistant U.S. Attorney
Texas Bar #24049839
700 E. San Antonio, Suite 200
El Paso, Texas 79901
(915) 534-6884

Case 5:11-cr-00062-SMH-MLH Document 732-1 Filed 12/06/14 Page 13 of 13 PageID #:
Case: 18-30694 Document: 58 348 Page: 76 Date Filed: 05/22/2019
Case 3:11-cr-03016-KC Document 2 Filed 12/14/11 Page 1 of 1

Judge Kathleen Cardone

**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
EL PASO DIVISION**

2011 DEC 14 PM 4: 21

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | ) | **SEALED** |
| | ) | |
| **V.** | ) | **NO. EP-11-CR-_____** |
| | ) | |
| **ROBERT E. CUFF** | ) | |

**EP11CR3016**

**ORDER TO SEAL**

On this date came on to be considered the Government's Motion For Leave to File Under

Seal the Indictment in the above entitled and numbered cause, and the Court having considered the

same, is of the opinion that said Motion should be granted.

IT IS FURTHER ORDERED that all of the respective documents referred to above may be

unsealed at the time of the arrest of the Defendant for appearance before this Court pursuant to either

Rule 5 or Rule 10, Fed. R. Crim. P.;

IT IS THEREFORE ORDERED, that the Indictment, Motion and Order, and related

documents be under seal and is hereby SEALED. When Defendant is arrested, then the Indictment

and related documents will be unsealed.

SIGNED and ENTERED this _14_ day of _December_, 2011.

UNITED STATES MAGISTRATE JUDGE

IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION

UNITED STATES OF AMERICA,

        Plaintiff,

vs.

ROBERT CUFF, aka Slapolot, dd0040

        Defendant.

No. 5:11-CR-00062-SMH-MLH-21

Judge HICKS

Magistrate Judge HORNSBY

---

## RULE 59 (E) MOTION TO ALTER OR AMEND JUDGMENT THAT DENIED CUFF'S 2255 MOTION TO VACATE HIS CONVICTION AND SENTENCE

Pursuant to Rule 59 (e) of the Federal Rules of Civil Procedure, Robert Cuff, through his attorney Michael R. Levine, moves the Court to alter or amend its judgment of March 12, 2018, which denied Cuff's motion to vacate his conviction and sentence, pursuant to 28 U.S.C. § 2255.

This motion is based on the records of the case, the accompanying memorandum and exhibits, and upon such argument and evidence as the Court will receive at a hearing on the motion.

1

Respectfully Submitted

/s/*Michael R. Levine*
Michael R. Levine
Levine & McHenry
1001 S.W. Fifth Avenue, Suite 1414
Portland, Oregon 97204
Phone:  503-546-3927
Cell:     503-939-4334
Facsimile:  503-224-3203
Email: michael@levinemchenry.com
Admitted *Pro Hac Vice*

## CERTIFICATE OF SERVICE

I, Michael R. Levine, hereby certify that on April 9, 2018, I caused to be

served the above Rule 59 (e)  Motion by ECF in the Western District of Louisiana.

All parties are signed on to this service.

/s/ *Michael R. Levine*
Michael R. Levine
Levine & McHenry
1001 S.W. Fifth Avenue, Suite 1414
Portland, Oregon 97204
Phone: 503-546-3927
Cell:    503-939-4334
Facsimile: 503-224-3203
Email: michael@levinemchenry.com
Admitted *Pro Hac Vice*

3

Michael R. Levine, Oregon Bar No. 931421
California Bar No. 61883, *admitted here pro hac vice*
Levine & McHenry
1001 S.W. Fifth Avenue, Suite 1414
Portland, Oregon 97204
Phone:  503-546-3927
Cell:     503-939-4334
Facsimile:  503-224-3203
Email: michael@levinemchenry.com
Attorney for Robert Cuff

IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
| Plaintiff, | No. 5:11-CR-00062-SMH-MLH-21 |
| vs. | Judge HICKS |
| | Magistrate Judge HORNSBY |
| ROBERT CUFF, aka Slapolot, dd0040 | |
| Defendant. | |

_____

**MEMORANDUM IN SUPPORT OF RULE 59 (E) MOTION TO RECONSIDER DENIAL OF MOTION TO VACATE CONVICTION AND SENTENCE**

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ...............................................................................3

A. UNDER RULE 59(E), THE COURT HAS AUTHORITY TO ALTER OR
AMEND ITS JUDGMENT AND VACATE THE CONVICTION AND
SENTENCE…………………………………………………………………..6

B. THE COURT SHOULD ALTER OR AMEND ITS JUDGMENT WITH
RESPECT TO THE ISSUE WHETHER TRIAL COUNSEL WAS INEFFECTIVE
IN NOT MOVING FOR A COMPETENCY HEARING BEFORE CUFF WAS
SENTENCED ....................................................................................................7

C. THE COURT SHOULD ALTER OR AMEND ITS JUDGMENT WITH
RESPECT TO WHETHER TRIAL COUNSEL WAS INEFFECITVE IN NOT
INVESTIGATING CUFF'S MENTAL CONDITION BEFORE ADVISING HIM
TO PLEAD GUILTY..........................................................................................19

D. THE COURT SHOULD ALTER OR AMEND ITS JUDGMENT WITH
RESPECT TO THE ISSUE OF WHETHER THE GOVERNMENT BREACHED
THE PLEA AGREEMENT .................................................................................20

E. THE COURT SHOULD ALTER OR AMEND ITS JUDGMENT WITH
RESPECT TO WHETHER IT WILL GRANT A CERTIFICATE OF
APPEALABILITY..............................................................................................24

CONCLUSION .................................................................................................26

Certificate of Service

# TABLE OF AUTHORITIES

## Cases

*Anderson v. United States*, 865 F.3d 914 (7th Cir. 2017) ..................................10, 11

*Buck v. Davis*, 137 S.Ct. 759 (2017). ........................................................................25

*Bouchillon v. Collins*, 907 F.2d 589 (5th Cir. 990) ...............................................9, 12

*Delatorre v. United States*, 847 F.3d 837 (7th Cir. 2017),.........................................23

*Escamilla v. Stephens*, 749 F.3d 380 (5th Cir. 2014 ..................................................19

*Galbraith v. United States*, 313 F.3d 1001 (7th Cir. 2002).......................................22

*Hale v. Townley*, 45 F.3d 914, 921 (5th Cir. 1995)......................................................7

*Jefferson v. Welborn,* 222 F.3d 286 (7th Cir.2000)....................................................25

*Mata v. Johnson*, 210 F.3d 324 (5th Cir. 2000) ...........................................................9

*Maxwell v. Roe*, 606 F.3d 561 (9th Cir. 2010) ...........................................................12

*Miller-El v. Cockrell,* 537 U.S. 322 (2003).........................................................24, 25

*Rosenzweig v. Azurix Corp*., 332 F.3d 854 (5th Cir. 2003).........................................7

*Struck v. Cook County Public Guardian*, 901 N.E.2d 946 (Ill.App. 2008). ...........11

*Slack v. McDaniel,* 529 U.S. 473 (2000)....................................................................24

*United States v. Borders*, 992 F.2d 563 (5th Cir. 1993)............................................20

*United States v. Cates*, 952 F.2d 149 (5th Cir. 1992)................................................20

*United States v. Ceron*, 775 F.3d 222 (5th Cir. 2014)...............................................22

*Templet v. HydroChem Inc.,* 367 F.3d 473 (5th Cir. 2004) ........................................7

*United States v. Palomo*, 998 F.2d 253 (5th Cir. 1993) ...........................................20

*United States v. Pierce*, 959 F.2d 1297 (5th Cir. 1992) ...........................................22

*Waltman v. International Paper Co.*, 875 F.2d 468 (5th Cir. 1989) ...........................6

W*eeden v. Johnson*, 854 F.3d 1063 (9th Cir. 2017)...................................................19

### MEMORANDUM IN SUPPORT OF RULE 59 (E) MOTION

On December 1, 2011, represented by attorney Stephen Karns ("Karns"), defendant Robert Cuff ("Cuff") pled guilty to the crime of engaging in a child exploitation enterprise in violation of 18 U.S.C.§ 2252A(g). On July 12, 2012, Cuff, represented at that time by attorney Eric Schweitzer ("Schweitzer") in addition to Karns, moved to withdraw his guilty plea. Doc. 521. The Court denied the motion. The Court sentenced Cuff to life imprisonment and lifetime supervised release. Doc. 540. The defendant appealed, and on August 7, 2013, the Fifth Circuit affirmed his conviction and sentence. Doc. 679. The Supreme Court of the United States denied the defendant's petition for certiorari. Doc. 692.

On December 6, 2014 and December 15, 2014, represented by attorney Steven Hormel ("Hormel"), the defendant moved to vacate his conviction and sentence pursuant to 28 U.S.C. § 2255. Docs. 732, 737. Among other things, Cuff raised the following claims:

(1) The government breached the plea agreement not to prosecute him for another offense;

(2) Attorney Karns was ineffective for failing to move for a competency review before the sentencing under 18 U.S.C. § 4241;

(3) Attorney Karns was ineffective for failing to investigate defenses of insanity or involuntary intoxication;

5

(4) Attorney Karns was ineffective for failing to investigate the case;

(5) The conviction for engaging in a child exploitation enterprise under 18

U.S.C. 2252(A)(g) was constitutionally defective because the statute

lacked a *mens rea* element that would require the prosecution to prove

that Cuff knowingly acted in concert with three or more persons, and

alternatively, that trial counsel Karns was ineffective in failing to raise the

*mens rea* element in Cuff's defense;

(6) Attorney Karns was ineffective for failing to object to the five-level

enhancement under U.S.S.G. § 4B1.5 (b); and

**(7)** Attorney Karns was ineffective for failing to ensure that Cuff fully

understood at the change of plea hearing that district court could impose a

term of life in prison even if Cuff waived his right to a jury trial, resulting

in an involuntary and unknowing plea.

## ARGUMENT

## A. UNDER RULE 59(E), THE COURT HAS AUTHORITY TO ALTER OR AMEND ITS JUDGMENT AND VACATE THE CONVICTION AND SENTENCE.

Federal Rule of Civil Procedure 59(e) grants the Court the power to alter or

amend its judgment.  A motion under this Rule "serves the narrow purpose of

allowing a party to correct manifest errors of law or fact or to present newly

discovered evidence." *Waltman v. International Paper Co*., 875 F.2d 468, 473 (5th

Cir. 1989); *Templet v. HydroChem Inc.,* 367 F.3d 473, 478-79 (5th Cir. 2004).  A

Rule 59(e) motion "must clearly establish either a manifest error of law or fact or

must present newly discovered evidence and cannot be used to raise arguments

which could, and should, have been made before the judgment issued.  *Rosenzweig*

*v. Azurix Corp*., 332 F.3d 854, 863 (5th Cir. 2003).  The motion "calls into question

the correctness of a judgment." *Templet*, 367 F.3d at 478.  The Court has broad

discretion with respect to granting this motion, but "reconsideration of a judgment

after its entry is an extraordinary remedy that should be used sparingly." *Id*. at 479.

 In exercising its discretion, "a district court must strike the proper balance between

the need for finality and the need to render just decisions on the basis of all the

facts." *Hale v. Townley*, 45 F.3d 914, 921 (5th Cir. 1995).

## B. THE COURT SHOULD ALTER OR AMEND ITS JUDGMENT WITH RESPECT TO THE ISSUE OF WHETHER TRIAL COUNSEL WAS INEFFECTIVE IN NOT MOVING FOR A COMPETENCY HEARING BEFORE CUFF WAS SENTENCED.

*1. The defendant's statement at the plea hearing that he had PTSD and "believed" it was not affecting him was a red flag.*

At the time that Cuff entered his plea of guilty, the Court asked Cuff if had

had medical problems in the past.  He responded somewhat strangely and

incoherently:  "I was told I did, but I was helped out of the questioning [sic]. When

you leave a war zone, they – the corpsman would help me do the paperwork so I

wouldn't fail it. [sic]" 12/1/2011 TR 7, lines 18-20.  This strange answer is

indicative of a thought disorder of some kind.  The Court then asked Cuff if he suffered from post-traumatic stress syndrome, and he responded, "I was told I did since Somalia, Your Honor."  *Id*. lines 23-24. The Court then asked whether Cuff had "recover[ed] from the PTSD, and Mr. Cuff responded, "No, Your Honor."  RT 8, line 2.  The Court then asked Cuff whether he was being actively treated for the PTSD, and he responded that he was just starting treatment.  RT 8, lines 5-7.  Finally, the Court asked Cuff if was on any kind of medication, and he responded he was not.

Later in the plea colloquy, the Court stated as follows:  "In discussions held off the record before we convened today, I am concerned over not a mental competency issue, I'm concerned over a mental status issue, and I have provided counsel with the name of a local Ph.D. psychologist, clinical psychologist, who can conduct that. I am concerned that he may need to be on medication -- I don't know the answer to that." RT 30: 3-10.

Cuff answered one of the Court's questions in an incoherent manner.  In addition, he told the Court that he was suffering from PTSD and had not recovered from that mental disorder.  PTSD is a serious mental illness arising from experiencing, witnessing, or hearing about traumatic events.  "PTSD is not uncommon among veterans returning from combat."  *Porter v. McCollum*, 558 U.S. 30, 36 (2009).  Symptoms include "behaving recklessly or in a self-destructive

8

way." Diagnostic and Statistical Manual of Mental Disorders (DSM-V) (criterion E for PTSD). They also include "having problems concentrating, experiencing events as if one were an outside observer of or detached from oneself (e.g., feeling as if "this is not happening to me" or one were in a dream)," or experiencing events as "unreality, distance, or distortion (e.g., "things are not real"). *Id*. PTSD can be "a grave affliction." *United States v. Cantu*, 12 F.3d 1506, 1513 (9th Cir. 1993). The symptoms of both PTSD seriously impair a defendant's ability to understand legal proceedings and assist his attorney.

Upon hearing Cuff's strange and incoherent answer to the question whether he had medical issues in the past, and upon hearing his statements to the Court as to his "belief" that he understood the proceedings, and upon hearing that he had not recovered from PTSD, trial attorney Karns should have been alerted to Cuff's impaired mental state and questioned Cuff's competency at that stage. This is particularly true when the Court itself expressed its concern over Cuff's "mental status issue" and wanted to ascertain if Cuff should be on medication.

Before having Cuff enter a guilty plea, Karns should have moved for a competency hearing under 18 U.S.C. § 4241. *See Bouchillon v. Collins*, 907 F.2d 589, 597 (5th Cir. 990) (trial counsel was ineffective in failing to investigate client's competence after he had notice of client's past institutionalization). The Court also had a *sua sponte* duty to call for such a hearing. *See Mata v. Johnson*, 210 F.3d

9

324, 330 (5th Cir. 2000) (court "must conduct an inquiry into the defendant's mental capacity, either *sua sponte* or in response to a motion by petitioner's counsel, if the evidence raises a bona fide doubt as to his competency.").  In any event, Karns should surely have done so before Cuff was sentenced.  As will be shown below, the Court should reconsider its judgment on this issue.

> *2. The defendant's statement at the guilty plea hearing that he did not believe he had a mental illness affecting his ability to understand the proceedings is not dispositive.*

   In its opinion ("Op.") denying the 2255 motion, the Court relied upon Cuff's response at the plea colloquy that he did not believe that he had a mental problem that would limit his ability to understand what was happening.  Op. at 18.  The court should reconsider its reliance on this statement.  Cuff's statement that he did "not believe" he had a mental problem that would limit his ability to understand what was happening in court is hardly a ringing, definitive statement of competency.  The vast majority of competent persons asked such a question would simply answer, "No."  It is true that later in the same sentence Cuff answered, "No," but his initial, tentative "I believe" should have alerted both trial counsel and the Court that a serious question existed as to whether Cuff fully understood what was happening.  *See Anderson v. United States*, 865 F.3d 914, 920 (7th Cir.  2017) (in response to court's question whether defendant understood what was happening, his

10

reply that he understood "as good as I can" acknowledged "some inability to think clearly and participate in the proceedings").

In its opinion the Court relied on the principle that statements in "open court during a plea hearing carry a strong presumption of verity." *United States v. Martinez-Molina*, 64 F.3d 719, 733 (5th Cir. 1995) (citing *Blackledge v. Allison*, 431 U.S. 63, 74 (1977)). Op. at 11. While this principle is true in general, it applies with much less force in the case of a person who suffers from a mental illness. *See e.g., Anderson*, 865 F.3d at 920 ("Anderson's belief about the effects of his medication is inadequate assurance that he was capable of entering a plea: A person grappling with a serious mental illness or under the influence of psychotropic drugs cannot be assumed to have a reliable understanding of his faculties.").

The failure of certain mentally ill persons to recognize their illness or the effect it is having is a well known syndrome called Anosognosia. In the words of one court, it is "the failure to appreciate one's own illness." *Struck v. Cook County Public Guardian*, 901 N.E.2d 946, 948 (Ill.App. 2008). Anosognosia is a common consequence of brain injuries, and occurs to varying degrees in such disorders such as schizophrenia, bipolar disorder, and Alzheimer's disease. Therefore, the Court should reconsider its view of the weight to be given Cuff's statement at the entry of his guilty plea.

11

### 3. Mr. Karns' opinion of Cuff's competence is not dispositive.

In finding that Cuff was competent to be sentenced, the Court relied on the opinion of trial counsel Karns at the time of the plea that Cuff was competent to proceed. Op. 11. In the usual case, trial counsel's opinion as to his client's mental state appropriately carries great weight; nevertheless, the law is clear that lawyers have no special ability to diagnose mental illnesses and their effects on their clients' mental state. *See Bouchillon*, 907 F.2d at 593–94 ("the state court, in reviewing Bouchillon's petition, relied almost exclusively on the evidence of Bouchillon's demeanor at the plea proceeding and the testimony of his trial counsel to hold that he was competent . . . [T]he existence of even a severe psychiatric defect is not always apparent to laymen . . . . One need not be catatonic, raving or frothing, to be [legally incompetent.]") (citations omitted); *Maxwell v. Roe*, 606 F.3d 561, 574 (9th Cir. 2010) ("[A]lthough we acknowledge that defense counsel will often have the best-informed view of the defendant's ability to participate in his defense, we have recognized that counsel is not a trained mental health professional and his failure to raise petitioner's competence does not establish that petitioner was competent.") (citations omitted). Therefore, Karns' opinion at the time of the guilty plea is not dispositive.

*4. Trial counsel should have moved for a competency hearing before sentencing.*

On May 10, 2012, two months before sentencing, Dr. Nevin Remington examined Mr. Cuff's medical history. He concluded that Cuff's personality changes and "profound impairment in short-term memory" were "consistent with possible late neurotoxic effects of limbic encephalopathy caused by repeated mefloquine intoxication." Exhibit 4 at page 37 (Cuff's Navy medical records). These Navy records are new evidence that was not before the Court at the time it denied the 2255 motion. Dr. Nevin observed that Cuff reported symptom of "abnormal dreams, anxiety, and paranoid reactions." *Id*. Finally, Dr. Remington observed that mefloquine intoxication has been associated with "a morbid fascination with violence and violent objects, aggression, increased impulsivity, and sexual inhibition." *Id*.

About May 18, 2012, Mr. Cuff was found unresponsive after complaining the evening before of a headache. *Id*. at 33. H was taken to LSUHSC where he was admitted with a diagnosis of "altered level of consciousness and altered mental status, with a Glasgow Coma Scale of 3." *Id*. In Dr. Remington's opinion, Cuff's symptoms were "highly suspicious for a deep brain or brainstem seizure" and provided "further support for the diagnosis of neurotoxic injury from his earlier use of mefloquine." *Id*. In a later report, dated June 12, 2012, Dr. Remington noted that

13

when Cuff had been found unresponsive, he remained so even when "painful stimuli" were applied. *Id*. at page 31. In addition, his pupils were sluggish." *Id*. Dr. Remington reviewed additional records and concluded that they "further substantiate[d] the assessment" that Cuff likely "suffered a deep brain or limbic seizure related to neurotoxicity from his early use of mefloquine, and that his condition was "chronic and unstable." *Id*.

At the sentencing hearing, attorney Schweitzer presented the reports of Dr. Nevin and Dr. Stanulis opining that Cuff suffered from encephalopathy (brain damage) from his early use of mefloquine; and that such damage contributed to his criminal conduct. At the sentencing hearing, the Court expressed disagreement with these conclusions. See RT 7/13/2012 RT 5, lines 10-11 ("I realize you say it's unquestionably. I question that myself with respect to those conclusions."); *id.* at page 6, Lines 2-3 ("Nor does it mean that I have to accept [Dr. Nevin's conclusion] on its face, as an expert opinion."). The Court was of the view that the conclusion of Dr. Nevin and Dr. Stanulis respecting the effects of mefloqine were "more cutting-edge theory than . . . accepted fact. I have a problem with respect to that which has been submitted." RT 8: lines 20-22. The Court went on to say, "On its face, [the conclusion of Dr. Nevin] does not meet a *Daubert* standard, in the Court's opinion. The Court finds that this is a cutting-edge issue and is by no means accepted fact." RT 10: 10-12. Because Dr. Nevin had not physically examined

14

Cuff, the Court entirely discounted his opinion.  *See* RT 17: 13-14 ("And all doctors are to be believed under all sets of circumstances; am I correct on that?"); RT 34: 6-8 (That Cuff has encephalopathy "is a theory, supposition. The perseveration is consistent with but is not diagnosed as encephalopathy.").

   The Court should reconsider its view light of new evidence.  See Exhibit 12 (Bureau of Prison ("BOP") Health Services Report).   As of January 9, 2018, Dr. Vyneda Smith of the BOP Health Services diagnosed Cuff as suffering from Psychosis (both visual and auditory hallucinations), Schizophrenia, and "*Mefloquine brain disorder*." *Id*. at page 12 (emphasis added).  He was also diagnosed with Posttraumatic Stress Disorder with Psychotic Features. *Id*. at page 21.   Unfortunately, he is now also suffering from non-Hodgkins "stage IV diffuse large B cell lymphoma." *Id*. at 12. Because the new evidence confirms Dr. Nevin's conclusion that at the time of his criminal conduct, Cuff was suffering from a brain disorder caused by use of Mefloquine, the Court should alter and amend its judgment with respect to whether his plea and or sentence should be vacated.

      The following additional new evidence confirms that serious brain damage and psychotic symptoms flow from mefloquine use.  See Exhibit 5, article published September, 2013, "Brain-damaging Side Effects Force Army to Pull Mefloquine" ("The top doctor for Green Berets and other elite Army commandos has told troops to immediately stop taking mefloqine, an anti-malaria drug found to

cause permanent brain damage in rare cases"); Exhibit 1, article published June 8,

2016, ("Melofquiine-induced neuropsychiatric symptoms can be life debilitating");

Exhibit 6, article published November 12, 2015 in the Pharmaceutical Journal

("The overwhelming evidence about the dangers of long-term use of mefloquine

leaves the UK Ministry of Defence little excuse to continue giving this drug to

soldiers."); Exhibit 2, article published 2015 from Academy of Psychosomatic

Medicine, "Depersonalization/Derealization Disorder After Exposure to

Mefloquine"); Exhibit 3, article published 2015, "Behavioral effects of Mefloqine

in tail suspension and light/dark tests" ("In the past 10-15 years concerns about

mefloquine' s neuropsychiatric side effects have grown." ); Exhibit 10, article

published 2015 by Nevin and Ritchie, "The Mefloquine Intoxication Syndrome"

(Acute mefloquine intoxication may produce vivid, hyper-realistic nightmares that

may precede a manic, paranoid, dissociative or confuse psychosis, often marred by

horrific auditory and visual hallucinations"); Exhibit 9, article published October,

2016 in Federal Practitioner, "FDA Black Box, VA Red ink?...." ("The FDA in July

2013 included a black box warning describing [neuropsychiatric reactions]

potentially could persist long after the drug has been discontinued . . . .

Consequently, more than a quarter century after its introduction, mefloquine now is

only rarely prescribed to members of the U.S. military."); Exhibit 8, article

published 2013 in the Journal of the American Psychiatry and the Law, "Psychiatric

Side Effects of Mefloquine: Applications to Forensic Psychiatry" ("severe psychiatric side effects due to mefloquine intoxication are well documented including anxiety, panic attacks, paranoia, persecutory delusions, dissociative psychosis, and anterograde amnesia. Exposure to the drug has bene associated with acts of violence and suicide.").

Finally, and most importantly, on August 29, 2014,  Dr. Byron Herbel, a Board Certified Psychiatrist with the Bureau of Prisons, determined that Cuff was incompetent to proceed with a case in the Western District of Texas.  Exhibit 14. Dr. Herbel wrote that "Mr. Cuff is suffering from a mental disease or defect rendering him mentally incompetent to the extent he is unable to understand the nature and consequence of the proceedings filed against him or assist properly in his own defense."  Among his other findings, Dr. Herbel diagnosed Cuff as suffering from "Major Neurocognitive Disorder Due To Multiple Etiologies— severe chronic alcohol use, plausible limbic neurotoxicity from past mefloquine exposure, and past traumatic brain injury (Provisional) and also from Mefloquine-Induced Psychotic Disorder (Provisional)."  The Curt's opinion makes no mention of this report from the BOP.   If Cuff was incompetent on August 29, 2014, suffering in part from the effects of mefloquine, he very likely was just as incompetent in July of 2012.

17

At the sentencing, the Court was justifiably outraged by the defendant's conduct as depicted on the videotapes. The Court believed that Cuff was a "very cold, calculating, purposeful defendant." RT 38:10-11. The Court should reconsider its view. The Court should bear in mind that this conduct may well have been caused in part by forces outside of the defendant's control, namely, progressive brain damage stemming from use of mefloquine, which, through no fault of his own, led to distortion of Cuff's judgment and loosening of his sexual inhibitions. While not excusing criminal conduct, such brain damage should mitigate the sentence at least to some extent. After all, there is an enormous difference between a person who intentionally and deliberately commits criminal acts and one who commits them because brain damage over which he has no control has impaired his judgement. *See* U.S.S.G. § 5H1.3 ("mental and emotional conditions may be relevant in determining whether a departure is warranted…."); §5K2.13 (departure may be warranted if (1) the defendant committed the offense while suffering from "a significantly reduced mental capacity" and this reduced capacity "contributed substantially to the commission of the crime").

At sentencing the Court also rejected the experts' opinion because it found it inconsistent that the brain damage did not affect Cuff's work for the military which was exemplary, while at the same time contributed to his criminal conduct while not at work. The Court referred to the "Jekyll-and-Hyde type of activity that we have

18

involved here: the sterling, unassailable military record, with multiple medals and citations, and the hiding or the so-called dark side of behavior of this defendant, the Court is unable to reconcile the light in day versus the nighttime of this defendant." RT 76: 15-20.  The Court should reconsider this view in light of the new evidence presented:  Mefloquine produces just such "Jekyll-and-Hyde" type of activity.  See Exhibit 2 ("Depersonalization/Derealization Disorder after Exposure to Mefloqine") ("Although [the patient] recognized himself in the photo, he said it "didn't feel like it was me.").

The Court was of the view that Mr. Cuff's retaining of attorney Schweitzer at the last moment was "a clear attempt to subvert the process by new defense counsel." RT 73: 16-17.  The Court was unaware that the defendant's sister, Jacqueline Seibert, had been trying desperately for months to retain a different attorney who misled her with respect to his coming into the case.
*See* Exhibit 16 (email correspondence between Seibert and attorney Sheppard).

In view of the foregoing new evidence, the Court should consider that is skepticism at sentencing with respect to the Dr. Nevin's opinion was unwarranted. The Court should therefore alter or amend its judgment.

19

**C. THE COURT SHOULD ALTER OR AMEND ITS JUDGMENT WITH RESPECT TO WHETHER TRIAL COUNSEL WAS INEFFECITVE IN NOT INVESTIGATING CUFF'S MENTAL CONDITION BEFORE ADVISING HIM TO PLEAD GUILTY.**

It is clear that attorney Karns did not conduct the necessary investigation into Cuff's mental state and history with mefloquine before advising him to plead guilty. Investigation must precede the formulation of defense strategy. *See Escamilla v. Stephens*, 749 F.3d 380, 392 (5th Cir. 2014) ("if a purportedly tactical decision is not preceded by a reasonable investigation, then it is not sufficiently informed and not entitled to the deference typically afforded counsel's choices"); W*eeden v. Johnson*, 854 F.3d 1063 (9th Cir. 2017) (trial counsel was ineffective in failing to investigate psychological evidence about effect of petitioner's mental state before formulating defense strategy).

For the reasons set forth in Argument B above, the Court should amend or alter its judgment with respect to this issue.

**D. THE COURT SHOULD ALTER OR AMEND ITS JUDGMENT WITH RESPECT TO THE ISSUE OF WHETHER THE GOVERNMENT BREACHED THE PLEA AGREEMENT.**

If a guilty plea is entered as part of a plea agreement, "the government must strictly adhere to the terms and conditions of its promises." *United States v. Harper*, 643 F.3d 135, 139 (5th Cir. 2011); *United States v. Valencia,* 985 F.2d 758, 760 (5th Cir.1993) (same).  As the Supreme Court has admonished, if a guilty plea "rests in

any significant degree on a promise or agreement of the prosecutor, so that it can be said to be part of the inducement or consideration, such promise must be fulfilled." *Santobello v. New York,* 404 U.S. 257, 262 (1971).

It is well settled that a guilty plea based on a breached plea agreement "is subject to collateral attack under the writ of habeas corpus…  Such a plea is also necessarily subject to collateral attack under § 2255." *United States v. Cates*, 952 F.2d 149, 151–52 (5th Cir. 1992); *see United States v. Borders*, 992 F.2d 563, 566 (5th Cir. 1993) ("A defendant may collaterally attack his guilty plea on the grounds of an alleged violation of the plea agreement.").

 "Whether the government's conduct violated the terms of the plea agreement is a question of law." *United States v. Palomo*, 998 F.2d 253, 256 (5th Cir. 1993) (quotation omitted); A defendant bears the burden of proving the underlying facts establishing a breach by a preponderance of the evidence, *Id;* however, any ambiguity in the terms of a plea agreement are construed against the government. *United States v. Escobedo*, 757 F.3d 229, 233 (5th Cir. 2014).

In the first claim of his Section 2255 motion, Cuff asserted that the government breached the plea agreement by indicting him in the Western District of Texas.  As part of the plea agreement in this case, the Government promised not to bring any other prosecution against Mr. Cuff "for any offense known to the United States Attorney's Office, based on the investigation which form the basis of the

21

Second Superseding Indictment." Docket 387 at 1-2. Unbeknownst to the

defendant, however, the Government obtained a secret Indictment in the Western

District of Texas. Although there is a split of authority on whether the promise of

the United States Attorney's Office in the Western District of Louisiana bound all

such offices throughout the United States including the Western District of Texas,

there can be no question that Cuff reasonably expected that the plea agreement

protected him from a prosecution in the Western District.

In its opinion the Court held that it would not reach the merits of this claim

because, according to the Court, Cuff could not show "cause and prejudice" for

failing to raise the claim on direct appeal. Op. at 7-8. The Court acknowledges that

a declaration from trial counsel Karns states that Karns was unaware of the

indictment in the Western District of Texas, but the Court holds that that appellate

counsel should have presented the declaration to the court of appeals. Op. at 8.

The Court should reconsider its decision because Cuff does have cause for

not raising the issue of breach of the plea bargain on appeal. Preliminarily, it is

clear that the claim could not be raised in the district court because none of the

parties were aware that the breach had occurred. For this reasons, no evidence of

such a breach was introduced in the district court. It is true that by the time of the

direct appeal, appellate counsel was aware of the Texas indictment; however, the

court of appeals reviews errors only "based on the record before the district court."

*United States v. Ceron*, 775 F.3d 222, 226 (5th Cir. 2014). A party cannot introduce evidence in the court of appeals that was not first raised in the district court. *See Galbraith v. United States*, 313 F.3d 1001, 1007 (7th Cir. 2002) ("[a] reviewing court on direct appeal is limited to the record of trial and cannot consider any extrinsic evidence.").

This is analogous to the claim of ineffective assistance of counsel. These claims are raised in collateral proceedings so extrinsic evidence can be introduced. *See United States v. Pierce*, 959 F.2d 1297, 1301 (5th Cir. 1992)( "[t]he general rule in this circuit is that a claim of ineffective assistance of counsel cannot be resolved on direct appeal when the claim has not been raised before the district court since no opportunity existed to develop the record on the merits of the allegations."). Thus, Cuff's appellate counsel on direct review justifiably did not raise breach of the plea agreement on appeal because there were no facts in the record of the district court to support the claim.

*Delatorre v. United States*, 847 F.3d 837, 844 (7th Cir. 2017), is instructive. In that case the defendant sought to raise prosecutorial misconduct in a 2255 motion. The court rejected this claim. It reasoned that the prosecutorial-misconduct claim did not by its very nature require augmentation of the record. The court observed that "the only reason extrinsic evidence is required to prove his claim is because *he* failed to raise this claim in the district court in the first place." It

reasoned further that "had he raised this claim at the proper time—in the district court before he was convicted—his evidence supporting that claim would have been in the trial record and could have been considered on direct appeal." Thus the court concluded that his prosecutorial-misconduct claim was "not akin to an ineffective-assistance-of-counsel claim in this regard." The court reasoned that because Delatorre "has provided no plausible "cause" for his failure to raise his prosecutorial-misconduct claim before collateral review," the court would not reach the issue.

Here, unlike in *Delatorre*, Cuff could not raise the claim in the district court because at the time he was unaware that the breach had occurred. Thus Cuff has shown good cause for failing to raise the issue on direct appeal. Moreover, the prejudice from his failure to do so is likewise clear: He is prejudiced in having lost the opportunity to obtain a ruling on the merits of the claim. Accordingly, the court should alter amend its judgement with respect to this issue.

## E. THE COURT SHOULD ALTER OR AMEND ITS JUDGEMENT WITH RESPECT TO WHETHER IT WILL GRANT A CERTIFICATE OF APPEALABILITY.

In its opinion the Court denied a certificate of appealability ("COA"), holding that Cuff had failed to demonstrate a substantial showing of the denial of a constitutional right. Op. at 18. The Court should alter or amend its judgement with respect to this issue. The Supreme Court has counseled that "a court of appeals

24

should not decline the application for a COA merely because it believes the applicant will not demonstrate an entitlement to relief." *Miller-El v. Cockrell,* 537 U.S. 322, 337 (2003).

In *Slack v. McDaniel,* 529 U.S. 473, 479, (2000), the Court declared that a COA should issue if "jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right." In *Miller-El,* the Court further clarified that a habeas petitioner need not "prove, before the issuance of a COA, that some jurists would grant the petition for habeas corpus" and that "a claim can be debatable even though every jurist of reason might agree, after the COA has been granted and the case has received full consideration, that petitioner will not prevail." 537 U.S. at 338. Just recently the Supreme Court emphasized that "a claim can be debatable even though every jurist of reason might agree, after the COA has been granted and the case has received full consideration, that petitioner will not prevail." *Buck v. Davis*, 137 S.Ct. 759, 774 (2017). Thus, the standard for obtaining a COA is not a particularly exacting one. *See Jefferson v. Welborn,* 222 F.3d 286, 289 (7th Cir.2000) (stating that a COA should issue unless the claims are "utterly without merit").

The issues raised in the 2255 motion and in the Rule 59(e) motion are not frivolous and do raise questions about which reasonable jurists could differ. Even assuming, arguendo, that Court denies the Rule 59 (e) motion with respect to the

25

other issues, the Court at the very least should alter or amend its judgment with respect to the granting of a COA.

## CONCLUSION

For the reasons set forth above, the Court should reconsider or alter its judgment and should vacate Cuff's plea and sentence. Alternatively, the Court should grant a COA.

Respectfully Submitted:

/s/*Michael R. Levine*
Michael R. Levine

26

## CERTIFICATE OF SERVICE

I, Michael R. Levine, hereby certify that on April 9, 2018, I caused to be

served this Memorandum by ECF to which all parties subscribe.

/s/ *Michael R. Levine*
Michael R. Levine
Levine & McHenry
1001 S.W. Fifth Avenue, Suite 1414
Portland, Oregon 97204
Phone: 503-546-3927
Cell:    503-939-4334
Facsimile: 503-224-3203
Email: michael@levinemchenry.com

Michael R. Levine, Oregon Bar No. 931421
California Bar No. 61883, *admitted here pro hac vice*
Levine & McHenry
1001 S.W. Fifth Avenue, Suite 1414
Portland, Oregon 97204
Phone:  503-546-3927
Cell:     503-939-4334
Facsimile:  503-224-3203
Email: michael@levinemchenry.com
Attorney for Robert Cuff

IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION

UNITED STATES OF AMERICA,

       Plaintiff,

  vs.

ROBERT CUFF, aka Slapolot, dd0040

      Defendant.

No. 5:11-CR-00062-SMH-MLH-21

Judge HICKS

Magistrate Judge HORNSBY

_____

**SUPPLEMENTAL MEMORANDUM IN SUPPORT OF RULE 59 (E)
MOTION TO ALTER OR AMEND JUDGMENT**

In his previously filed motion under Rule 59 (e) and memorandum in support (Docs 760, 763), the defendant asked the Court to reconsider its opinion of March 12, 2018 (Doc 756), in several respects and to grant the Section 2255 motion.  By this supplemental memorandum, counsel requests that, at the very least, the Court grant an evidentiary hearing on the claims, as was requested in the Prayer for Relief section of the 2255 motion (Doc. 734) at page 24, lines 9-13.

Under applicable law, a Section 2255 motion "can be denied without a hearing only if the motion, files, and records of the case conclusively show that the prisoner is entitled to no relief." *United States v. Reed,*  719 F.3d 369, 373 (5ᵗʰ Cir. 2013) (quoting *United States v. Bartholomew*,   974 F.2d 39, 41 (5th Cir.1992)); *accord Friedman v. United States,* 588 F.2d 1010, 1014-15 (5th Cir.1979); *see also* 28 U.S.C. § 2255 (2017).

In addition, the defendant supplements the memorandum with the attached Exhibits 17-21 provided to counsel by Jacqueline Seibert, the defendant's sister. According to Ms. Seibert:

(1) Exhibit 17 is a partial list of errors committed by trial attorney Stephen Karns;

(2)  Exhibits 18, 19, and 20 contain e-mail exchanges between Ms. Seibert and United Nations representative Juan Mendez discussing the beatings and

mistreatment that Mr. Cuff was experiencing while imprisoned.

(3) Exhibit 21 is an e-mail exchange between Ms. Seibert and attorney

Sheppard regarding Sheppard's failure to come into the case as attorney for Cuff

although he had promised to do so.  This course of conduct was referenced in the

original memorandum at page 19, albeit with a mistaken citation to Exhibit 16,

instead of the correct exhibit, attached here as Exhibit 21.

Respectfully Submitted:

/s/*Michael R. Levine*
Michael R. Levine

3

## CERTIFICATE OF SERVICE

I, Michael R. Levine, hereby certify that on April 11, 2018, I caused to be

served this Supplemental Memorandum and Exhibits  by ECF to which all parties

subscribe.

> /s/ *Michael R. Levine*
> Michael R. Levine
> Levine & McHenry
> 1001 S.W. Fifth Avenue, Suite 1414
> Portland, Oregon 97204
> Phone:  503-546-3927
> Cell:    503-939-4334
> Facsimile:  503-224-3203
> Email: michael@levinemchenry.com

**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF LOUISIANA**
**SHREVEPORT DIVISION**

UNITED STATES OF AMERICA                    CRIMINAL ACTION NO. 11-00062-21

VERSUS                                                       JUDGE S. MAURICE HICKS, JR.

ROBERT CUFF                                          MAGISTRATE JUDGE HORNSBY

**ORDER**

Before the Court is Defendant, Robert Cuff's ("Cuff") Motion to Alter or Amend the Judgment (Record Document 760) filed on April, 9, 2018. For the following reasons, Cuff's Motion is **DENIED.**

Altering or amending a judgment is considered "an extraordinary measure, which courts should use sparingly." In the Matter of Self, 172 F.Supp.2d 813, 816 (W.D.La.2001) (citing 11 Charles A. Wright, Arthur R. Miller, & Mary Kay Kane, Federal Practice and Procedure § 2810.1). Generally, a motion to alter or amend a judgment, filed under Rule 59(e) may be granted: "(1) to correct manifest errors of law or fact upon which judgment is based; (2) the availability of new evidence; (3) the need to prevent manifest injustice; or (4) an intervening change in controlling law. Id. at 816.

Nothing asserted in Cuff's Motion moves the Court to alter or amend its prior judgment. Cuff continues to make the same claims asserted in his federal habeas corpus petition.

**THUS DONE AND SIGNED**, in Shreveport, Louisiana, this 12th day of April, 2018.

S. MAURICE HICKS, JR., CHIEF JUDGE
UNITED STATES DISTRICT COURT

Michael R. Levine, Oregon Bar # 931421
Levine & McHenry, LLC
1001 S.W. Fifth Avenue, Suite 1414
Portland, Oregon 97204
Phone: 503-546-3927
Fax:    503-224-3203
E-mail: michael@levinemchenry.com
Admitted *pro hac vice*

## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF LOUISIANA
## SHREVEPORT DIVISION

UNITED STATES OF AMERICA,

    Plaintiff-Appellee,

vs.

ROBERT CUFF,

    Defendant-Appellant.

USDC No. 5:11-CR-00062-21

**NOTICE OF APPEAL**

The defendant, Robert Cuff, through his attorney Michael R. Levine,

hereby APPEALS to the Fifth Circuit Court of Appeals from the order of

the Honorable S. Maurice Hicks entered on March 12, 2018, which denied

Cuff's motion under 28 U.S.C. § 2255 to vacate his conviction and sentence,

and from Judge Hicks's order of April 12, 2018, which denied Cuff's Rule

59 (e) motion to alter or amend the judgment

        s/s *Michael R. Levine*
        Michael R. Levine

## CERTIFICATE OF SERVICE

I certify that on the date set forth below, I served the Notice of Appeal on the

United States Attorney's Office for the Western District of Louisiana via

ECF and by e-mail as follows:    Camille.Domingue@usdoj.gov

Dated: June 1, 2018                               /s/ *Michael R. Levine*
                                                  Michael R. Levine

IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

UNITED STATES OF AMERICA,

      Plaintiff-Appellee,      C.A. No. 18-30694

vs.

ROBERT CUFF               DC 5:11-CR-00062-21
                        (W.D. Louisiana)

      Defendant-Appellant.

_____

## MOTION FOR CERTIFICATE OF APPEALABILTY

Appellant Robert Cuff, through his attorney Michael R. Levine, has filed a Notice of Appeal from the orders and judgments of the district court entered on March 12, 2018 and April 12, 2018, which respectively denied Cuff's motion under 28 U.S.C. § 2255 to vacate his conviction and his motion under Rule 59 (e) of the Federal Rules of Civil Procedure to reconsider. The district court has denied a Certificate of Appealabilty with respect to the first order.

Mr. Cuff now moves this Court to issue a Certificate of Appealabilty with respect to each of the following issues:

A. Whether the government breached the plea agreement;

B.    Whether trial counsel was ineffective in not adequately investigating Mr. Cuff's mental condition and viable defenses before advising him to plead guilty;

C. Whether trial counsel was ineffective in not moving for a competency hearing before sentencing; and

D. Whether the trial court abused its discretion in denying the Rule 59 (e) motion to reconsider its opinion denying the 2255 motion.

This motion is based on records of the case and the brief in support of the

motion which will be filed shortly.

Respectfully Submitted

/s/*Michael R. Levine*
Michael R. Levine, Oregon Bar #931421
LEVINE & MCHENRY, LLC
1001 S.W. Fifth Avenue, Suite 1414
Portland, Oregon 97204
Phone:  503-546-3927
Cell:    503-939-4334
Facsimile:  503-224-3203
Email: michael@levinemchenry.com

## CERTIFICATE OF SERVICE

I, Michael R. Levine, hereby certify that I caused to be served the above

Motion for a Certificate of Appealability by ECF in the Western District of

Louisiana.  All parties are signed on to this service.

/s/ *Michael R. Levine*
Michael R. Levine
Levine & McHenry
1001 S.W. Fifth Avenue, Suite 1414
Portland, Oregon 97204
Phone:  503-546-3927
Cell:     503-939-4334
Facsimile:  503-224-3203
Email: michael@levinemchenry.com

IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

UNITED STATES OF AMERICA,

      Plaintiff-Appellee,

  vs.

ROBERT CUFF,

      Defendant-Appellant.

C.A. No. 18-30694

DC 5:11-CR-00062-21
(W.D. Louisiana)

_____

**BRIEF IN SUPPORT OF MOTION FOR CERTIFICATE OF**

**APPEALABILTY**

Michael R. Levine, Oregon Bar #931421
LEVINE & MCHENRY, LLC
1001 S.W. Fifth Avenue, Suite 1414
Portland, Oregon 97204
Phone: 503-546-3927
cell:  503-939-4334
www.levinemchenry.com
e-mail: michael@levinemchenry.com

i

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ............................................................................. ii

I. STATEMENT OF THE CASE ....................................................................1

   A. Introduction .........................................................................................1

    B. Procedural History..............................................................................3

 II. SUMMARY OF ARGUMENT……………………………………….......17

III. ARGUMENT…………………………………………………………20

A. THE COURT SHOULD GRANT A COA ON THE ISSUE OF
    WHETHER THE GOVERNMENT BREACHED THE PLEA
    AGREEMENT………………………………………………..………20

B.  THE COURT SHOULD GRANT A COA ON THE ISSUE OF
WHETHER TRIAL COUNSEL WAS INEFFECTIVE IN NOT
ADEQUATELY INVESTIGATING CUFF'S MENTAL CONDITION AND
VIABLE DEFENSES BEFORE ADVISING HIM TO PLEAD
GUILTY…………………………...................................................................32

C.  THE COURT SHOULD GRANT A COA ON THE ISSUE OF
WHETHER TRIAL COUNSEL WAS INEFFECTIVE IN NOT MOVING
FOR A COMPETENCY HEARING BEFORE SENTENCING………...…37

D.  THE COURT SHOULD GRANT A COA ON THE ISSUE OF
WHETHER THE TRIAL COURT ABUSED ITS DISCRETION IN
DENYING THE RULE 59 MOTION TO RECONSIDER ITS OPINION
DENYING THE 2255 MOTION……………………………………….…49

IV. CONCLUSION…………………………………………….…………..58

APPENDIX

CERTIFICATE OF COMPLIANCE

CERTIFICATE OF SERVICE

# TABLE OF AUTHORITIES

## Cases

*Anderson v. Johnson*, 338 F.3d 382 (5th Cir. 2003) .........................................36

*Anderson v. United States*, 865 F.3d 914 (7th Cir. 2017).........................46, 47

*Berger v. United States*, 295 U.S. 78 (1935) ..................................................30

*Bouchillon v. Collins*, 907 F.2d 589, 597 (5th Cir. 1990)…………………..37

*Buck v. Davis*, 137 S. Ct. 759 (2017)..............................................................31

*Bousley v. United States*, 523 U.S. 614 (1998)...............................................30

*Drope v. Missouri*, 420 U.S. 162 (1975) ........................................................37

*Cook v. U.S. Atty. Gen*., 488 F.2d 667 (5th Cir. 1973) ...................................36

*Diaz v. Martin*, 718 F.2d 1372 (5th Cir. 1983)...............................................33

*Escamilla v. Stephens*, 749 F.3d 380 (5th Cir. 2014) .................................33, 36

*Galbraith v. United States*, 313 F.3d 1001 (7th Cir. 2002) ............................23

*Hale v. Townley*, 45 F.3d 914 (5th Cir. 1995)………………………………49

*Mata v. Johnson*, 210 F.3d 324 (5th Cir. 2000).............................................37

*Maxwell v. Roe*, 606 F.3d 561 (9th Cir. 2010)................................................48

*Miller-El v. Cockrell,* 537 U.S. 322 (2003)……………………..………32, 39

*Padilla v. Kentucky*, 559 U.S. 356, 364 (2010)……………………………..32

*Porter v. McCollum*, 558 U.S. 30, 36 (2009)………………………………40

*Santobello v. New York,* 404 U.S. 257 (1971) ...........................................20, 29

*Struck v. Cook County Public Guardian*,
901 N.E.2d 946 (Ill. App. 2008) ......................................................................46

*Slack v. McDaniel,* 529 U.S. 473 (2000) .........................................................31

*Strickland v. Washington*, 466 U.S. 668, 691 (1984)………………………33

*Theriot v. Parish of Jefferson,* 185 F.3d 477 (5th Cir. 1999) .........................22

*United States  v. Al-Arian*, 514 F.3d 1184 (11th Cir. 2008) ...........................25

*United States v. Annabi,* 771 F.2d 670 (2d Cir.1985)......................................28

*United States v. Borders*, 992 F.2d 563 (5th Cir. 1993) ..................................20

*United States v. Cantu*, 185 F.3d 298 (5th Cir. 1999) .....................................27

*United States v. Cantu*, 12 F.3d 1506 (9th Cir. 1993). .....................................40

*United States v. Cates*, 952 F.2d 149 (5th Cir. 1992) ......................................20

*United States v. Ceron*, 775 F.3d 222 (5th Cir. 2014) .....................................22

*United States v. Edwards*, 488 F.2d 1154 (5th Cir. 1974)...............................33

*United States v. Elashyi*, 554 F.3d 480 (5th Cir. 2008) .............................20, 26

*United States v. Escobedo*, 757 F.3d 229 (5th Cir. 2014)................................23

*United States v. Gaudet*, 81 F.3d 585 (5th Cir. 1996) .....................................21

*United States v. Gebbie,* 294 F.3d 540 (3d Cir. 2002).....................................27

*United States v. Grandinetti*, 564 F.2d 723 (5th Cir. 1977) ............................30

*United States v. Harper*, 643 F.3d 135 (5th Cir. 2011)  ..................................20

*United States v. Hartwell*, 302 F.Supp.2d 609 (E.D.Va. 2004)......................26

*United States v. Harvey*, 791 F.2d 294 (4th Cir. 1986) ...................................28

*United States v. Martinez-Molina*, 64 F.3d 719 (5th Cir. 1995).....................47

*United States v. McPhee*, 731 F.2d 1150 (5thCir. 1984)................................30

*United States v. Palomo*, 998 F.2d 253 (5th Cir. 1993)..................................20

*United States v. Taylor*, 77 F.3d 368 (11th Cir. 1996) ..............................29, 31

*United States v. Tovar-Valencia*, 2011 WL 6749051 (S.D.Tex. 2011)..........25

*United States v. Van Thournout,* 100 F.3d 590 (8th Cir.1996).......................27

*Waltman v. International Paper Co*., 875 F.2d 468 (5th Cir. 1989) ..............49

*Weeden v. Johnson*, 854 F.3d 1063 (9th Cir. 2017) .......................................33

## Statutes & Rules

Rule 59, Federal Rules of Civil Procedure ..........................................2, 17, 49

28 USC § 2255....................................................................................... *passim*

## Other Authorities

American Psychiatric Association, *Diagnostic and Statistical Manual of Mental Disorders* (DSM-V) ...............................................................................

## I. STATEMENT OF THE CASE

### A. Introduction

Pursuant to a plea agreement in case *United States v. Cuff*, 5:11-CR-00062-21, Robert Cuff, a Navy veteran, pleaded guilty in the Western District of Louisiana to engaging in a child exploitation enterprise (CEE), in connection with an internet file-sharing website. Cuff shared child pornography with other members of the website. During this time, Cuff was also being investigated in the Western District of Texas for sexual abuse of a child, stemming from videos found on his computer portraying such conduct. Cuff and his lawyer, Stephen Karns, understood the Louisiana plea agreement to promise that Cuff would not be prosecuted in Texas for the criminal conduct displayed in the videos, but that the conduct would be used in the Louisiana sentencing proceeding. However, notwithstanding the plea agreement, two weeks after the Louisiana plea and unbeknownst to Cuff and his attorney, Cuff was secretly indicted in the Western District of Texas in *United States v. Cuff*, 11-CR-03016-KC, for possession of child pornography and for sexual contact with a minor, the very conduct displayed in the videos. ROA.18-30694.260-264.

During the Louisiana guilty plea colloquy, Cuff's statements to the district court judge were strange and illogical at times. The trial court

1

expressed concern about Cuff's mental state, but not his competence. After the plea, but before sentencing, several highly experienced mental health professionals concluded that Cuff very likely suffered brain damage from his past use of the anti-malarial drug mefloquine, a drug he had been ordered to take during his military service. Based on the conclusions of the mental health professionals, Cuff, represented by a new attorney, moved to withdraw his plea. That motion was denied, and the district court sentenced him to life imprisonment. His direct appeal was denied by this Court.

Cuff then filed a motion pursuant to 28 U.S.C. § 2255 alleging the government had breached the plea agreement by charging him in Texas. He also alleged that Karns was ineffective in not adequately investigating his mental state and possible mental defenses before advising him to plead guilty. Cuff also alleged Karns was ineffective in not moving for a competency hearing before sentencing. More than three years after the Section 2255 motion was filed, the district court denied the motion and denied a Certificate of Appealability (COA). The court also denied a subsequent motion to alter the judgment made pursuant to Rule 59 of the Federal Rules of Civil Procedure. Cuff filed a timely notice of appeal to this Court from the district court's denial of the motions. Cuff now asks the Court to grant a COA on each of the issues set forth herein.

2

## B. Procedural history.

In 2011, investigators in the Western District of Louisiana determined that Cuff was uploading and exchanging child pornography with others in an internet pornography ring. While conducting a search of Cuff's house pursuant to a warrant, law enforcement officers in the Western District of Texas seized a computer containing multiple video files. The files included videos of Cuff sexually abusing a five-year-old girl, the daughter of a woman with whom Cuff had been involved.

### 1. The Louisiana indictment.

On August 10, 2011, a federal grand jury in the Western District of Louisiana returned a superseding indictment charging Cuff with one count of engaging in a child exploitation enterprise, in violation of 18 U.S.C. §2252A(g) (Count 1), one count of conspiracy to advertise the distribution of child pornography in violation of 18 U.S.C. §§ 2251(d)(1) and (e) (Count 2), and one count of conspiracy to distribute child pornography in violation of 18 U.S.C. §§ 2252A(a)(2)(A) and (b)(1) (Count 3). ROA.18-30694.77-91.

On October 17, 2011, and October 27, 2011, on defendant's motion, the district court entered orders permitting mental health professionals to interview Cuff to evaluate his mental status. ROA.18-30694.116.117. The

3

government was represented in the Western District of Louisiana by Assistant United States Attorney Luke Walker, and in the Western District of Texas by Assistant United States Attorney Brandy Gardes.  Cuff, represented by Karns, understood from AUSA Walker and AUSA Gardes that if Cuff pleaded guilty in the Western District of Louisiana, there would be no prosecution in the Western District of Texas.  ROA.18-30694.256-258. Karns and Cuff understood, however, that AUSA Walker in Louisiana would use the video tapes recovered in Texas in the Louisiana sentencing. *Id.*  The prosecutors advised Karns of this resolution because they hoped to avoid having the girl in the video testify at a Texas trial.  ROA.18-30694.256.

### 2. The Louisiana guilty plea and the Texas indictment.

On December 1, 2011, Cuff pleaded guilty to the CEE crime in violation of 18 U.S.C. § 2252A (g).  ROA.18-30694.856-885. The plea agreement expressly provided that if Cuff fulfilled his obligations under the agreement, then "the Government agree[s] to dismiss the remaining counts of the superseding indictment after sentencing and it will not prosecute the defendant for any other offense known to the United States Attorney's Office, based on investigation which forms the basis of the Second Superseding Indictment."  ROA. 18-30694.976-977.

Karns and Cuff understood the agreement to confirm that Cuff

4

would not be prosecuted in the Western District of Texas. However,

unbeknownst to Karns and Cuff, and notwithstanding the plea agreement,

two weeks later on December 14, 2011, a federal grand jury in the Western

District of Texas returned a sealed indictment in Case No. 11-CR-3016 on

several counts of possession of child pornography and one count charging,

sexual abuse of the five year-old girl, which conduct was depicted on the

video filed found on Cuff's computer. ROA.18-30694.260-264.

On the same day the indictment was returned, the government

moved the Texas district court to seal the indictment on the purported

ground that "disclosure of the indictment would seriously jeopardize the

ability of law enforcement officers to locate and apprehend him."

ROA.18-30694.265. The Texas district court ordered the indictment sealed

the same day. ROA.18-30694.266.

### 3. The presentence report.

On July 25, 2012, the final presentence investigation report (PSR) was

issued. ROA.18-30694.997-1013. The PSR calculated a total offense level of

43, reflecting a five-level increase pursuant to U.S.S.G. §§ 4B1.5(b)(1)

because the defendant "engaged in a pattern of activity involving prohibited

sexual conduct," namely the sexual abuse of the five-year old child, which

was displayed on video files found on the defendant's computer. ROA.18-

30694.1004. The PSR stated that the government had no evidence that these video files were ever uploaded to the internet but *incorrectly* noted that "presently, no charges are pending against the defendant as a result of this behavior." PSR ¶ 22. ROA. 18-30694.1002. Cuff's total offense level of 43 and his Criminal History Category of I correlated to an advisory range of life in prison. No objections to the PSR were filed by any party. Sentencing was ultimately set for July 13, 2012.

### 4. The mental health evaluations, diagnosis of mefloquine intoxication, and Cuff's seizure while incarcerated.

On May 10, 2012, two months before sentencing, at defense request, Dr. Remington Nevin examined Cuff's medical history, communicated by telephone with Cuff, and with members of his family. Dr Nevin had a post-doctoral fellowship at John Hopkins University, was Board Certified in Preventive Medicine, and is an expert on the connection between the use of mefloquine and resulting brain damage. See Resume at ROA.18-30694.684-698. He has published much research resulting from clinical examinations of military and civilian personnel experiencing the effects of mefloquine. *See e.g.* Ritchie, Block, Nevin, *Psychiatric Side Effects of Mefloquine*, J. Am. Academy Psychiatry Law 41:224-35 (2013). ROA.18-30694.645-656. *See also* Nevin and Ritchie, *The Mefloquine Intoxication Syndrome*, (Springer International Publishing 2015). ROA.18.30694.662-683.

6

Dr. Nevin prepared a comprehensive report with respect to his conclusions regarding mefloquine's deleterious effect on Mr. Cuff.  ROA.18-30694.1224-1226, 566.  Dr. Nevin related that Cuff reported symptoms of "abnormal dreams, anxiety, and paranoid reactions" as well as "profound short-term memory loss." ROA.18-30694.1225. Although Dr. Nevin did not physically examine Cuff, he concluded that Cuff's personality changes and symptoms were "consistent with possible late neurotoxic effects of limbic encephalopathy caused by repeated mefloquine intoxication," resulting from Cuff's use of the anti-malarial drug while in the military.  ROA.18-30694.567, 1225.  Dr. Nevin explained that mefloquine intoxication has been associated with "a morbid fascination with violence and violent objects, aggression, increased impulsivity, and *sexual inhibition*." *Id*. (emphasis added).  In a subsequent affidavit filed on July 12, 2012, Dr. Nevin observed that the areas of the brain that effect sexual deviancy "include the thalamus and the hypothalamus [and that each area] is likely affected by mefloquine, based on signs and symptoms observed in cases known to me." ROA.18-30694.170-171.

About May 18, 2012, Cuff was found unresponsive in his cell after complaining the prior evening of a headache.  ROA.18-30694.563. He was taken to LSU Health Center where he was admitted with a diagnosis of

7

"altered level of consciousness and altered mental status, with a Glasgow

Coma Scale of 3." *Id*. In Dr. Nevin's opinion, Cuff's symptoms were

"highly suspicious for a deep brain or brainstem seizure" and provided

"further support for the diagnosis of neurotoxic injury from his earlier use of

mefloquine." *Id*. Dr. Nevin reviewed additional records and concluded that

they "further substantiate[d] the assessment" that Cuff likely "suffered a deep

brain or limbic seizure related to neurotoxicity from his early use of

mefloquine," and that his condition was "chronic and unstable." *Id*.

Dr. Robert Stanulis is a highly experienced forensic psychologist and

neuropsychologist. For sixteen years he was the chief neuropsychologist at

the Oregon Comprehensive Epilepsy and Surgery program. ROA.18-

30694.1214. In that capacity, he evaluated many individuals before, during,

and after neurosurgery. *Id*. Dr. Stanulis has extensive experience and

knowledge about the role of limbic structures in behavior "including the

impact of limbic dysfunction on seizure disorders, perseverative obsessive

behavior, aggression, and sexual behavior." *Id*.

Dr. Stanulis examined Cuff over two days and concluded that Cuff's

criminal behavior was "to a reasonable degree of medical and psychological

certainty caused by and the direct result of the adverse side-effects of the

mefloquine he was ordered to take in the military." ROA.18.30694.1213. In

8

his opinion Mr. Cuff's criminal behavior was "but a part of the profound neuropsychological and neurobehavioral changes resulting from disinhibition caused by the limbic encephalopathy diagnosed by Dr. Nevin."
ROA.18.30694.1217.

5. Karns' sentencing memorandum.

On June 29, 2012, Karns filed a sentencing memorandum with an incorporated motion for downward departure. ROA.18-30694.1122-1151. He urged the district court to impose a sentence of not more than 20 years. Karns attached the psychological reports of Dr. Nevin, Dr. Stanulis, Dr. Vigen, and Dr. William Brown.

Karns also attached letters attesting to Cuff's exemplary work record while serving in the United States Navy. The exhibits showed Cuff was a retired sailor who served in the Navy for more than 28 years. He rose to the rank of Command Master Chief and received numerous medals and awards, including the Iraq Campaign Medal with Star, the Meritorious Unit Service Medal, the Navy/Marine Corps Commendation Medal, the Global War on Terrorism Expeditionary Medal, the Global War on Terrorism Service Medal, and the Joint Service Commendation Medal. ROA.18-30694.1123-1124.

*6*. Schweitzer's motions to substitute counsel and withdraw the guilty plea.

On July 5, 2012, shortly before the scheduled sentencing hearing, Cuff's family retained attorney Eric H. Schweitzer, who filed a motion to substitute in as counsel to replace Karns. ROA.18-30694.134. In his motion Schweitzer asserted that Cuff suffered from brain damage from the use of mefloquine that might well constitute a defense to the charges. ROA.18-30694.135-136. He asserted that Karns was incapable of providing Cuff with competent legal advice in that regard. ROA.18-30694.137. In addition to his motion, Schweitzer attached a draft motion to withdraw Cuff's guilty plea. ROA.18-30694.143-159. Schweitzer also requested a further continuance of the sentencing proceedings.

On July 10, 2012, the district court denied Schweitzer's motion to substitute counsel but permitted him to act as co-counsel. The court also denied the request for a further continuance. ROA18-30694.167-168.

On July 12, 2012, the day before the sentencing hearing, Schweitzer filed the motion to withdraw Cuff's guilty plea. ROA.18-30694.174-182. The government opposed the motion in a response filed the next day. ROA.18-30694.183-187. In the motion, Schweitzer asserted that the plea had been entered without Cuff or Karns knowing or having investigated the defenses available to Cuff to the accusations made against him. Schweitzer asserted

10

that according to Doctors Nevin and Stanulis, Cuff suffered from brain

damage arising from his use of the anti-malarial drug mefloquine, which he

had been ordered to take while in the military.  Schweitzer stated that

mefloquine has well known deleterious, psychiatric side effects.  Schweitzer

argued that Cuff had defenses available of diminished capacity and insanity.

In support of his motion, Schweitzer presented the district court with a

widely publicized CBS news report regarding mefloquine's side effects:

> Last summer, four soldiers from Ft. Bragg were accused of
> killing their wives. Two of the men committed suicide, and the
> other two await trial…One possible suspect was mefloquine -
> brand name Lariam, an anti-malarial drug. It was invented by
> the U.S. Army and is routinely given to soldiers deployed
> overseas. In scientific terms, Lariam can cause neuropsychiatric
> adverse events. In plain language, it can make lose your
> mind….

David Kohn, the Dark Side of Lariam,
http://www.cbsnews.com/2100-500164_162-538144.html
(2009).

ROA.18-30694.176.

Pointing to the evaluations of Dr. Nevin and Dr. Stanulis, Schweitzer

argued that when Cuff took mefloquine around 1993, the drug damaged his

brain, rendering him incapable of controlling unnatural urges. ROA. 18-

30694.176. Schweitzer moved to withdraw the plea and for a trial before the

judge alone, at which time the defense of insanity would be raised.  ROA.18-

30694.181-182.

11

7. The sentencing hearing.

On July 13, 2012, the district court conducted a sentencing hearing

during which it also considered the motion to withdraw the guilty plea.  In

essence, the court found that the conclusions of Dr. Nevin and Dr. Stanulis

about the effects of mefloquine on Cuff's mental state were "more cutting-

edge theory than . . . accepted fact."  ROA.18-30694.893. The court reasoned

that Cuff carried out his job in the military with competence, but the sexual

assault displayed on the video showed a criminal personality.

The court denied the motion to withdraw the plea. The court also

denied the motion for downward departure and sentenced Cuff to life in

prison.  ROA.18-30694.193-195 (judgment).

 8. The direct appeal.

On August 7, 2013, in an unpublished memorandum decision, this

Court affirmed the defendant's conviction and sentence. *United States v.*

*Cuff*, 538 Fed.Appx. 411.  ROA.18-30694.213-217.  The Court rejected

Cuff's claim that his plea was not entered knowingly and intelligently

reasoning as follows:

> The record reflects that, at the time of the re-arraignment, Cuff
> was regarded by his supervisors and peers as high functioning,
> his demeanor was not unusual, and no medical opinions bearing
> on competency had been presented. During the plea colloquy,
> Cuff responded to questions appropriately with no indication of
> mental deficiencies. There is no reason to believe that Cuff did

12

not comprehend and could not participate in the criminal
proceedings.

*Id*. at 413; ROA.18-30694.214, 215.

On appeal Cuff raised the issue of prosecutorial misconduct with
respect to the "the secret Texas prosecution" and claimed that this
prosecution prevented him from entering a constitutionally valid guilty plea.
The Court did not address the claim, stating that Mr. Cuff did not develop
facts supporting the claim on appeal.  *Id.*  On December 9, 2013, the United
States Supreme Court denied Cuff's petition for a writ of certiorari. ROA.18-
30694.219.

9. The motion pursuant to 28 USC § 2255.

On December 6, 2014, represented by attorney Steven Hormel, Cuff
moved to vacate his conviction and sentence pursuant to 28 USC. § 2255.
ROA.18-30694.237, 324. Among other things, Cuff raised the following
claims: (1) The government breached its promise in the plea agreement not to
prosecute Cuff for another offense; (2) Attorney Karns was ineffective for
failing to move for a competency review before the sentencing under 18
U.S.C. § 4241; and (3) Attorney Karns was ineffective for failing to
investigate mental defenses of insanity or involuntary intoxication before
advising Cuff to plead guilty.

13

In connection with the claim of breach of the plea agreement, Cuff introduced the declaration of Karns.  ROA.18-30694.255-259. The declaration, dated December 3, 2014, was obtained after conclusion of the direct appeal.  In his declaration Karns stated that he understood from the Assistant United States Attorneys in Louisiana and Texas that Cuff would only be prosecuted in Louisiana, not in Texas, although the videos seized in Texas would be used in the sentencing proceedings in Louisiana.

Karns "learned from AUSA Gardes that the State of Texas would not be prosecuting Mr. Cuff."  ROA.18-30694.256. This would avoid having to have the young girl testify at a trial.  *Id*.  Karns so advised Cuff.  Karns declared that his advice to Cuff to enter the guilty plea was predicated on the understanding that if he pleaded guilty in Louisiana case, Texas would not prosecute him. ROA.18-30694.257. Karns declared he was unaware of the Texas indictment (which had been filed under seal).  He said that had he been informed of its existence, he would have advised Cuff not to plead guilty in Louisiana.  ROA.18-30694.255. Karns declared that in filing the Texas indictment, "the government breached the plea agreement with Cuff."  ROA. ROA.18-30694.258. Karns declared that because of his failure to advise Cuff of the Texas indictment, Cuff's plea of guilty was not knowingly and intelligently entered and should, therefore, be vacated.  ROA.18-30694.258.

14

Karns further declared that had he learned of the indictment before the sentencing, he would have moved the district court to vacate the guilty plea. *Id*.

On February 18, 2015, in the Western District of Texas, after receiving reports from the BOP that Cuff was not mentally competent to proceed, Judge Kathleen Cardone dismissed the Texas indictment on motion of the government. Appendix 1. Pursuant to Fed.R.Ev. 201(c), the court is requested to take judicial notice of the dismissal.

On March 12, 2018, after having the matter under submission for more than three years, the district court in Louisiana denied Cuff's motion to vacate his conviction in a written opinion.  ROA.18-30694.425-442. The court also denied a COA, holding that Cuff had failed to demonstrate a substantial showing of the denial of a constitutional right.  ROA.18-30694.442. The court addressed the 2255 petition as follows:

First, the court did not reach the merits of the claim that the government breached the plea agreement.  The court said the claim was procedurally barred because Cuff had failed to show cause for his failure to raise the claim on direct appeal.  The court stated that appellate counsel should have obtained Karns's declaration "at the time he filed his Notice of Appeal."  ROA.18-30694.431.

15

Second, the court denied the claim that Karns was ineffective in failing to move for a competency hearing before Cuff entered his guilty plea or before sentencing. The court pointed to the plea colloquy and to the statements of Cuff, Karns and the U.S. Attorney that Cuff was competent. ROA.18-30694.435.

Third, the court denied the claim that Karns was ineffective in advising Cuff to plead guilty because he failed to investigate mental defenses such as insanity, involuntary intoxication, and diminished capacity. The court said, "The decision not to pursue the insanity defense was strategic in the hopes of getting Cuff the best possible deal." ROA.18-30694.436. The court stated further that "Karns had the opportunity to examine Cuff's medical evaluations and chose not to pursue a mental defense. Karns' actions are entitled to heavy deference." *Id*.

The court remarked that Cuff's actions, specifically with the five-year old girl, were not "connected to insanity" but rather were "connected to a very cold, calculating purposeful defendant." The court concluded further that Karns was not ineffective in failing to further investigate Cuff's potential mental defenses "because such defenses would not have been viable." ROA. 18-30694.438.

### 10. The filing of the Rule 59 motion

Cuff then retained undersigned counsel Michael R. Levine, who filed a motion to alter or amend the judgement under FRCP 59(e). ROA.18-30694.453. The motion was supported with a memorandum and numerous exhibits. ROA.18-30694.486-797. The district court denied that motion on April 12, 2018. ROA.18-30694.798. The court reasoned, "Nothing asserted in Cuff's Motion moves the Court to alter or amend its prior judgment. Cuff continues to make the same claims asserted in his federal habeas corpus petition." *Id*. Cuff filed a timely notice of appeal from the denial of both the Section 2255 motion and the Rule 59(e) motion on June 1, 2018. ROA.18-30694.817.

## II. SUMMARY OF ARGUMENTS

A. The Court should grant a COA on the first issue of whether the government breached the plea agreement. Contrary to the opinion of the district court, Cuff has established "cause" for failure to raise the issue on direct appeal because he was unaware of the Texas indictment until after the proceedings in the district court were completed and therefore could not make the appropriate record in that court. He could not introduce new evidence or a new issue for the first time on appeal.

17

On the merits, the government breached the promise in the Louisiana plea agreement that the government would not bring any charges in Texas. Moreover, the government secretly indicted Cuff in Texas and misled the judge there to seal the indictment to keep Cuff from learning of its existence. Because reasonable jurists could debate whether the government breached the plea agreement, Cuff has met the threshold for issuance of a COA.

B. The Court should grant a COA on the second issue of whether trial counsel was ineffective in inadequately investigating Cuff's mental condition and mental defenses before advising him to plead guilty.  Cuff's attorney Karns only began an adequate investigation after Cuff pleaded guilty.   Only then did he learn that while in the military Cuff had been exposed to the anti-malarial drug mefloquine, well-known for its serious neuropsychiatric effects including sexual disinhibition.  Only then  did Karns learn from Dr. Nevin and Dr. Stanulis that because of the brain-damaging effects of mefloquine, Cuff had viable mental defenses to the charges.   Because reasonable jurists could debate whether Karns adequately investigated Cuff's mental health and possible mental defenses, Cuff has met the threshold for issuance of a COA.

C. The Court should grant a COA on the third issue of whether trial counsel was ineffective in failing to move for a competency hearing before sentencing.  Cuff's sometimes strange and incoherent statements at the plea

hearing, his assertion that he had PTSD but "believed" it was not affecting him, and the reports of Dr. Nevin, Dr. Stanulis and other psychologists and psychiatrists regarding brain damage caused by mefloquine strongly suggested that there was a competency issue even before entry of the plea much less before sentencing. Because reasonable jurists could debate whether Karns was ineffective in failing to move for a competency hearing before sentencing, Cuff has met the threshold for issuance of a COA.

D. The Court should grant a COA on the fourth issue of whether the trial court abused its discretion in denying the Rule 59 motion to reconsider its opinion denying the 28 USC § 2255 motion.  Cuff presented several significant pieces of new evidence to the district court that should have caused the court to reconsider its opinion.  For example, Cuff presented a Health Services Report from the Bureau of Prisons dated January 9, 2018, observing that Cuff suffered from "mefloquine brain disorder." In addition, Cuff presented new evidence that the U.S. and U.K. militaries have ceased or limited use of mefloquine due to its deleterious neuropsychiatric effects. Cuff also introduced several scientific studies regarding the deleterious neuropsychiatric symptoms in military members who used mefloquine. Because reasonable jurors could debate whether the district court abused its

19

discretion in denying the Rule 59 motion, Cuff has met the threshold for issuance of a COA.

## III. ARGUMENTS

### A. THE COURT SHOULD GRANT A COA ON THE ISSUE OF WHETHER THE GOVERNMENT BREACHED THE PLEA AGREEMENT.

It is well-settled law that if a guilty plea "rests in any significant degree on a promise or agreement of the prosecutor, so that it can be said to be part of the inducement or consideration, such promise must be fulfilled." *Santobello v. New York,* 404 U.S. 257, 262 (1971). This Court has held that the government "must strictly adhere to the terms and conditions of its promises." *United States v. Harper*, 643 F.3d 135, 139 (5th Cir. 2011). Plea agreements are "strictly construed against the Government as the drafter." *United States v. Elashyi,* 554 F.3d 480, 501 (5th Cir. 2008).

It is equally well-settled that a guilty plea based on a breached plea agreement "is subject to collateral attack under § 2255." *United States v. Cates*, 952 F.2d 149, 151–52 (5thCir. 1992). *See also United States v. Borders*, 992 F.2d 563, 566 (5th Cir. 1993) ("A defendant may collaterally attack his guilty plea on the grounds of an alleged violation of the plea agreement."). Whether the government's conduct violated the terms of the

plea agreement "is a question of law." *United States v. Palomo*, 998 F.2d 253, 256 (5th Cir. 1993) (quotation omitted).

The plea agreement at issue here provides, in pertinent part, that "[i]f the Defendant completely fulfills all of his obligations and agreements under this plea agreement, the Government agrees to dismiss the remaining Counts of the Second Superseding Indictment after sentencing *and it will not prosecute the Defendant for any other offense known to the United States Attorney's Office, based on the investigation which forms the basis of the Second Superseding Indictment*." ROA.18-30694.976-977. (emphasis added). Unbeknownst to Cuff and his counsel, however, the Government obtained a secret Indictment in the Western District of Texas that charged possession of pornography and sex abuse of the child, the video of which conduct was found on Cuff's computer and which conduct enhanced his Louisiana sentence. The government's action breached the plea agreement.

1. Cuff has established "cause" for failure to raise the issue on direct appeal.

When raising issues of jurisdictional or constitutional magnitude for the first time on collateral review, "a defendant ordinarily must show both cause for his procedural default and actual prejudice resulting from the error." *United States v. Gaudet*, 81 F.3d 585, 589 (5th Cir. 1996). In its opinion denying relief, the district court held that it would not reach the

merits of this claim because Cuff could not show "cause and prejudice" for

failing to raise the claim on direct appeal.  ROA.18-30694.431-432.  The

court acknowledged that Karns stated in his declaration that he was unaware

of the indictment in Texas and that had he been, he would never have advised

Cuff to plead guilty; however, the court held that appellate counsel should

have presented the declaration to the Court of Appeals.  ROA.18-30694.432.

Contrary to the district court's holding, Cuff had good cause for not

raising the issue of breach of the plea bargain on appeal: he had nothing in

the record of the district court on which to base the appeal.  As this Court

noted in its memorandum decision denying the appeal with respect to another

issue, "[a]lthough Cuff complains of prosecutorial misconduct, he did not

develop the facts supporting this claim, so we are not able to review it on

appeal."  ROA.18-30694.217.

The claim of breach of the plea agreement could not be raised in the

district court because at the time neither Cuff not his attorney Karns was

aware that the breach had occurred.  ROA.18-30694.255-259. It is true that

by the time of the direct appeal, appellate counsel was aware of the Texas

indictment; however, the court of appeals reviews errors only "based on the

record before the district court."  *United States v. Ceron*, 775 F.3d 222, 226

(5th Cir. 2014).  This Court "may not consider new evidence furnished for

the first time on appeal and may not consider facts which were not before the

district court at the time of the challenged ruling." *Theriot v. Parish of*

*Jefferson*, 185 F.3d 477, 491 n.26 (5th Cir. 1999). *See also Galbraith v.*

*United States*, 313 F.3d 1001, 1007 (7th Cir. 2002) ("[a] reviewing court on

direct appeal is limited to the record of trial and cannot consider any extrinsic

evidence."). The district court incorrectly stated that "Cuff was aware of the

Texas indictment at the time of his appeal *and could have established facts in*

*order for the Fifth Circuit to review the present claim*." ROA.18-30694.432.

(emphasis added). This is not the case because an appellant cannot introduce

new facts for the first time on appeal; the record must be developed in the

district court.

    In sum, Cuff has shown good cause for failing to raise the issue on

direct appeal. Moreover, the prejudice from his failure to do so is likewise

clear: he has lost the opportunity to obtain a ruling from the district court on

the merits of the claim.

## 2. The government breached the agreement.

    Although a defendant bears the burden of proving the underlying facts

establishing a breach by a preponderance of the evidence, the Court construes

a plea agreement "like a contract, seeking to determine the defendant's

reasonable understanding of the agreement and construing ambiguity against

23

the Government." *United States v. Escobedo*, 757 F.3d 229, 233 (5th Cir.

2014). Here, there can be no question that Cuff reasonably expected that the

plea agreement protected him from a prosecution in the Western District of

Texas for sexual assault of the child because he agreed the conduct would be

used to enhance his sentence in Louisiana. Karns's declaration makes clear

that he confirmed this with both AUSA Walker and AUSA Gardes. ROA.18-

30694.256. This made sense because, as Karns was told, the Texas

prosecutor wanted to avoid a trial if possible in Texas where the young girl

would have to testify.

The government argued in the district court that the Louisiana case and

the Texas case were not based on the same investigation and not related

because the Louisiana indictment dealt with child pornography, while the

Texas indictment dealt with child molestation. ROA18.30694.385. This

argument is specious. The government introduced the conduct underlying the

child molestation charges in Texas into the sentencing for the Louisiana

pornography crimes and obtained a five-level increase in the offense level

because of the molestation. Therefore, the Texas offenses were, in the words

of the plea agreement, "known to the United States Attorney's Office" and

were based at least in part "on the investigation which forms the basis of the

Second Superseding Indictment."

Pointing to language in the agreement that refers specifically "to the United States Attorney's Office" the government argued below that this language bound only the U.S. Attorney in the Western District of Louisiana, and not also the Western District of Texas, *Id*., but the record refutes this claim.

First, the agreement specifically uses the terms, "the Government" and "United States" strongly implying that the whole government is bound. ROA.18-30694.975-977, 980.

Second, the Government did not limit that non-prosecution clause to those offenses that could have been charged in the indictment, but agreed not to prosecute Mr. Cuff for *any offense* known by the United States Attorney's Office *based on the investigation* which formed the basis of the Second Superseding Indictment. The Louisiana prosecutor has never claimed (nor could he) that he lacked knowledge of the videos that formed the potential charges in Texas at the time he sought the Second Superseding Indictment.

Third, nothing in the agreement states that it binds only the U.S. Attorney in Louisiana. The government certainly knows how to insert such a clause if it wants to. *See, e.g.*, *United States v. Al-Arian*, 514 F.3d 1184, 1193 (11th Cir. 2008) ("The plea agreement expressly binds only the United States Attorney's Office for the Middle District of Florida and the

Counterterrorism Section of the Department of Justice."); *United States v. Tovar-Valencia*, 2011 WL 6749051, at *2 (S.D.Tex. 2011) ("This Plea Agreement binds only the United States Attorney's Office for the Southern District of Texas and the Defendant; it does not bind any other United States Attorney."); *United States v. Hartwell*, 302 F.Supp.2d 609, 618 (E.D.Va. 2004) ("Except where specifically noted, this plea agreement binds only the United States Attorney's Office for the Eastern District of Virginia and the defendant; it does not bind any other prosecutor in any other jurisdiction.").

This Court rejected similar arguments made by the government in *Elashyi*, *supra*, 554 F.3d 480.  In that case defendant Ishan and his brothers were convicted of illegally exporting computer equipment to Libya and Syria, among other crimes.  Defendant Ishan argued his prosecution violated a plea agreement he reached in an earlier case with his company called Tetrabal.  This Court agreed.  In the earlier case, Ishan pled guilty to a single count of making an unlawful shipment.  In return, the Government agreed it would not "seek, refer or prosecute any further criminal charges against him arising out of the facts and circumstances known by the government at this time surrounding his involvement in the crimes addressed in the superseding indictment."  *Id.* at 500.

In *Elashyi*, the government's plea agreement used language very similar to that here.  In rejecting the government's argument that no breach occurred, this Court reasoned that "the Government clearly knew at the time of the plea offer about 'facts and circumstances' of the Libyan and Syrian shipments that form the basis of the current prosecution.  There is no question that the present prosecution 'arise [s] out of' those shipments."  554 F.3d at 500. This Court  went on to hold that "the language of the plea agreement in this case unambiguously extends to all crimes arising out of the conduct alleged in the Tetrabal indictment, including shipments to Libya and Syria that give rise to Ishan's convictions in the present case."  *Id.* at 500–02.

Furthermore, although this Court has apparently never decided the question, *see United States v. Cantu*, 185 F.3d 298, 305 n.11 (5th Cir. 1999), most other circuits hold that the promise of one U.S. Attorney binds other U.S. Attorneys in different districts.  *E.g.*, *United States v. Gebbie*, 294 F.3d 540, 550 (3d Cir. 2002) ("[W]hen a United States Attorney negotiates and contracts on behalf of 'the United States' or 'the Government' in a plea agreement for specific crimes, that attorney speaks for and binds all of his or her fellow United States Attorneys with respect to those same crimes and those same defendants."); *United States v. Van Thournout,* 100 F.3d 590, 594 (8th Cir. 1996) (holding that absent express limitation, any promises made by

an Assistant United States Attorney in one district will bind an Assistant United States Attorney in another district); *United States v. Randolph*, 230 F.3d 243, 249–51 (6th Cir. 2000) (when defendant pled guilty in Texas, reasonably believing that plea agreement prohibited prosecution in Tennessee, due process required reversal of conviction); *United States v. Harvey*, 791 F.2d 294, 296 n.1 (4th Cir. 1986) (reference to "the Eastern District of Virginia" in the plea agreement was ambiguous given that most of the plea agreement referred to "the United States," and construing the ambiguity against the Government, holding "that [the plea agreement] must be interpreted to prevent further prosecutions for such offenses anywhere and by any agency of Government"). *But see United States v. Annabi*, 771 F.2d 670, 672 (2d Cir. 1985) (holding that "[a] plea agreement binds only the office of the United States Attorney for the district in which the plea is entered unless it affirmatively appears that the agreement contemplates a broader restriction").

3. *The government misled the federal judge in Texas when it moved to seal the Texas indictment.*

The Government not only kept that fact of the Texas indictment from Mr. Cuff and his counsel prior to the plea hearing in Louisiana, it did so by misleading the Texas judge into sealing the Texas Indictment. In its motion to seal the indictment, the Texas U.S. Attorney told the judge that the

28

"disclosure of the existence of the [Texas] Indictment would seriously jeopardize the ability of law enforcement to locate the Defendant and apprehend him without incident." ROA.18-30694.265.

The government's reason for sealing the indictment was purely pretextual because the government well knew Cuff had been in federal custody since July 2011 when he was arrested and detained in federal district court in Texas and extradited to Louisiana. ROA.18-30694.32-34. Indeed, On January 9, 2012, the government filed the Texas detainer on his place of confinement in Louisiana. ROA.18-30694.321. The misleading of the Texas judge to keep the Texas indictment hidden from the Cuff and his lawyer was serious misconduct.

4. The breach of the plea agreement and the government's misconduct justifies vacating the guilty plea.

The breach of the plea agreement justifies vacating Cuff's plea of guilty for three reasons:

First, vacating the guilty plea is an appropriate remedy for breach of a plea agreement. *Santobello*, 404 U.S. at 263 (specific performance or withdrawing guilty plea appropriate remedy). That the Texas indictment was dismissed on the government's motion in 2015 because the BOP doctors concluded that Cuff was incompetent does not matter. *See id*. (whether

29

breach of bargain affected judge is irrelevant; case remanded to determine if specific performance or withdrawal of plea proper remedy). *Cf. United States v. Taylor*, 77 F.3d 368, 371 (11th Cir. 1996) (irrelevant that government's breach may not have influenced the sentencing judge); *United States v. Grandinetti*, 564 F.2d 723, 726–27 (5th Cir. 1977) ("The question of the effect on the district court of the prosecutor's noncompliance with the plea bargain was thus deemed irrelevant.").

Second, because the Texas indictment was obtained secretly and in violation of the plea agreement and without Mr. Cuff's knowledge before he pleaded guilty, the government deprived Cuff and his counsel of the knowledge of all the facts necessary to make an intelligent, knowing, and voluntary plea. As such, the plea should be voided. *See Bousley v. United States*, 523 U.S. 614, 618 (1998) ("A plea of guilty is constitutionally valid only to the extent it is voluntary and intelligent.").

Third, the secretive manner in which the Texas indictment was obtained prevented trial counsel Karns from rendering effective assistance of counsel. Moreover, it manifestly demonstrates prosecutorial misconduct. *Cf. Berger v. United States*, 295 U.S. 78, 88 (1935) (although the government "may strike hard blows, [it] is not at liberty to strike foul ones."); *United States v. McPhee*, 731 F.2d 1150, 1152 (5thCir. 1984) (same). Secretly filing

the Texas indictment and misleading the Texas judge to seal the indictment
and keep the knowledge of its existence from Cuff was a "foul blow"
warranting vacating of the Louisiana guilty plea.

In sum, Cuff's plea to the Louisiana indictment was induced in large
part by the understanding that he would not be prosecuted in Texas.  The
government breached the agreement and committed misconduct by
misleading the Texas judge to keep knowledge of the Texas indictment from
Cuff. Therefore, Cuff should be permitted to withdraw his plea of guilty.  *See
Taylor*, 77 F.3d at 372 (although court of appeals has choice of remedy, in
circumstances here, where government breached agreement, defendant
permitted to withdraw plea).  As this Court has stated:

> It is in the best interests of the government, as well as the
> system as a whole, that defendants be able to count on the
> government keeping the promises it makes in order to secure
> guilty pleas. Those broader interests, as well as each individual
> defendant's interest in receiving the benefit of his bargain,
> require that courts stand ready and willing to hold the
> government to its promises.

*Id.*

### 4. Cuff has met the threshold for issuance of a COA.

Even if this Court believes that Cuff will ultimately not prevail on
appeal with respect to this issue, the Court should still issue a COA because
the standard for issuance of a COA is only whether "jurists of reason would

31

find it debatable whether the petition states a valid claim of the denial of a constitutional right." *Slack v. McDaniel*, 529 U.S. 473, 479 (2000); *see Buck v. Davis*, 137 S.Ct. 759, 773 (2017) (reversing this Court's misapplication of the COA standard, stating "The COA inquiry, we have emphasized, is not coextensive with a merits analysis. At the COA stage, the only question is whether the applicant has shown that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further.") (citations omitted).

Furthermore, "a claim can be debatable even though every jurist of reason might agree, after the COA has been granted and the case has received full consideration, that petitioner will not prevail." *Miller-El v. Cockrell,* 537 U.S. 322, 338 (2003). In sum, even assuming, *arguendo*, that this Court were to ultimately deny the appeal on the merits, the Court should still grant the COA on this issue.

**B. THE COURT SHOULD GRANT A COA ON THE ISSUE OF WHETHER TRIAL COUNSEL WAS INEFFECTIVE IN NOT ADEQUATELY INVESTIGATING CUFF'S MENTAL CONDITION AND MENTAL DEFENSES BEFORE ADVISING HIM TO PLEAD GUILTY.**

"Before deciding whether to plead guilty, a defendant is entitled to the effective assistance of competent counsel." *Padilla v. Kentucky*, 559 U.S.

32

356, 364 (2010). To be effective, "counsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary." *Strickland v. Washington*, 466 U.S. 668, 691 (1984).

Before advising a defendant that a guilty plea is the best defense strategy, the defense attorney must first adequately investigate the facts including the defendant's mental status and possible mental defenses. *See Diaz v. Martin*, 718 F.2d 1372, 1378 (5th Cir. 1983) (before advising a defendant to plead guilty, "[i]t is essential that counsel be familiar with the facts and the law, including potential defenses, so that he can fully advise the defendant of options available to him."); *United States v. Edwards*, 488 F.2d 1154, 1163 (5th Cir. 1974) ("This court has long recognized a particularly critical interrelation between expert psychiatric assistance and minimally effective representation of counsel."). .

Failing to reasonably investigate the facts and circumstances of a defendant's psychological health and mental state before formulating a defense strategy can rise to the level of ineffective assistance. *See Escamilla v. Stephens*, 749 F.3d 380, 392 (5th Cir. 2014) ("if a purportedly tactical decision is not preceded by a reasonable investigation, then it is not sufficiently informed and not entitled to the deference typically afforded

33

counsel's choices"); *Weeden v. Johnson*, 854 F.3d 1063 (9th Cir. 2017) (trial counsel ineffective in failing to investigate psychological evidence about effect of petitioner's mental state before formulating defense strategy).

Attorney Karns did not conduct the necessary investigation into Cuff's mental state and history with mefloquine before advising him to plead guilty. Only *after* Cuff entered his guilty plea on March 5, 2012, did Karns learn that Cuff had taken mefloquine during his military service, a powerful anti-malarial drug that can cause irreparable brain damage. ROA.18-30694.1073. at ¶12. Only after the guilty plea did Karns move *ex-parte* for authorization to hire a psychologist and other experts to conduct testing on Cuff "to diagnose mental and brain disorders from which Mr. Cuff suffers as a result of exposure to traumatic combat events and exposure to medications known to cause adverse psychiatric effects including depression and psychosis." ROA.18-30694.1072. at ¶5.

Only on May 10, 2012, well after the plea of guilty, did Dr. Remington Nevin determine that Cuff's symptoms were consistent with the deleterious effects of mefloquine. ROA.18-30694.1224-1226. Only after entry of the guilty plea did Karns learn that Dr. Nevin diagnosed Cuff as suffering from "limbic encephalopathy caused by use of mefloquine," a condition whose symptoms can be bizarre, unusual, and cause criminal conduct. ROA.18-

3094.1098. at ¶7.

Only after entry of the guilty plea did Dr. Nevin evaluate the records related to Cuff and determine that he likely "suffered a deep brain or limbic seizure" related to neurotoxicity from his early use of mefloquine, and that his condition was "chronic and unstable." ROA.18-30694.1328. Only after entry of the guilty plea did Karns learn that both Dr. Nevin and Dr. Stanulis concurred that "Mr. Cuff's changes in sexual disinhibition and behavior are to a reasonable degree of medical certainty the result of mefloquine encephalopathy and neurotoxicity." ROA.18-30694.1214-1218, 1326. Only after entry of the guilty plea did Karns learn that Dr. Stanulis concluded that "Mr. Cuff's illegal behavior is the result of the adverse reaction to the mefloquine he was ordered to take in a combat zone" and that in his opinion, "this fact did not emerge until after Mr. Cuff's pleas, and was not factored into either his charges or potential defenses." *Id*.

Karns failure to do the investigation into Cuff's mental status before advising Cuff to plead guilty and his failure to learn about the Cuff's use of mefloquine and the brain damage associated with that use before advising Cuff to plead guilty was ineffective assistance.

In denying the Section 2255 motion, the district court stated that Karns's decision not to pursue a mental defense such as an insanity or

diminished capacity defense "was strategic in the hopes of getting Cuff the best possible deal." ROA.18-30694.436. But an attorney's decision cannot be strategic if he has not uncovered the relevant facts that underlie the decision. *See e.g.*, *Escamilla*, *supra*, 749 F.3d at 392; *Anderson v. Johnson*, 338 F.3d 382, 392 (5th Cir. 2003) ( "counsel can hardly be said to have made a strategic choice against pursuing a certain line of investigation when [he] has not yet obtained the facts on which such a decision could be made.").

Moreover, the district court's assertion is merely the court's *ipse dixit*. Nothing in the record supports the trial judge's bald conclusion. There is no declaration or testimony from Karns or any other person asserting that Karns' decision was strategic. There was no evidentiary hearing. It is well-settled that findings and conclusions of the district court are clearly erroneous if not supported by the record. *See, e.g.*, *Cook v. U.S. Atty. Gen.*, 488 F.2d 667, 672 (5th Cir. 1973) ("This finding will not withstand the modest scrutiny required by the clearly erroneous rule since it is simply not supported by the record."). The record supports the conclusion that Karns's failure was not a product of strategy, but a product of a failure to investigate, of negligence, and of deficient performance.

It may be that this Court will ultimately deny the appeal on the merits of this issue. However, because reasonable jurists could differ on whether

Karns adequately investigated Cuff's prior use of mefloquine, the effects of

that use on Cuff's mental state and his competence to plead guilty, and

whether there were available mental defenses, this Court should issue a COA.

## C. THE COURT SHOULD GRANT A COA ON THE ISSUE OF WHETHER TRIAL COUNSEL WAS INEFFECTIVE IN NOT MOVING FOR A COMPETENCY HEARING BEFORE SENTENCING.

To be legally competent the defendant must have "the capacity to

understand the nature and object of the proceedings against him, to consult

with counsel, and to assist in preparing his defense." *Drope v. Missouri*, 420

U.S. 162, 171 (1975). Trial counsel has a duty to reasonably investigate any

competency issues related to his or her client, and failure to do so may rise to

the level of ineffective assistance. *See Bouchillon v. Collins*, 907 F.2d 589,

597 (5th Cir. 1990).

Upon reviewing the reports of Dr. Nevin and Dr. Stanulis, and because

of certain incoherent statement made by Cuff at the plea hearing, Karns

should have moved for a competency hearing under 18 U.S.C. § 4241 before

entry of the guilty plea and, at the very least, before sentencing took place.

*See Bouchillon*, 907 F.2d at 597 (trial counsel ineffective in failing to

investigate client's competence). Furthermore, the district court had a *sua*

*sponte* duty to call for such a hearing. *See Mata v. Johnson*, 210 F.3d 324,

330 (5th Cir. 2000) (court "must conduct an inquiry into the defendant's

mental capacity, either *sua sponte* or in response to a motion by petitioner's counsel, if the evidence raises a bona fide doubt as to his competency.").

*1. Cuff's strange and incoherent statements at the plea hearing and his assertion that he had PTSD but "believed" it was not affecting him were red flags strongly suggesting there was an issue with competence even at that stage of the proceeding.*

At a chambers conference before the entry of the plea, Karns alerted the district court to the problems with Cuff's mental status. ROA.18-30694.884. At the time that Cuff entered his plea of guilty, the district court asked him if he had medical problems in the past. He responded somewhat strangely and incoherently: "I was told I did, but I was helped out of the questioning [sic]. When you leave a war zone, they – the corpsman would help me do the paperwork so I wouldn't fail it. [sic]." ROA.18-30694.861. This strange and illogical answer is indicative of a thought disorder or mental disturbance of some kind. The district court then asked Cuff if he suffered from post-traumatic stress syndrome, and he responded, "I was told I did since Somalia, Your Honor." *Id*. The court then asked whether Cuff had recovered from the PTSD, and Mr. Cuff responded, "No, Your Honor." ROA.18-30694.861-862. The Court then asked Cuff whether he was being actively treated for the PTSD, and he responded that he was just starting treatment. ROA.18-30694.862. Finally, the Court asked Cuff if was on any kind of medication, and he responded he was not. *Id*.

38

Cuff's illogical and strange answers and his statement that he had not recovered from PTSD, should have raised a question for both trial counsel and the district court as to whether Cuff was competent to plead, much less to be sentenced. Indeed, the district court recognized a problem with Cuff's mental state because later in the plea colloquy, the court stated:

> In discussions held off the record before we convened today, I am concerned over not a mental competency issue, I'm concerned over a mental status issue, and I have provided counsel with the name of a local Ph.D. psychologist, clinical psychologist, who can conduct that. I am concerned that he may need to be on medication -- I don't know the answer to that.

ROA.18-30694.884. It is difficult to understand how one can be concerned about Cuff's "mental status" yet not be concerned about his mental competence.

It is true that in its memorandum decision on direct appeal, this Court stated that during the plea colloquy Cuff responded to questions appropriately with no indication of mental deficiencies. ROA.18-30694.214-215. In so finding, the Court overlooked the incoherent answers Cuff gave to the trial judge. In any event, the issue here concerns Cuff's competence to be sentenced, which this Court did not address. As shown below, Cuff's mental health deteriorated substantially in the eight months between the time of the plea and the time of sentencing.

At the plea colloquy Cuff told the trial court he was suffering from PTSD and had not recovered from that disorder.  PTSD is a serious mental illness arising from experiencing, witnessing, or hearing about traumatic events.  "PTSD is not uncommon among veterans returning from combat." *Porter v. McCollum*, 558 U.S. 30, 36 (2009).  Symptoms include "behaving recklessly or in a self-destructive way."  Diagnostic and Statistical Manual of Mental Disorders (DSM-V) (criterion E for PTSD).  They also include "having problems concentrating, experiencing events as if one were an outside observer of or detached from oneself (e.g., feeling as if 'this is not happening to me' or one were in a dream)," or experiencing events as "unreality, distance, or distortion (e.g., 'things are not real')."  *Id*.  PTSD can be "a grave affliction."  *United States v. Cantu*, 12 F.3d 1506, 1513 (9th Cir. 1993).  The symptoms of PTSD can seriously impair a defendant's ability to understand legal proceedings and assist his attorney.

*2. The reports of Drs. Nevin and Stanulis with respect to brain damage caused by mefloquine raised serious questions as to Cuff's competence to be sentenced*.

On May 10, 2012, two months before sentencing, Dr. Nevin examined Mr. Cuff's medical history and consulted with him by phone.  Dr. Nevin concluded that Cuff's personality changes, profound impairment in short-term memory, abnormal dreams, and anxiety and paranoid reactions were

40

"consistent with possible late neurotoxic effects of limbic encephalopathy caused by repeated mefloquine intoxication." ROA.18-30694.567,1225. Dr. Nevin observed that mefloquine intoxication has been associated with "a morbid fascination with violence and violent objects, aggression, increased impulsivity, and sexual inhibition." *Id*.

On about May 18, 2012, Mr. Cuff was found unresponsive after complaining the evening before of a headache. *Id*. at 33. He was taken to LSU Health Sciences Center where he was admitted with a diagnosis of "altered level of consciousness and altered mental status, with a Glasgow Coma Scale of 3." *Id.* In Dr. Nevin's opinion, Cuff's symptoms were "highly suspicious for a deep brain or brainstem seizure" and provided "further support for the diagnosis of neurotoxic injury from his earlier use of mefloquine." *Id*. Dr. Nevin reviewed additional records and concluded that they "further substantiate the assessment" that Cuff likely "suffered a deep brain or limbic seizure related to neurotoxicity from his early use of mefloquine," and that his condition was "chronic and unstable." *Id*.

At the sentencing hearing on July 13, 2012, attorney Schweitzer presented the reports of Dr. Nevin and Dr. Stanulis opining that Cuff suffered from encephalopathy (brain damage) from his early use of mefloquine, and

that such damage contributed to his criminal conduct.  These reports were red

flags on the issue of Cuff's competence to be sentenced.

### 3. Highly qualified and experienced mental health experts believe that before sentencing Cuff's deteriorating mental health required a competency evaluation and hearing.

The mental health experts who examined Cuff before and after his

sentencing were of the view that trial counsel should have sought a

competency determination before Cuff was sentenced.

Dr. William Brown, Ph.D., was retained to do a sociological evaluation

of Cuff for sentencing.  He had significant experience working cases

involving competency of criminal defendants.  ROA.18-30694.1553-1557.

During his interviews of Cuff, he found that Cuff frequently acted in an

"irrational manner." ROA.18-30694.1556. Dr. Brown shared his concerns

with Karns and with Dr. Stanulis. *Id*.  In Dr. Brown's opinion, "Mr. Cuff's

competency should have been questioned by trial counsel based on his

interactions with Mr. Cuff and his family in January 2012, and based on all

the information known about Mr. Cuff prior to his sentencing." ROA.18-

30694.1557.

On December 6, 2014, Dr. Stanulis filed a declaration respecting his

opinion on Cuff's competency to be sentenced. ROA.18-30694.1575-1579.

He declared that during his interviews of Cuff, he found him to be "slow to

42

respond, distractible and at times irrational." ROA.18-30694.1576. Dr.

Stanulis observed Cuff's "irrational thinking in his interactions" with Karns.

*Id*.  In his opinion Cuff's mental condition was "severely impaired" before

sentencing took place.  ROA.18-30694.1578.   Dr Stanulis reviewed a letter

of April 4, 2014 from BOP psychiatrist, Dr. Herbel, in which Dr. Herbel

found Cuff incompetent to proceed in the Texas case.  ROA.18-30694. 579.

Dr. Stanulis concluded that Cuff's "impaired mental condition was present to

a severe and incapacitating degree and that it rendered him incompetent" in

the proceedings before Judge Hicks. *Id*.  Dr. Stanulis declared that in his

opinion Mr. Cuff's competency should have been investigated before the

guilty plea hearing but in any event "at a minimum… before Mr. Cuff was

sentenced." ROA.18-30694.1579. This is particularly true, declared Dr.

Stanulis,  in light of Cuff's "hospitalization at LSU."  *Id*.

      Dr. Susan J. Fiester, received her M.D. from the Yale School of

Medicine and is Board Certified in by the American Board of Psychiatry and

Neurology.  ROA.18-30694.1604-1617. She was the expert forensic

psychiatrist who examined and evaluated Mr. Cuff on behalf of the defense

in the Texas prosecution.  She submitted an eighteen-page affidavit that

reviewed Mr. Cuff's mental condition and summarized the findings of the

many psychological, psychiatric, and social history reports.  ROA.18-30694.1586-1603.

Dr. Fiester reported that examinations near the time of  Cuff's sentencing showed the following symptoms and dysfunction which, considered together, should have raised serious questions about his competency to be sentenced: depression and psychomotor retardation, impairment in judgment and insight, short-term memory problems, difficulty with concentration, difficulty following multiple conversations, difficulty with Intellectual processing, difficulty assembling his thoughts, depersonalization and global paranoia.  ROA.18-30694.1602.

According to Dr. Fiester, Cuff also suffered many physical symptoms, including: severe headaches and dizziness (that had previously interfered with his expert evaluations) and sleep problems, leading to sleep deprivation and fatigue) that may have significantly interfered with memory and the cognitive and intellectual functions essential to competency. ROA.18-30694.1602.

Dr. Fiester reported that the reports of Dr.  Byron Herbel supported her opinion that Cuff's mental condition continued to deteriorate as predicted by other experts.  Dr. Herbel is Cuff's treating psychiatrist at Butner Federal Medical Center and is the Bureau of Prisons' expert retained to oversee and

treat Mr. Cuff's mental condition for the Western District of Texas prosecution. *Id.*

It is Dr. Fiester's professional opinion to a degree of reasonable medical certainty, that "based on the evidence of Mr. Cuff's worsening mental state and extensive evidence of his overall deteriorated condition prior to the July 2012 sentencing that defense counsel should have arranged for a forensic psychiatric expert evaluation of Mr. Cuff to determine if he was competent for sentencing." ROA.18-30649.1603.

Tellingly, because of Cuff's incompetence to proceed, on February 17, 2015, the AUSA in the Western District of Texas moved to dismiss the Texas indictment, and Judge Kathleen Cardone granted the motion. Appendix 1. This supports the conclusion that Cuff's mental status was progressively worsening and that his competence should have been evaluated before sentence was imposed.

6. Cuff's attorney on direct appeal reported contemporaneous to the sentencing hearing that Cuff's mental health had deteriorated.

On August 17 and 18, 2012, Mr. Cuff was visited by his counsel representing him on direct appeal, Herbert Larson, Jr., and Sara Johnson. ROA.18-30694.1618. Mr. Larson and Ms. Johnson observed Mr. Cuff to have "a very 'flat' affect; this is, he did not respond with emotion to anything that [his counsel] said; nor did he express any emotion with regard to any

45

matters that he was discussing, even though some of these matters were . . . highly charged emotionally." *Id.* Cuff complained to counsel of nightly nightmares and daydreams, and "could not always distinguish the difference between what was real and what was imagined." Cuff "was 'having problems with reality." ROA.18-30694.1619. These observations by Mr. Larson and Ms. Johnson, made just over a month after the sentencing hearing on July 13, 2012, add support to Dr. Stanulis's and Dr. Fiester's opinions that a competency hearing should have been sought by trial counsel before the sentencing hearing.

*5. Cuff's statement at the guilty plea hearing that he did not believe he had a mental illness is not dispositive.*

In its opinion denying the Section 2255 motion, the district court relied upon Cuff's response at the plea colloquy that he did "not believe" that he had a mental health problem that would limit his ability to understand what was happening. Cuff's statement is hardly a definitive statement of competency. Moreover, the failure of certain mentally ill persons to recognize their illness or the effect it is having is a well-known syndrome called Anosognosia. In the words of one court, it is "the failure to appreciate one's own illness." *Struck v. Cook County Public Guardian*, 901 N.E.2d 946, 948 (Ill. App. 2008). Anosognosia is a common consequence of brain injuries. "A person grappling with a serious mental illness…cannot be

46

assumed to have a reliable understanding of his faculties." *See Anderson v.*
*United States*, 865 F.3d 914, 920 (7th Cir. 2017) (when defendant suffering
from multiple mental illnesses responded "as good as I can" to court's
question whether he understood what was happening, his reply acknowledged
"some inability to think clearly and participate in the proceedings").  .

In its opinion the district court relied on the principle that statements in
"open court during a plea hearing carry a strong presumption of verity."
*United States v. Martinez-Molina*, 64 F.3d 719, 733 (5th Cir. 1995) (citing
*Blackledge v. Allison*, 431 U.S. 63, 74 (1977)).  While this principle is true in
general, it applies with much less force in the case of a person who suffers
from a mental illness.  *See, e.g.*, *Anderson*, 865 F.3d at 920 ("Anderson's
belief about the effects of his medication is inadequate assurance that he was
capable of entering a plea: A person grappling with a serious mental illness
or under the influence of psychotropic drugs cannot be assumed to have a
reliable understanding of his faculties.").

Additionally, Cuff's mental health was deteriorating between the time
of the plea and the time of sentencing.  Thus, Cuff's statement about his
competence at the time of plea hearing is not determinative of his
competence at sentencing, which occurred about eight months later.

47

### *6. Mr. Karns' opinion of Cuff's competence is not dispositive.*

In finding that Cuff was competent to be sentenced, the district court relied on the opinion of trial counsel Karns at the time of the plea that Cuff was competent to proceed. This reasoning is flawed because Karns' opinion as to Cuff's mental state at the time of the plea is not dispositive of Cuff's mental state at the time of the plea much less at the time of sentencing eight months later.

Furthermore, while it is true that in the usual case trial counsel's opinion as to his client's mental state appropriately carries great weight, the law is clear that lawyers have no special ability to diagnose mental illnesses and their effects on their clients' mental state. *See Bouchillon*, 907 F.2d at 593–94 ("the state court, in reviewing Bouchillon's petition, relied almost exclusively on the evidence of Bouchillon's demeanor at the plea proceeding and the testimony of his trial counsel to hold that he was competent . . . [T]he existence of even a severe psychiatric defect is not always apparent to laymen . . . . One need not be catatonic, raving or frothing, to be [legally incompetent.]") (citations omitted); *Maxwell v. Roe*, 606 F.3d 561, 574 (9th Cir. 2010) ("[A]lthough we acknowledge that defense counsel will often have the best-informed view of the defendant's ability to participate in his defense, we have recognized that counsel is not a trained mental health professional

and his failure to raise petitioner's competence does not establish that petitioner was competent.") (citations omitted).  Therefore, Karns' opinion at the time of the guilty plea is not dispositive of Cuff's mental state at that time, much less at the time of sentencing.

In sum, given Cuff's worsening mental state between the plea and the sentencing, Karns should have moved for competency hearing before the court imposed a sentence. His failure to do so was ineffective assistance. Ultimately, it may be that this Court will deny the appeal on the merits of this issue.  However, because reasonable jurists could differ on whether Karns should have requested a competency hearing before sentence was imposed, this Court should issue a COA.

## D. THE COURT SHOULD GRANT A COA ON THE ISSUE OF WHETHER THE TRIAL COURT'S ABUSED ITS DISCRETION IN DENYING THE RULE 59 MOTION.[1]

Fed. R. Civ. P. 59 (e) grants the court the power to alter or amend its judgment.  A motion under this rule "serves the narrow purpose of allowing a party to correct manifest errors of law or fact *or to present newly discovered evidence*."  *Waltman v. International Paper Co*., 875 F.2d 468, 473 (5th Cir. 1989) (emphasis added).  The district court has broad discretion with respect

---

[1] Cuff is not certain whether a COA is necessary to appeal the denial of this motion, but he seeks one in an abundance of caution.

to granting this motion, but "reconsideration of a judgment after its entry is an extraordinary remedy that should be used sparingly." *Id*. at 479.   In exercising its discretion, "a district court must strike the proper balance between the need for finality and the need to render just decisions on the basis of all the facts."  *Hale v. Townley*, 45 F.3d 914, 921 (5th Cir. 1995).

Cuff's Rule 59 motion was based on new evidence that was not before the district court when the court denied the 2255 motion.  At the sentencing hearing on July 13, 2012, attorney Schweitzer presented the reports of Drs. Nevin and Stanulis concluding that Cuff suffered from limbic encephalopathy (brain damage) from his early use of mefloquine, and that such damage contributed to his criminal conduct.  The district court disagreed with and was highly skeptical of these conclusions.  See ROA.18-30694.890. lines: 10-11 ("I realize you say it's unquestionably.  I question that myself with respect to those conclusions [of Dr. Nevin]."); ROA.18-30694.891. ("Nor does it mean that I have to accept [Dr. Nevin's conclusion] on its face, as an expert opinion.").

The district court was of the view that the conclusion of Drs. Nevin and Stanulis respecting the effects of mefloqine were "more cutting-edge theory than . . . accepted fact."  ROA.18-30694.893. The court went on to say, "On its face, [the conclusion of Dr. Nevin] does not meet a *Daubert*

50

standard, in the Court's opinion.  The Court finds that this is a cutting-edge issue and is by no means accepted fact." *Id*.    ROA.18-30694.919(that Cuff has encephalopathy "is a theory, supposition.  The perseveration is consistent with but is not diagnosed as encephalopathy.").

In his Rule 59 motion, Cuff asked the court to reconsider its skepticism of the conclusions of Dr. Nevin and Dr. Stanulis in light of the new exhibits and new evidence presented in the motion.  This evidence was discovered after April 4, 2014, the date the 2255 motion was filed and had not been seen by the district court.  The court denied the Rule 59 motion saying, in essence, that Cuff had presented nothing new.  In so holding the district court failed to adequately consider the following items of new evidence presented in the Rule 59 motion and, therefore, abused its discretion.

### 1. The Bureau of Prisons health report by Dr. Vynedra Smith diagnosing Cuff with mefloqine brain disorder.

Cuff presented a Health Services Report from the Bureau of Prisons (Exhibit 12 to the Rule 59 motion).  ROA.18-30694.699-732. The report noted that as of January 9, 2018, Dr. Vynedra Smith diagnosed Cuff as suffering, among other illnesses from "*mefloquine brain disorder*."  ROA.18-30694.710 (emphasis added).  ROA.18-30694.719. Cuff was also diagnosed as suffering from non-Hodgkin's "stage IV diffuse large B cell lymphoma," a type of blood cancer.  ROA.18-30694.710.

Dr. Smith's conclusion that Cuff suffered from "Mefloquine brain disorder," was significant new evidence that confirmed the conclusions of Drs. Nevin and Stanulis that at the time of his criminal conduct, Cuff was suffering from a brain disorder caused by use of mefloquine. This evidence should have substantially undermined the district court's skepticism and conclusions in its judgment denying the Section 2255 motion.

## 2. New evidence of brain damage caused by antimalarial drug mefloquine regarding members of the U.K. military.

Cuff introduced an article by Ashley Croft published November 12, 2015, in the Pharmaceutical Journal, *Mefloquine, Madness, and the Ministry of Defence* (Exhibit 6 to Rule 59 motion). ROA.18.30694.638-643. The article argued that the "overwhelming evidence about the dangers of long-term use of mefloquine leaves the UK Ministry of Defense little excuse to continue giving this drug." ROA.18.30694.638. Evidence that the United Kingdom was being advised to discontinue the use of mefloquine was significant new evidence not previously presented to the district court. The evidence also confirmed the conclusions of Dr. Nevin and Dr. Stanulis with respect to the deleterious effects of mefloquine.

### 3. New evidence of a scientific study regarding neuropsychiatric symptoms in military members and the change in the military's position regarding mefloquine.

Cuff presented a study published on June 8, 2016 by Livezy, Oliver, & Cantilena, *Prolonged Neuropsychiatric Symptoms in a Military Service Member Exposed to Mefloquine* (Exhibit 1 to Rule 59 motion).  ROA.18-30694.513-518. This study presented new evidence to the district court that "Due to the increasing awareness of these neuropsychiatric side effects, the United States military relegated mefloquine to a third-line medication behind doxycycline and Malarone (atovaquone-proguanil) for prophylaxis in areas of chloroquine-resistant malaria, such as Afghanistan.  Consequently, from 2008 to 2013, the use of mefloquine in the military has decreased dramatically." *Id*. at 516.  The study emphasized that "[m]efloquine-induced neuropsychiatric symptoms can be severely life debilitating [and] Mefloquine toxicity can persist for several years after exposure has been discontinued, with little to no abatement in symptoms over time." *Id*.

This significant new evidence was not seen before by the district court. The evidence also confirmed the conclusions of Dr. Nevin and Dr .Stanulis that Cuff may well have suffered from brain damage related to the effects of mefloquine.

### 4. New evidence of mental health disorders connected to the use of mefloquine.

Cuff presented and article published 2015 from Academy of Psychosomatic Medicine, *Depersonalization/Derealization Disorder after Exposure to Mefloquine* (Exhibit 2 to Rule 59 motion).  ROA.18-30694.526-530.  Authored by Doctors Katherine McEvoy, Blair Anton, and Margaret S. Chisolm, the article reviews the case studies of persons suffering psychiatric symptoms from mefloquine use, namely "depersonalization/derealization disorder" (DDD).  According to the authors, DDD "attacks the core of one's core sense of self." ROA.18-30694.527. This study supports the conclusions of Dr. Nevin and Dr. Stanulis that Cuff suffered brain damage from the use of mefloquine that could have contributed to his sexual disinhibition and criminal conduct.

### 5. New evidence of debilitating effect of behavioral disorders connected to the use of mefloquine.

Cuff presented an article published 2015, *Behavioral effects of Mefloquine in tail suspension and light/dark tests* (Exhibit 3 to Rule 59 motion).  ROA.18-30694.519-525.  Authored by John Michael Holden, Richard Slivicki, Rachel Dahl, Xia Dong, Matt Dwyer, Weston Holley, and Crissa Knott, the article noted that "[i]n the past 10-15 years concerns about mefloquine's neuropsychiatric side effects have grown."  This significant

new evidence was not seen before by the district court. The evidence also confirmed the conclusions of Dr. Nevin and Dr. Stanulis that Cuff may well have suffered brain damage from the use of mefloquine.

### 6. New evidence of findings about Mefloquine Intoxication Syndrome.

Cuff presented an article published 2015 by Dr. Remington Nevin and Dr. Elspeth Ritchie, *The Mefloquine Intoxication Syndrome*: *A Significant Potential Confounder in the Diagnosis and Management of PTSD and Other Chronic Deployment-Related Neuropsychiatric Disorders* (Exhibit 10 to Rule 59 motion). ROA.18-30694.662-683. The authors observe that acute mefloquine intoxication "may produce vivid, hyper-realistic nightmares that may precede a manic, paranoid, dissociative or confuse psychosis, often marred by horrific auditory and visual hallucinations." ROA.18-30694.662. They also observe that commonly reported symptoms of acute mefloquine intoxication include "anxiety, paranoia, and persecutory mania, panic attacks, emotional liability and aggression." ROA.18-30694.666. The symptoms also include "psychosis, magical thinking, grandiose thoughts . . . and delusions." *Id*.

This significant new evidence was not seen before by the district court. The evidence confirms the conclusion of Dr. Nevin and Dr Stanulis that that

Cuff may well have suffered brain damage related to the effects of mefloquine.

> ### 7. New evidence of debilitating effect of behavioral disorders connected to the use of mefloquine and resulting rare use of the drug by U.S. military.

Cuff presented an article published October, 2016 in the *Federal Practitioner*, authored by Dr. Nevin and Dr. Ritchie, *FDA Black Box, VA Red ink?* (Exhibit 9 to Rule 59 motion) ROA.18-30694.657-661. The authors observe that in July 2013, the Food and Drug Administration "included a black box warning describing [neuropsychiatric reactions which] potentially could persist long after the drug has been discontinued . . . . Consequently, more than a quarter century after its introduction, mefloquine now is only rarely prescribed to members of the U.S. military." ROA.18-30694.657.

This significant new evidence was not seen before by the district court. The evidence also confirmed the conclusions of Dr. Nevin and Dr Stanulis that that Cuff may well have suffered from brain damage from his use of mefloquine.

> ### 8. New evidence of a petition for guardianship filed by Cuff's wife and sister alleging Cuff was incompetent to handle his own affairs.

As Exhibit 13 to the Rule 59 motion, Cuff presented a petition for Guardianship that had been filed by his sister and his wife in the Circuit

Court of Harrison, Mississippi on November 17, 2017. ROA.18-30694.733-738. In the petition, both Cuff's mother and sister agree that Cuff was incompetent to handle his own affairs and was in need of a guardian. *Id*. This significant new evidence was not seen before by the district court. The evidence also confirmed the diagnosis of Dr. Nevin and Dr. Stanulis that Cuff may well have suffered from brain damage from his use of mefloquine. As of this date the petition has not yet been acted upon.

9. New evidence that Dr. Nevin's conclusions are now part of Cuff's Navy medical records.

As Exhibit 4 to the Rule 59 motion, Cuff presented Cuff's Navy medical records to the district court which contain Dr. Nevin's reports and diagnoses respecting Cuff's neurological damage stemming from his use of mefloquine. *See* District Court Docket 763-4, pages 31-38. (For reasons unknown, undersigned counsel has been unable to determine the electronic record number on appeal assigned to these records). Evidence that Cuff's Navy medical records now contain the diagnosis of Dr. Nevin should have persuaded the district court to reconsider its skepticism of the conclusions of Dr. Nevin and Dr. Stanulis.

*In sum*, in his Rule 59 motion, Cuff adduced nine new exhibits presenting evidence that was discovered after the date of the filing of the 2255 motion. Taken separately and together, the new evidence strongly

supported the conclusions of Drs. Nevin and Stanulis that Cuff suffered from brain damage from the use of mefloquine that may well have contributed to his criminal conduct. This new evidence should have substantially undermined the district court's skepticism about the conclusions of Dr. Nevin and Dr. Stanulis. The district judge's finding that nothing presented in the Rule 59 motion persuaded him to change his mind about the merits of the 2255 motion demonstrates the court's failure to adequately consider and weight relevant new evidence. In short, the district court's denial of the Rule 59 motion demonstrates a clear abuse of discretion.

It may be that this Court will ultimately deny the appeal on the merits of this issue. However, because reasonable jurists could differ on whether the district court abused its discretion in denying the Rule 59 motion, this Court should grant a COA on this issue.

## CONCLUSION

The issue presently before this Court is not whether Cuff will ultimately prevail on the merits of any of his claims. That remains to be seen. But he certainly meets the test established by the Supreme Court in *Miller-El v. Cockrell*, 537 U.S. 322, 326 (2003) for the issuance of a COA:

> Consistent with our prior precedent and the text of the habeas corpus statute, we reiterate that a prisoner seeking a COA need only demonstrate "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c) (2). A petitioner

satisfies this standard by demonstrating that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further. *Slack, supra,* at 484, 120 S.Ct. 1595. Applying these principles to petitioner's application, we conclude a COA should have issued.

    As in *Miller-El*, the Court should issue a COA here with respect to

each of the claims set forth above.

Respectfully Submitted:

/s/*Michael R. Levine*
Michael R. Levine

# APPENDIX

## CERTIFICATE OF COMPLIANCE

I certify that the accompanying brief is in "14" type and contains 12,532

words excluding the Table Contents and Table of the Authorities.

/s/  *Michael R. Levine*

## CERTIFICATE OF SERVICE

I, Michael R. Levine, hereby certify that I caused to be served the

above Brief in Support of Motion for a Certificate of Appealability by ECF in

the Western District of Louisiana.  All parties are signed on to this service.

/s/ *Michael R. Levine*
Michael R. Levine
Levine & McHenry
1001 S.W. Fifth Avenue, Suite 1414
Portland, Oregon 97204
Phone:  503-546-3927
Cell:    503-939-4334
Facsimile:  503-224-3203
Email: michael@levinemchenry.com

Michael R. Levine, Oregon Bar # 931421
Levine & McHenry, LLC
1001 S.W. Fifth Avenue, Suite 1414
Portland, Oregon 97204
Phone:  503-546-3927
Cell:     503-939-4334
Facsimile:  503-224-3203
Email: michael@levinemchenry.com

IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

UNITED STATES OF AMERICA,

                    C.A. No. 18-30694

       Plaintiff-Appellee,

   vs.                  D.C.  No. 5:11-CR-00062-21
                      (W.D. Louisiana, Judge Hicks)

ROBERT CUFF

       Defendant-Appellant.

_____

**UNOPPOSED MOTION TO PERMIT FILING OF AMENDED BRIEF IN SUPPORT OF MOTION FOR CERTIFICATE OF APPEALABILITY**

      Attorney Michael R. Levine, who represents the appellant Robert Cuff,

moves the Court for permission to file an amended brief in support of the motion

for a Certificate of Appealability (COA) within 7 days of the filing of this motion.

This motion is not opposed by the government and is based on the records of the

case and the following statements:

1.     On December 1, 2011, in the Western District of Louisiana, Robert Cuff pleaded guilty to the crime of engaging in a child exploitation enterprise in violation of 18 U.S.C. § 2252A (g). On July 13, 2012, after a hearing, the district court (Judge Maurice Hicks) denied Cuff's motion to withdraw his plea and sentenced him to a term of life imprisonment, which he is currently serving.  This Court affirmed his conviction on direct appeal.  His petition for certiorari to the Supreme Court was denied.

2.     On December 6, 2014, Cuff filed a motion under 28 U.S.C. § 2255 to vacate his conviction.  On March 12, 2018, the district court denied the motion. The court also denied a COA.  The court also denied a subsequent motion under F.R.Civ. Pr. 59 (e) to reconsider the judgment.

3.     On June 1, 2018, Cuff filed a timely notice of appeal from the district court's denial of his 2255 motion and from the denial of his Rule 59(e) motion.  Docket Nos. 757, 767.

4.     On   September 30, 2018, Cuff filed a motion with this Court for a COA.  He also filed a brief in support of the motion.

5.     Since the filing of the brief, counsel has learned of various factual and substantive errors in the brief.  In addition he has discovered some syntactical, and spelling errors.

2

6. Cuff has been sentenced to life in prison. Practically speaking, the motion for a COA may be his last chance to obtain at least the hope of some relief. Therefore, counsel seeks to insure that the brief is as accurate and persuasive as possible; for that reason, he requests the opportunity to amend the brief and correct the errors.

7. Undersigned counsel has communicated with Assistant United States Mignonne Griffing who states that the government has no objection to this motion.

Therefore, in the interest of justice, the Court should grant the motion.

Dated: November 5, 2018.

Respectfully Submitted:

/s/ *Michael R. Levine*
Michael R. Levine

## CERTIFICATE OF COMPLIANCE

I certify that the attached motion complies with the type setting and page limitation of the rules.  The pleading is in "14" type and contains 523 words.

/s/ *Michael R. Levine*
*Michael R. Levine*

## CERTIFICATE OF SERVICE

I, Michael R. Levine, hereby certify that on November 5, 2018, I caused to be

served the Motion for Permission to File Amended Brief by ECF on Assistant

United States Attorney Mignonne Griffing.

/s/ *Michael R. Levine*
Michael R. Levine

Michael R. Levine, Oregon Bar # 931421
LEVINE & MCHENRY, LLC
1001 S.W. Fifth Avenue, Suite 1414
Portland, Oregon 97204
Phone:  503-546-3927
Cell:     503-939-4334
Facsimile:  503-224-3203
Email: michael@levinemchenry.com

IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

UNITED STATES OF AMERICA,

                                      C.A. No. 18-30694

        Plaintiff-Appellee,

    vs.                            D.C.  No. 5:11-CR-00062-21
                                     (W.D. Louisiana, Judge Hicks)

ROBERT CUFF

        Defendant-Appellant.

_____

**UNOPPOSED MOTION TO PERMIT FILING OF SUPPLEMENTAL
BRIEF IN SUPPORT OF MOTION FOR CERTIFICATE OF
APPEALABILITY**

      Attorney Michael R. Levine, who represents the appellant Robert Cuff,

moves the Court for permission to file a Supplemental Brief in support of the

motion for a Certificate of Appealability (COA), which motion was forwarded to

the Court on January 10, 2019. This motion is based on the records of the case and

the following statements:

1

1.      On December 1, 2011, in the Western District of Louisiana, Robert Cuff

pleaded guilty to the crime of engaging in a child exploitation enterprise in violation

of 18 U.S.C. § 2252A (g). On July 13, 2012, after a hearing, the district court

(Judge Maurice Hicks) denied Cuff's motion to withdraw his plea and sentenced

him to a term of life imprisonment, which he is currently serving.  This Court

affirmed his conviction on direct appeal.  His petition for certiorari to the Supreme

Court was denied.

2.      On December 6, 2014, Cuff filed a motion under 28 U.S.C. § 2255 to vacate

his conviction.  On March 12, 2018, the district court denied the motion. The court

also denied a COA.  The court also denied a subsequent motion under F.R.Civ. Pr.

59 (e) to reconsider the judgment.

3.      On June 1, 2018, Cuff filed a timely notice of appeal from the district court's

denial of his 2255 motion and from the denial of his Rule 59(e) motion.  District

Court Docket Nos. 757, 767.

4.      On   September 30, 2018, Cuff filed a motion with this Court for a COA.  He

also filed a brief in support of the motion.   He seeks a COA on the following

issues:

    A. Whether the government breached the plea agreement;

2

B. Whether trial counsel was ineffective in not adequately investigating Cuff's mental condition and viable defenses before advising him to plead guilty;

C. Whether trial counsel was ineffective in not moving for a competency hearing at least before sentencing; and

D. Whether the trial court abused its discretion in denying the rule 59 motion to reconsider its opinion denying the 2255 motion.

4.     After the brief in support of the motion for a COA was filed, counsel learned of various factual and substantive errors in the brief.  In addition, he discovered some syntactical, and spelling errors.  As a result, on November 5, 2018, he filed an unopposed motion for permission to file an amended and corrected brief. That motion is still pending.

5.     Sometime thereafter, counsel learned of yet additional significant facts that he had neglected to argue in the MCOA, which provide strong support for the arguments in the motion for a COA, particular with respect to the issue of whether the government breached the plea agreement.   He also learned of an additional court order by the State of Mississippi establishing a guardianship for Cuff because of his incompetence that provides strong support for arguments in the motion for a COA.  This court order is not part of the record below, but in the supplemental brief, Cuff asks the Court to take judicial notice of it.

6.     Because undersigned counsel thought the additional facts and evidence were critical to the Court's resolution of the motion for a COA, on January 10, 2019, counsel forwarded to the Court the 16 page supplemental brief that is now before the Court.  In counsel's efforts to place this evidence and argument before the Court, he neglected to first seek permission of the Court to file the supplemental brief, for which omission he now apologizes.

7.     I have communicated with Assistant United States Attorney Mignonne Griffing, and she states the government has no objection to this motion.

       In sum, Cuff has been sentenced to life in prison.  Practically speaking, the motion for a COA may be his last chance to obtain at least the hope of some relief.  Counsel seeks to insure that in resolving the question of whether a COA should issue, the Court has before it all the relevant documents and facts.  In the interests of justice, Mr. Cuff requests the Court to accept for filing the supplemental brief that was forwarded to the Court on January 10, 2019.  In addition, he request the Court to grant the motion that was filed on November 5, 2018, and allow Mr. Cuff to file an amended and corrected brief in support of motion for a COA.

Dated:  January 11, 2019.

                         Respectfully Submitted:

                         /s/ *Michael R. Levine*
                            Michael R. Levine

4

## CERTIFICATE OF COMPLIANCE

I certify that the attached motion complies with the type setting and page limitation of the rules.  The pleading is in "14" type and contains 846 words.

/s/ *Michael R. Levine*
*Michael R. Levine*

## CERTIFICATE OF SERVICE

I, Michael R. Levine, hereby certify that all parties are served by this filing

because all are listed in ECF.

/s/ *Michael R. Levine*
Michael R. Levine