(Slip Opinion)    OCTOBER TERM, 2019    1

Syllabus

NOTE: Where it is feasible, a syllabus (headnote) will be released, as is being done in connection with this case, at the time the opinion is issued. The syllabus constitutes no part of the opinion of the Court but has been prepared by the Reporter of Decisions for the convenience of the reader. See *United States* v. *Detroit Timber & Lumber Co.,* 200 U. S. 321, 337.

# SUPREME COURT OF THE UNITED STATES

Syllabus

## BANISTER *v.* DAVIS, DIRECTOR, TEXAS DEPARTMENT OF CRIMINAL JUSTICE, CORRECTIONAL INSTITUTIONS DIVISION

### CERTIORARI TO THE UNITED STATES COURT OF APPEALS FOR THE FIFTH CIRCUIT

No. 18–6943.   Argued December 4, 2019—Decided June 1, 2020

Federal Rule of Civil Procedure 59(e) allows a litigant to file a motion to alter or amend a district court's judgment within 28 days from the entry of judgment, with no possibility of an extension. The Rule enables a district court to "rectify its own mistakes in the period immediately following" its decision, *White* v. *New Hampshire Dept. of Employment Security*, 455 U. S. 445, 450, but not to address new arguments or evidence that the moving party could have raised before the decision. A timely filed motion suspends the finality of the original judgment for purposes of appeal, and only the district court's disposition of the motion restores finality and starts the 30-day appeal clock. If an appeal follows, the ruling on the motion merges with the original determination into a single judgment.

Title 28 U. S. C. §2244(b), the so-called gatekeeping provision of the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), governs federal habeas proceedings. Under AEDPA, a state prisoner is entitled to one fair opportunity to seek federal habeas relief from his conviction. Section 2244(b), however, sets stringent limits on second or successive habeas applications. Among those restrictions, a prisoner may not reassert any claims "presented in a prior application," §2244(b)(1), and may bring a new claim only in limited situations. Because habeas proceedings are civil in nature, the Federal Rules of Civil Procedure generally apply, but statutory habeas restrictions, including §2244(b), trump any "inconsistent" Rule. §2254 Rule 12.

Petitioner Gregory Banister was convicted by a Texas court of aggravated assault and sentenced to 30 years in prison. After exhausting his state remedies, he filed for federal habeas relief, which the District

Syllabus

Court denied. Banister timely filed a Rule 59(e) motion, which the District Court also denied. He then filed a notice of appeal in accordance with the timeline for appealing a judgment after the denial of a Rule 59(e) motion. But the Fifth Circuit construed Banister's Rule 59(e) motion as a successive habeas petition and dismissed his appeal as untimely.

*Held*: Because a Rule 59(e) motion to alter or amend a habeas court's judgment is not a second or successive habeas petition under 28 U. S. C. §2244(b), Banister's appeal was timely. Pp. 5–16.

(a) The phrase "second or successive application" is a term of art and does not "simply 'refe[r]'" to all habeas filings made "'second or successively in time,'" following an initial application. *Magwood* v. *Patterson,* 561 U. S. 320, 332. In addressing what qualifies as second or successive, this Court has looked to historical habeas doctrine and practice and AEDPA's purposes. Here, both point toward permitting Rule 59(e) motions in habeas proceedings.

Prior to AEDPA, the Court held in *Browder* v. *Director, Dept. of Corrections of Ill.,* 434 U. S. 257, that Rule 59(e) applied in habeas proceedings. The Rule, the Court recounted, derived from courts' common-law power "to alter or amend [their] own judgments during[ ] the term of court in which [they were] rendered," prior to any appeal, including "in habeas corpus cases." *Id.,* at 270. Although the drafters of the Federal Rules eventually replaced the "term of court" power with Rule 59(e), the Court concluded that this did nothing to narrow the set of judgments amenable to alteration. The record of judicial decisions accords with that view. Pre-AEDPA, habeas courts were to dismiss repetitive applications except in "rare case[s]." *Kuhlmann* v. *Wilson,* 477 U. S. 436, 451. Yet in the half century from Rule 59(e)'s adoption through *Browder* to AEDPA's enactment, there exists only one dismissal of a Rule 59(e) motion as impermissibly successive. In all other cases, the district courts resolved Rule 59(e) motions on the merits.

Congress passed AEDPA against this backdrop, and gave no indication that it meant to change what qualifies as a successive application. Nor do AEDPA's purposes of reducing delay, conserving judicial resources, and promoting finality suggest any different result. Rule 59(e) offers a narrow, 28-day window to ask for relief; limits requests for reconsideration to matters properly raised in the challenged judgment; and consolidates proceedings by producing a single final judgment for appeal. Indeed, the Rule may make habeas proceedings more efficient by enabling a district court to reverse a mistaken judgment or to clarify its reasoning so as to make an appeal unnecessary. Pp. 5–12.

(b) *Gonzalez* v. *Crosby,* 545 U. S. 524, which held that a Rule 60(b)

Syllabus

motion counts as a second or successive habeas application if it "attacks the federal court's previous resolution of a claim on the merits," *id.,* at 532, does not alter that conclusion.  Rule 60(b) differs from Rule 59(e) in just about every way that matters here.  Whereas Rule 59(e) derives from a common-law court's plenary power to revise its judgment before anyone could appeal, Rule 60(b) codifies various writs used to collaterally attack a court's already completed judgment.  That distinction was not lost on pre-AEDPA habeas courts, which routinely dismissed Rule 60(b) motions for raising repetitive claims.  Next, the Rules' modern-day operations also diverge, with only Rule 60(b) undermining AEDPA's scheme to prevent delay and protect finality.  That is because a Rule 60(b) motion, which can arise long after the denial of a prisoner's initial petition, generally goes beyond pointing out alleged errors in the just-issued decision.  Still more, a Rule 60(b) motion "does not affect the [original] judgment's finality or suspend its operation" and is appealable as "a separate final order."  *Stone* v. *INS,* 514 U. S. 386, 401.  Left unchecked, a Rule 60(b) motion threatens serial habeas litigation, while a Rule 59(e) motion is a one-time effort to point out alleged errors in a just-issued decision before taking a single appeal.  Pp. 12–16.

Reversed and remanded.

    KAGAN, J., delivered the opinion of the Court, in which ROBERTS, C. J., and GINSBURG, BREYER, SOTOMAYOR, GORSUCH, and KAVANAUGH, JJ., joined.  ALITO, J., filed a dissenting opinion, in which THOMAS, J., joined.

Opinion of the Court

NOTICE: This opinion is subject to formal revision before publication in the preliminary print of the United States Reports. Readers are requested to notify the Reporter of Decisions, Supreme Court of the United States, Washington, D. C. 20543, of any typographical or other formal errors, in order that corrections may be made before the preliminary print goes to press.

# SUPREME COURT OF THE UNITED STATES

_____

No. 18–6943

_____

## GREGORY DEAN BANISTER, PETITIONER *v.* LORIE DAVIS, DIRECTOR, TEXAS DEPARTMENT OF CRIMINAL JUSTICE, CORRECTIONAL INSTITUTIONS DIVISION

ON WRIT OF CERTIORARI TO THE UNITED STATES COURT OF APPEALS FOR THE FIFTH CIRCUIT

[June 1, 2020]

JUSTICE KAGAN delivered the opinion of the Court.

A state prisoner is entitled to one fair opportunity to seek federal habeas relief from his conviction. But he may not usually make a "second or successive habeas corpus application." 28 U. S. C. §2244(b). The question here is whether a motion brought under Federal Rule of Civil Procedure 59(e) to alter or amend a habeas court's judgment qualifies as such a successive petition. We hold it does not. A Rule 59(e) motion is instead part and parcel of the first habeas proceeding.

## I

This case is about two procedural rules. First, Rule 59(e) applies in federal civil litigation generally. (Habeas proceedings, for those new to the area, are civil in nature. See *Fisher* v. *Baker*, 203 U. S. 174, 181 (1906).) The Rule enables a party to request that a district court reconsider a just-issued judgment. Second, the so-called gatekeeping provision of the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), codified at 28 U. S. C. §2244(b), governs

federal habeas proceedings. It sets stringent limits on second or successive habeas applications. We say a few words about each before describing how the courts below applied them here.

### A

Rule 59(e) allows a litigant to file a "motion to alter or amend a judgment."[1] The time for doing so is short—28 days from entry of the judgment, with no possibility of an extension. See Fed. Rule Civ. Proc. 6(b)(2) (prohibiting extensions to Rule 59(e)'s deadline). The Rule gives a district court the chance "to rectify its own mistakes in the period immediately following" its decision. *White* v. *New Hampshire Dept. of Employment Security*, 455 U. S. 445, 450 (1982). In keeping with that corrective function, "federal courts generally have [used] Rule 59(e) only" to "reconsider[] matters properly encompassed in a decision on the merits." *Id.,* at 451. In particular, courts will not address new arguments or evidence that the moving party could have raised before the decision issued. See 11 C. Wright, A. Miller, & M. Kane, Federal Practice and Procedure §2810.1, pp. 163–164 (3d ed. 2012) (Wright & Miller); accord, *Exxon Shipping Co.* v. *Baker*, 554 U. S. 471, 485–486, n. 5 (2008) (quoting prior edition).[2] The motion is therefore tightly tied to the underlying judgment.

The filing of a Rule 59(e) motion within the 28-day period "suspends the finality of the original judgment" for purposes of an appeal. *FCC* v. *League of Women Voters of Cal.*, 468 U. S. 364, 373, n. 10 (1984) (internal quotation marks

---

[1] The complete text of the Rule reads: "A motion to alter or amend a judgment must be filed no later than 28 days after the entry of the judgment."

[2] By contrast, courts may consider new arguments based on an "intervening change in controlling law" and "newly discovered or previously unavailable evidence." 11 Wright & Miller §2810.1, at 161–162 (3d ed. 2012). But it is rare for such arguments or evidence to emerge within Rule 59(e)'s strict 28-day timeframe.

Opinion of the Court

and alterations omitted). Without such a motion, a litigant
must take an appeal no later than 30 days from the district
court's entry of judgment. See Fed. Rule App. Proc. (FRAP)
4(a)(1)(A). But if he timely submits a Rule 59(e) motion,
there is no longer a final judgment to appeal from. See *Os-
terneck* v. *Ernst & Whinney*, 489 U. S. 169, 174 (1989). Only
the disposition of that motion "restores th[e] finality" of the
original judgment, thus starting the 30-day appeal clock.
*League of Women Voters*, 468 U. S., at 373, n. 10 (internal
quotation marks omitted); see FRAP 4(a)(4)(A)(iv) (A
party's "time to file an appeal runs" from "the entry of the
order disposing of the [Rule 59(e)] motion"). And if an ap-
peal follows, the ruling on the Rule 59(e) motion merges
with the prior determination, so that the reviewing court
takes up only one judgment. See 11 Wright & Miller §2818,
at 246; *Foman* v. *Davis*, 371 U. S. 178, 181 (1962). The
court thus addresses any attack on the Rule 59(e) ruling as
part of its review of the underlying decision.

Now turn to §2244(b)'s restrictions on second or succes-
sive habeas petitions. Under AEDPA, a state prisoner al-
ways gets one chance to bring a federal habeas challenge to
his conviction. See *Magwood* v. *Patterson*, 561 U. S. 320,
333–334 (2010). But after that, the road gets rockier. To
file a second or successive application in a district court, a
prisoner must first obtain leave from the court of appeals
based on a "prima facie showing" that his petition satisfies
the statute's gatekeeping requirements. 28 U. S. C.
§2244(b)(3)(C). Under those provisions, which bind the dis-
trict court even when leave is given, a prisoner may not re-
assert any claims "presented in a prior application."
§2244(b)(1). And he may bring a new claim only if it falls
within one of two narrow categories—roughly speaking, if
it relies on a new and retroactive rule of constitutional law
or if it alleges previously undiscoverable facts that would
establish his innocence. See §2244(b)(2). Still more: Those
restrictions, like all statutes and rules pertaining to habeas,

trump any "inconsistent" Federal Rule of Civil Procedure otherwise applicable to habeas proceedings. 28 U. S. C. §2254 Rule 12.

## B

This case began when, nearly two decades ago, petitioner Gregory Banister struck and killed a bicyclist while driving a car. Texas charged him with the crime of aggravated assault with a deadly weapon. A jury found him guilty, and he was sentenced to 30 years in prison. State courts upheld the conviction on direct appeal and in collateral proceedings. Banister then turned to federal district court for habeas relief. Although raising many claims, his petition mainly argued that his trial and appellate counsel provided him with constitutionally ineffective assistance. The District Court disagreed and entered judgment denying the application.

At that point, Banister timely filed a Rule 59(e) motion asking the District Court to alter its judgment. Consistent with the Rule's corrective purpose, Banister urged the court to fix what he saw as "manifest errors of law and fact." App. 219. Five days later and without requiring a response from the State, the court issued a one-paragraph order explaining that it had reviewed all relevant materials and stood by its decision. See *id.*, at 254. In accordance with the timeline for appealing a judgment after the denial of a Rule 59(e) motion, see *supra,* at 3, Banister then filed a notice of appeal (along with a request for a certificate of appealability) to challenge the District Court's rejection of his habeas application.

Yet the Court of Appeals for the Fifth Circuit dismissed the appeal as untimely. That ruling rested on the view that Banister's Rule 59(e) motion, although captioned as such, was not really a Rule 59(e) motion at all. Because it "attack[ed] the federal court's previous resolution of [his] claim on the merits," the Fifth Circuit held that the motion must

Opinion of the Court

be "construed as a successive habeas petition." App. 305 (internal quotation marks omitted). In any future case, that holding would prohibit a habeas court from considering claims made in a self-styled Rule 59(e) motion except in rare circumstances—that is, when a court of appeals gave permission and the claim fell within one of §2244(b)'s two slender categories. See *supra,* at 3. In Banister's own case, that bar was of no moment because the District Court had already addressed his motion's merits. But viewing a Rule 59(e) motion as a successive habeas petition also had another consequence, and this one would affect him. Unlike a Rule 59(e) motion, the Court of Appeals noted, a successive habeas application does not postpone the time to file an appeal. That meant the clock started ticking when the District Court denied Banister's habeas application (rather than his subsequent motion)—and so Banister's appeal was several weeks late.

We granted certiorari to resolve a Circuit split about whether a Rule 59(e) motion to alter or amend a habeas court's judgment counts as a second or successive habeas application. 588 U. S. ___ (2019). We hold it does not, and reverse.

## II

This case requires us to choose between two rules—more specifically, to decide whether AEDPA's §2244(b) displaces Rule 59(e) in federal habeas litigation. The Federal Rules of Civil Procedure generally govern habeas proceedings. See Fed. Rule Civ. Proc. 81(a)(4). They give way, however, if and to the extent "inconsistent with any statutory provisions or [habeas-specific] rules." 28 U. S. C. §2254 Rule 12; see *supra,* at 3–4. Here, the Fifth Circuit concluded and Texas now contends that AEDPA's limitation of repetitive habeas applications conflicts with Rule 59(e)'s ordinary operation. That argument in turn hinges on viewing a Rule

Opinion of the Court

59(e) motion in a habeas case as a "second or successive application." §2244(b); see Brief for Respondent 10. If such a motion constitutes a second or successive petition, then all of §2244(b)'s restrictions kick in—limiting the filings Rule 59(e) would allow. But if a Rule 59(e) motion is not so understood—if it is instead part of resolving a prisoner's first habeas application—then §2244(b)'s requirements never come into the picture.

The phrase "second or successive application," on which all this rides, is a "term of art," which "is not self-defining." *Slack* v. *McDaniel*, 529 U. S. 473, 486 (2000); *Panetti* v. *Quarterman*, 551 U. S. 930, 943 (2007). We have often made clear that it does not "simply 'refer'" to all habeas filings made "'second or successively in time,'" following an initial application. *Magwood*, 561 U. S., at 332 (quoting *Panetti*, 551 U. S., at 944 (alteration omitted)). For example, the courts of appeals agree (as do both parties) that an amended petition, filed after the initial one but before judgment, is not second or successive. See 2 R. Hertz & J. Liebman, Federal Habeas Corpus Practice and Procedure §28.1, pp. 1656–1657, n. 4 (7th ed. 2017) (collecting cases); Brief for Petitioner 20–21; Brief for Respondent 16. So too, appeals from the habeas court's judgment (or still later petitions to this Court) are not second or successive; rather, they are further iterations of the first habeas application.[3] Chronology here is by no means all.

In addressing what qualifies as second or successive, this Court has looked for guidance in two main places. First, we have explored historical habeas doctrine and practice. The

_____

[3] For additional examples, see *Slack* v. *McDaniel*, 529 U. S. 473, 487 (2000) (allowing a prisoner to file a second-in-time, post-judgment application to assert claims earlier dismissed for failure to exhaust) and *Stewart* v. *Martinez-Villareal*, 523 U. S. 637, 643–644 (1998) (permitting a prisoner to file a second-in-time, post-judgment application to argue that he was incompetent to be executed).

phrase "second or successive application," we have explained, is "given substance in our prior habeas corpus cases," including those "predating [AEDPA's] enactment." *Slack*, 529 U. S., at 486; *Panetti*, 551 U. S., at 944; see *id.,* at 943 (stating that the phrase "takes its full meaning from our case law"). In particular, we have asked whether a type of later-in-time filing would have "constituted an abuse of the writ, as that concept is explained in our [pre-AEDPA] cases." *Id.*, at 947. If so, it is successive; if not, likely not. Second, we have considered AEDPA's own purposes. The point of §2244(b)'s restrictions, we have stated, is to "conserve judicial resources, reduc[e] piecemeal litigation," and "lend[] finality to state court judgments within a reasonable time." *Id.,* at 945–946 (internal quotation marks omitted). With those goals in mind, we have considered "the implications for habeas practice" of allowing a type of filing, to assess whether Congress would have viewed it as successive. *Stewart* v. *Martinez-Villareal*, 523 U. S. 637, 644 (1998). Here, both historical precedents and statutory aims point in the same direction—toward permitting Rule 59(e) motions in habeas proceedings. And nothing cuts the opposite way.

## A

This Court has already held that history supports a habeas court's consideration of a Rule 59(e) motion. In *Browder* v. *Director, Dept. of Corrections of Ill.*, 434 U. S. 257 (1978), we addressed prior to AEDPA "the applicability of Federal Rule [59(e)] in habeas corpus proceedings." *Id.,* at 258. In deciding that the Rule applied in habeas—that "a prompt motion for reconsideration" was "thoroughly consistent" with habeas law and "well suited to the special problems and character of [habeas] proceedings"—we mainly looked to historical practice. *Id.,* at 271 (internal quotation marks omitted). Rule 59(e), we recounted, derived from a court's common-law power "to alter or amend

its own judgments during[] the term of court in which [they were] rendered," prior to any appeal. *Id.,* at 270; see *Zimmern* v. *United States*, 298 U. S. 167, 169–170 (1936) ("The judge had plenary power while the term was in existence to modify his judgment [or] revoke it altogether").[4]  Courts exercised that authority, we explained, "in habeas corpus cases" just as "in other civil proceedings." *Browder*, 434 U. S., at 270.  In 1946, the drafters of the Federal Rules replaced the "term of court" power with Rule 59(e), thus prescribing a set number of days (then 10, now 28) in which a party could move to amend a judgment. See *id.*, at 271.  But in our view, that change did nothing to narrow the set of judgments amenable to alteration. See *id.*, at 270–271.  After Rule 59(e), just as before, a district court could "reconsider the grant or denial of habeas corpus relief" in the same way it could review any other decision. *Id.,* at 270; see *id.,* at 271.  A timely Rule 59(e) motion, we held, "suspend[ed] the finality" of any judgment, including one in habeas—thus enabling a district court to address the matter again. *Id.,* at 267 (internal quotation marks omitted).[5]

––––––––––

[4] A term of court in those days was simply a period in which a court was open for business.  A statute or rule set the date of its commencement, and the court itself determined the date to adjourn.  See *United States* v. *Pitman*, 147 U. S. 669, 670–671 (1893).

[5] The dissent's attempt to dismiss *Browder* is impossible to square with the opinion.  Mostly, the dissent claims that *Browder* is just a case about "time limits."  *Post,* at 10 (opinion of ALITO, J.).  But *Browder* is about time limits only in the sense that this case is about time limits: There, as here, the timeliness of a motion depended on the broader question whether Rule 59(e) applied in habeas proceedings.  See 434 U. S., at 258 ("In order to resolve th[e] question" whether the "appeal was untimely," "we must consider the applicability of Federal Rule[] 59 in habeas corpus proceedings").  The dissent also intimates that *Browder* was different because there the prison warden rather than the prisoner moved for reconsideration of the habeas ruling.  See *post,* at 10, and n. 2.  But the Court's decision explicitly addressed "motion[s] to reconsider the grant *or* denial of habeas corpus relief."  434 U. S., at 270 (emphasis added).  In other

Opinion of the Court

The record of judicial decisions accords with *Browder*'s view of the use of Rule 59(e) in habeas practice. Before AEDPA, "abuse-of-the-writ principles limit[ed] a [habeas applicant's] ability to file repetitive petitions." *McCleskey* v. *Zant*, 499 U. S. 467, 483 (1991). That doctrine was more forgiving than AEDPA's gatekeeping provision—for example, enabling courts to hear a second or successive petition if the "ends of justice" warranted doing so. *Id.,* at 485. But the rule against repetitive litigation still had plenty of bite. It demanded the dismissal of successive applications except in "rare case[s]." *Kuhlmann* v. *Wilson*, 477 U. S. 436, 451 (1986) (plurality opinion). So if courts had viewed Rule 59(e) motions as successive, there should be lots of decisions dismissing them on that basis. But nothing of the kind exists. In the half century from Rule 59(e)'s adoption (1946) through *Browder* (1978) to AEDPA's enactment (1996), we (and the parties) have found only one such dismissal. See *Bannister* v. *Armontrout*, 4 F. 3d 1434, 1445 (CA8 1993). In every other case, courts resolved Rule 59(e) motions on the merits—and without any comment about repetitive litigation. Mostly, courts denied the motions and adhered to their original judgments. See, *e.g., Gajewski* v. *Stevens*, 346 F. 2d 1000, 1001 (CA8 1965) (*per curiam*). Occasionally, courts decided they had erred in those decisions. See, *e.g., York* v. *Tate*, 858 F. 2d 322, 325 (CA6 1988) (*per curiam*). The win-loss rate is for this point irrelevant. What matters is that they all (but one) treated Rule 59(e) motions not as successive, but as attendant on the initial habeas application.

Congress passed AEDPA against this legal backdrop, and did nothing to change it. AEDPA of course made the limits on entertaining second or successive habeas applications

_____

words, the identity of the movant—whether warden or prisoner—was irrelevant.

more stringent than before. See *supra,* at 3. But the stat-
ute did not redefine what qualifies as a successive petition,
much less place Rule 59(e) motions in that category. Cf.
*Magwood,* 561 U. S., at 336–337 (distinguishing between
two questions: "§2244(b)'s threshold inquiry into whether
an application is 'second or successive' and its subsequent
inquiry into whether [to dismiss] a successive application").
When Congress "intends to effect a change" in existing
law—in particular, a holding of this Court—it usually pro-
vides a clear statement of that objective. *TC Heartland
LLC* v. *Kraft Foods Group Brands LLC*, 581 U. S. ___, ___
(2017) (slip op., at 8). AEDPA offers no such indication that
Congress meant to change the historical practice *Browder*
endorsed of applying Rule 59(e) in habeas proceedings.

Nor do AEDPA's purposes demand a change in that tra-
dition. As explained earlier, AEDPA aimed to prevent se-
rial challenges to a judgment of conviction, in the interest
of reducing delay, conserving judicial resources, and pro-
moting finality. See *supra,* at 7. Nothing in Rule 59(e)—a
rule *Browder* described as itself "based on an interest in
speedy disposition and finality," 434 U. S., at 271 (internal
quotation marks omitted)—conflicts with those goals. Re-
call everything said above about the Rule's operation. See
*supra,* at 2–3. To begin with, Rule 59(e) gives a prisoner
only a narrow window to ask for relief—28 days, with no
extensions. Next, a prisoner may invoke the rule only to
request "reconsideration of matters properly encompassed"
in the challenged judgment. *White*, 455 U. S., at 451. And
"reconsideration" means just that: Courts will not entertain
arguments that could have been but were not raised before
the just-issued decision. A Rule 59(e) motion is therefore
backward-looking; and because that is so, it maintains a
prisoner's incentives to consolidate all of his claims in his
initial application. Yet more, the Rule consolidates appel-
late proceedings. A Rule 59(e) motion briefly suspends fi-
nality to enable a district court to fix any mistakes and

Opinion of the Court

thereby perfect its judgment before a possible appeal. The motion's disposition then merges into the final judgment that the prisoner may take to the next level. In that way, the Rule avoids "piecemeal appellate review." *Osterneck*, 489 U. S., at 177. Its operation, rather than allowing repeated attacks on a decision, helps produce a single final judgment for appeal.

Indeed, the availability of Rule 59(e) may make habeas proceedings more efficient. Most obviously, the Rule enables a district court to reverse a mistaken judgment, and so make an appeal altogether unnecessary. See *United States* v. *Ibarra*, 502 U. S. 1, 5 (1991) (*per curiam*) (noting that giving district courts a short time to correct their own errors "prevents unnecessary burdens being placed on the courts of appeals"). Of course, Rule 59(e) motions seldom change judicial outcomes. But even when they do not, they give habeas courts the chance to clarify their reasoning or address arguments (often made in less-than-limpid *pro se* petitions) passed over or misunderstood before. See Brief for National Association of Criminal Defense Lawyers as *Amicus Curiae* 12–20 (describing examples). That opportunity, too, promotes an economic and effective appellate process, as the reviewing court gets "the benefit of the district court's plenary findings." *Osterneck*, 489 U. S., at 177. And when a district court sees no need to change a decision, the costs of permitting a Rule 59(e) motion are typically slight. A judge familiar with a habeas applicant's claims can usually make quick work of a meritless motion. This case may well provide an example: The District Court declined to make the State respond to Banister's motion and decided it within five days. Nothing in such a process conflicts with AEDPA's goal of streamlining habeas cases.

The upshot, after AEDPA as before, is that Rule 59(e) motions are not second or successive petitions, but instead a part of a prisoner's first habeas proceeding. In timing and substance, a Rule 59(e) motion hews closely to the initial

application; and the habeas court's disposition of the former fuses with its decision on the latter. Such a motion does not enable a prisoner to abuse the habeas process by stringing out his claims over the years. It instead gives the court a brief chance to fix mistakes before its (single) judgment on a (single) habeas application becomes final and thereby triggers the time for appeal. No surprise, then, that habeas courts historically entertained Rule 59(e) motions, rather than dismiss them as successive. Or that Congress said not a word about changing that familiar practice even when enacting other habeas restrictions.

## B

Texas (along with the dissent) resists this conclusion on one main ground: this Court's prior decision in *Gonzalez* v. *Crosby*, 545 U. S. 524 (2005). The question there was whether a Rule 60(b) motion for "relie[f] from a final judgment" denying habeas relief counts as a second or successive habeas application. Fed. Rule Civ. Proc. 60(b).[6] We said that it does, so long as the motion "attacks the federal court's previous resolution of a claim on the merits." 545 U. S., at 532 (emphasis deleted).[7] Texas thinks the "*Gonzalez* principle applies with equal force to Rule 59(e) motions."

─────────

[6] Under Rule 60(b), a court may relieve a party in civil litigation from a final judgment if the party can show (1) mistake, inadvertence, surprise, or excusable neglect; (2) certain newly discovered evidence; (3) fraud, misrepresentation, or misconduct by an opposing party; (4) voidness of the judgment; (5) certain events that would cast doubt on the validity or equity of continuing to apply the judgment; or (6) "any other reason that justifies relief." Fed. Rule Civ. Proc. 60(b)(1)–(6).

[7] By contrast, *Gonzalez* held, a Rule 60(b) motion that attacks "some defect in the integrity of the federal habeas proceedings"—like the mistaken application of a statute of limitations—does not count as a habeas petition at all, and so can proceed. 545 U. S., at 532. Texas concedes that if *Gonzalez* controls Rule 59(e) motions, that decision's distinction between merits-based motions and integrity-based motions would have to apply. See Brief for Respondent 37. The need for a habeas court to make that not-always-easy threshold determination further undermines

Brief for Respondent 8.  After all, the State argues, both Rule 59(e) and Rule 60(b) provide "vehicles for asserting habeas claims" after a district court has entered judgment denying relief.  *Id.,* at 2.  And if *Gonzalez* does apply, Texas concludes, Banister must lose because (as everyone agrees) his Rule 59(e) motion pressed only merits-based claims.

But Rule 60(b) differs from Rule 59(e) in just about every way that matters to the inquiry here.  (Contra the dissent's refrain, see *post,* at 1, 3, 5, 6, 10, 14, the variance goes far beyond their "labels.")  Begin, again, with history.  Recall that Rule 59(e) derives from a common-law court's plenary power to revise its judgment during a single term of court, before anyone could appeal.  See *supra,* at 7–8.  By contrast, Rule 60(b) codifies various writs used to seek relief from a judgment at any time after the term's expiration—even after an appeal had (long since) concluded.  Those mechanisms did not (as the term rule did) aid the trial court to get its decision right in the first instance; rather, they served to collaterally attack its already completed judgment.  See Advisory Committee's 1946 Notes on Amendments to Fed. Rule Civ. Proc. 60; Mann, Note, History and Interpretation of Federal Rule 60(b), 25 Temp. L. Q. 77, 78 (1951).  And that distinction was not lost on pre-AEDPA habeas courts applying the two rules.  As discussed earlier, it is practically impossible to find a case dismissing a Rule 59(e) motion for raising repetitive claims.  See *supra,* at 9.  But decisions abound dismissing Rule 60(b) motions for that reason.  See, *e.g., Williamson* v. *Rison*, 1993 WL 262632 (CA9, July 9, 1993); see also *Brewer* v. *Ward*, 1996 WL 194830, *1 (CA10, Apr. 22, 1996) (collecting cases from multiple Circuits).  That is because those courts recognized Rule 60(b)—as con-

---

the notion—already on shaky ground, see *supra*, at 10–11—that Texas's position would lead to any efficiency gains.

trasted to Rule 59(e)—as threatening an already final judg-
ment with successive litigation.[8]

The modern-day operation of the two Rules also diverge,
with only Rule 60(b) undermining AEDPA's scheme to pre-
vent delay and protect finality. Unlike Rule 59(e) motions
with their fixed 28-day window, Rule 60(b) motions can
arise long after the denial of a prisoner's initial petition—
depending on the reason given for relief, within either a
year or a more open-ended "reasonable time." Fed. Rule
Civ. Proc. 60(c)(1). In *Gonzalez* itself, the prisoner made his
motion nearly three years after the habeas court's denial of
relief, and more than one year after his appeal ended. See
545 U. S., at 527. Given that extended timespan, Rule 60(b)
inevitably elicits motions that go beyond Rule 59(e)'s mis-
sion of pointing out the alleged errors in the habeas court's
decision. See, *e.g., Lopez* v. *Douglas,* 141 F. 3d 974, 975
(CA10 1998) (*per curiam*) (seeking relief in light of a Su-
preme Court decision issued a decade after judgment); *Ty-
ler* v. *Anderson*, 749 F. 3d 499, 504–505 (CA6 2014) (seeking
to raise claims that former counsel had neglected in a years-
old habeas application). Still more, the appeal of a Rule
60(b) denial is independent of the appeal of the original pe-
tition. Recall that a Rule 59(e) motion suspends the finality

---

[8] The dissent's alternative explanation for this disparity does not pass
muster. According to the dissent, habeas courts "might have been more
inclined" to rule on the merits of Rule 59(e) motions because doing so was
easier: after all, they (but not Rule 60(b) motions) always challenge a
just-issued decision. *Post,* at 12. But another course would have been
easier still: throwing out the motion for raising repetitive claims. And
even more to the point, that course would usually have been required if
the dissent were right that Rule 59(e) motions counted as successive.
Although pre-AEDPA courts had some discretion around the edges, the
consideration of successive petitions was supposed to be "rare."
*Kuhlmann* v. *Wilson,* 477 U. S. 436, 451 (1986) (plurality opinion); see
*supra,* at 9. It is a "tall order," *post,* at 12, then, to think that a half
century's worth of habeas courts would have resolved Rule 59(e) motions
on the merits if they thought of those motions as successive. The only
plausible account of their actions is that they did not.

Opinion of the Court

of the habeas judgment, and a decision on the former merges into the latter for appellate review.  See *supra,* at 2–3, 10-11.  By contrast, a Rule 60(b) motion "does not affect the [original] judgment's finality or suspend its operation." Fed. Rule Civ. Proc. 60(c)(2).  And an appeal from the denial of Rule 60(b) relief "does not bring up the underlying judgment for review."  *Browder*, 434 U. S., at 263, n. 7.  Instead, that denial is appealed as "a separate final order."  *Stone* v. *INS*, 514 U. S. 386, 401 (1995).[9]

In short, a Rule 60(b) motion differs from a Rule 59(e) motion in its remove from the initial habeas proceeding.  A Rule 60(b) motion—often distant in time and scope and always giving rise to a separate appeal—attacks an already completed judgment.  Its availability threatens serial habeas litigation; indeed, without rules suppressing abuse, a prisoner could bring such a motion endlessly.  By contrast, a Rule 59(e) motion is a one-time effort to bring alleged errors in a just-issued decision to a habeas court's attention, before taking a single appeal.  It is a limited continuation of the original proceeding—indeed, a part of producing the final judgment granting or denying habeas relief.  For those reasons, *Gonzalez* does not govern here.  A Rule 59(e) motion, unlike a Rule 60(b) motion, does not count as a second or successive habeas application.

---

[9]Texas objects that if a Rule 60(b) motion is filed within 28 days, it too suspends the finality of the underlying judgment so that the denial of the motion merges with that judgment on appeal.  See Brief for Respondent 25, 28.  But that is only because courts of appeals have long treated Rule 60(b) motions filed within 28 days as . . . Rule 59(e) motions.  See, *e.g., Skagerberg* v. *Oklahoma*, 797 F. 2d 881, 882–883 (CA10 1986) (*per curiam*) ("A post-judgment motion made within [28] days of the entry of judgment that questions the correctness of a judgment," however denominated, "is properly construed as a motion to alter or amend judgment under [Rule] 59(e)"); see also Fed. Rule App. Proc. 4(a)(4)(A)(vi) (codifying that approach by setting the same appeals clock for self-styled Rule 60(b) motions filed within 28 days as for Rule 59(e) motions).

Opinion of the Court

### III

Our holding means that the Court of Appeals should not have dismissed Banister's appeal as untimely. Banister properly brought a Rule 59(e) motion in the District Court. As noted earlier, the 30-day appeals clock runs from the disposition of such a motion, rather than from the initial entry of judgment. See *supra,* at 3. And Banister filed his notice of appeal within that time. The Fifth Circuit reached a contrary conclusion because it thought that Banister's motion was really a second or successive habeas application, and so did not reset the appeals clock. For all the reasons we have given, that understanding of a Rule 59(e) motion is wrong. We therefore reverse the judgment of the Court of Appeals and remand the case for further proceedings consistent with this opinion.

*It is so ordered.*

ALITO, J., dissenting

# SUPREME COURT OF THE UNITED STATES

————

No. 18–6943

————

## GREGORY DEAN BANISTER, PETITIONER *v.* LORIE DAVIS, DIRECTOR, TEXAS DEPARTMENT OF CRIMINAL JUSTICE, CORRECTIONAL INSTITUTIONS DIVISION

ON WRIT OF CERTIORARI TO THE UNITED STATES COURT OF APPEALS FOR THE FIFTH CIRCUIT

[June 1, 2020]

JUSTICE ALITO, with whom JUSTICE THOMAS joins, dissenting.

Gregory Banister, a state prisoner, filed a federal habeas petition arguing that his conviction was invalid for 53 reasons. His arguments spanned almost 300 pages and featured an imagined retelling of the jury deliberations in the form of stage dialogue. After the District Court determined that all his claims lacked merit, he filed a motion rearguing many of them.

If Banister had labeled this motion what it was in substance—another habeas petition—it would have been summarily dismissed under 28 U. S. C. §2244(b)(1). If he had labeled it a motion for relief from judgment under Federal Rule of Civil Procedure 60(b), it would also have been subject to dismissal under our decision in *Gonzalez* v. *Crosby*, 545 U. S. 524 (2005). Instead, he gave it a different label, styling it as a motion to alter the judgment under Rule 59(e), and the Court now holds this label makes all the difference.

The question in this case is whether a state prisoner can evade the federal habeas statute's restrictions on second or successive habeas petitions by affixing a Rule 59(e) label. The answer follows from our decision in *Gonzalez*, and the

answer is no.  If a Rule 59(e) motion asserts a habeas claim, the motion functions as a second or successive habeas petition and should be treated as such.

## I

The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) "streamlin[es] federal habeas corpus proceedings." *Rhines* v. *Weber*, 544 U. S. 269, 277 (2005).  A state prisoner is generally limited to a single federal habeas petition, which usually must be filed within one year after the end of direct review; the district court must give this petition "priority"; if the prisoner is dissatisfied with the district court's decision and wants to appeal, he must seek permission from the appropriate court of appeals and must set out the errors he thinks the district court made; and the appeal can go forward only if a specified standard is met. §§2244(d), 2253(c), 2254(a), 2266(a).  As we have frequently said, this design was crafted to promote comity, finality, federalism, and judicial efficiency.  See, *e.g.*, *Panetti* v. *Quarterman*, 551 U. S. 930, 945 (2007).

Habeas petitions occupy an outsized place on federal dockets.  See *infra*, at 13.  Their efficient resolution not only preserves federal judicial capacity but removes the cloud of federal review from state-court judgments.  The federal habeas provisions create a procedural regime that differs sharply from the regime that generally applies in civil cases, and the habeas statute displaces any Federal Rule of Civil Procedure that is "inconsistent with" its provisions. 28 U. S. C. §2254 Rule 12 (Habeas Rule 12).

Integral to AEDPA's design are its restrictions on "second or successive" habeas petitions, which, prior to AEDPA, sometimes led to very lengthy delays.  See, *e.g.*, *Kuhlmann* v. *Wilson*, 477 U. S. 436, 453, and n. 15 (1986) (plurality opinion).  A provision added by AEDPA, 28 U. S. C. §2244(b), is designed to prevent this.  Under §2244(b)(1), a second or successive petition may not duplicate the initial

petition.  Thus, any claim "that was presented in a prior application shall be dismissed."  §2244(b)(1).  In addition, second or successive petitions usually may not raise new claims either.  Any claim "that was not presented in a prior application shall be dismissed unless" it meets stringent standards contained in §2244(b)(2).  Specifically, to avoid dismissal, a new claim must rely on (1) "a new rule of constitutional law" that this Court has made applicable in habeas proceedings or (2) a fact that "could not have been discovered previously through the exercise of due diligence" and that now makes the petitioner's innocence "clear and convincing."  §§2244(b)(2)(A)–(B).

A prisoner wishing to file a second or successive petition must apply to a court of appeals for permission to do so, and the court of appeals cannot authorize the filing unless the petition makes a prima facie showing that it meets §2244(b)(2)'s standards.  §2244(b)(3).  If a court of appeals allows the second or successive petition to be filed, the district court must nevertheless review its claims and dismiss any that turns out not to meet §2244(b)(2)'s standards.  §2244(b)(4).

## II

In *Gonzalez*, we considered how §2244(b) applies to a filing that is in essence a second or successive habeas petition but bears a different label.  The filing there was a motion under Rule 60(b), which allows a court to relieve a party of an earlier judgment.  Every Member of the *Gonzalez* Court, including those in dissent, recognized that whether a Rule 60(b) motion should be treated as a habeas petition depends on the nature of the relief the motion seeks, not the label slapped onto it. 545 U. S., at 532 (opinion of the Court); *id.*, at 538 (BREYER, J., concurring); *id.*, at 539 (Stevens, J., dissenting).  And in considering whether a Rule 60(b) motion asserts the type of relief that requires it to be treated as a habeas petition, the critical question is whether the motion

in essence asserts a habeas claim, that is, a claim that propounds a "federal basis for relief from a state court's judgment of conviction." *Id.*, at 530 (opinion of the Court). If the motion "seeks to add a new ground for" that relief, it "will of course qualify" as a second or successive habeas petition. *Id.*, at 532. It will also qualify "if it attacks the federal court's previous resolution of a [habeas] claim *on the merits.*" *Ibid.*

To see how this analysis plays out, imagine a case in which a state prisoner files a Rule 60(b) motion alleging that he was denied the effective assistance of counsel at trial. If that claim was not in his initial habeas petition, the motion constitutes a second or successive habeas petition because it asserts a new reason why he is entitled to habeas relief. And if that claim was in his initial habeas petition but he now alleges that the court erroneously denied the claim, the motion is still a second or successive habeas petition since it alleges that the court should have granted him habeas relief, an argument that is "effectively indistinguishable" from the claim that he was entitled to that relief in the first place. *Ibid.* In either event, we held in *Gonzalez*, "failing to subject" the motion to §2244(b) "would be inconsistent with" AEDPA. *Id.*, at 531 (internal quotation marks omitted).

Although *Gonzalez* concerned a motion under Rule 60(b), nothing in its reasoning was tied to any specific characteristics of such a motion, and accordingly, there is no good reason why a Rule 59(e) motion should not be subject to the same rules. Indeed, the application of *Gonzalez*'s reasoning is even more clear-cut when a habeas petitioner files a Rule 59(e) motion. Like its neighbor, Rule 59(e) provides a way for a civil litigant to get relief after the entry of judgment, but a Rule 59(e) motion can seek only "reconsideration of matters properly encompassed in a decision on the merits." *White* v. *New Hampshire Dept. of Employment Security*, 455 U. S. 445, 451 (1982); accord, *ante*, at 10. And a claim that

Alito, J., dissenting

"attacks the federal court's previous resolution of a claim *on the merits*" is exactly the type of claim that, under *Gonzalez*, is subject to §2244(b)(1) and must therefore be dismissed. 545 U. S., at 532.[1]

Today's opinion thus permits precisely the type of circumvention that *Gonzalez* prevents. Consider again the habeas petitioner with the allegedly bad trial lawyer. Suppose that, after the district court denies an ineffective-assistance claim in his initial petition, he submits three effectively indistinguishable filings under different headers: a second habeas petition asserting the same claim again; a Rule 60(b) motion disputing the court's resolution of the claim; and a Rule 59(e) motion doing the same. The first two will face dismissal under §2244(b)(1). But, under today's decision, the third may proceed. And not only that, if a *pro se* litigant does not appreciate that he can get around §2244(b)(1) by calling his second or successive petition a Rule 59(e) motion, a court may "ignore the legal label that [the] *pro se* litigant attaches to" his filing, treat the petition as a Rule 59(e) motion, and voilà, §2244(b) disappears from view. *Castro* v. *United States*, 540 U. S. 375, 381 (2003). This allows a habeas petitioner to obtain "a second chance to have the merits determined favorably" in contravention of AEDPA and our reasoning in *Gonzalez*, 545 U. S., at 533, n. 5.

### III

The Court provides a variety of reasons for refusing to follow *Gonzalez*, but none is sound.

---

[1] Rule 59(e) motions can also assert "newly discovered or previously unavailable evidence" and "intervening change[s] in controlling law." 11 C. Wright, A. Miller, & M. Kane, Federal Practice and Procedure §2810.1 (3d ed. Supp. 2020). Banister's motion did neither, see Brief for Petitioner 47, so this case concerns only the types of claims that require automatic dismissal under 28 U. S. C. §2244(b)(1).

### A

The Court begins by saying that a Rule 59(e) motion is part of a petitioner's "one fair opportunity to seek federal habeas relief," *ante*, at 1, but if there is a reason why a Rule 60(b) motion could not also be called part of that "opportunity," the Court does not offer one. A repetitive habeas claim is as much a repetitive habeas claim if filed under Rule 59(e) in 28 days or under Rule 60(b) at, say, day 29. The label is the only "variance" that explains why one is now allowed but not the other. *Ante*, at 13.

### B

The Court proclaims that Rules 59(e) and 60(b) differ "in just about every way that matters to the inquiry here," *ante*, at 13, but none of the differences that the Court cites matter under *Gonzalez*'s reasoning, which relies on the nature of the claim asserted in the post-judgment motion. Under that reasoning, it makes no difference that a Rule 60(b) motion may be filed later than a Rule 59(e) motion, that a Rule 59(e) motion (but not a later-filed Rule 60(b) motion) suspends a judgment's finality for purposes of appeal, or that an order denying a Rule 59(e) motion merges with the judgment for purposes of appeal, whereas a Rule 60(b) denial is separately appealable. *Ante*, at 14–15. *Gonzalez* did not rely on a single one of the Rule 60(b) characteristics mentioned by the Court here, and none matters under *Gonzalez*'s reasoning. On the contrary, *Gonzalez*'s logic was simple: If a motion advances a habeas claim, it counts as a habeas petition.

### C

The Court looks to the history of motions to alter or amend a judgment, see *ante*, at 7–8, but it is hard to see how that history has a bearing on the issue in this case. As the Court notes, trial courts once had the power to correct errors in their judgments during but not after the term in

Alito, J., dissenting

which the judgment was handed down, but how this is relevant to our issue is a mystery. The point in time at which a court's power to alter or amend a judgment ends (whether at the conclusion of a court term or at a specified point after the entry of the judgment) is used to determine whether a motion to alter or amend is timely. But the issue before us is not whether Banister filed his Rule 59(e) motion within the time allowed for such motions (he did) but whether his motion counts as a habeas petition. The question would be exactly the same if district courts still had terms of court and his motion was filed before the term ended.

## D

In arguing that "[t]his case requires us to choose between" §2244(b) and Rule 59(e), *ante*, at 5, the Court invokes Habeas Rule 12, which states that "[t]he Federal Rules of Civil Procedure, to the extent that they are not inconsistent with any statutory provisions or these rules, may be applied to a proceeding under these rules." According to the Court, AEDPA does not "place Rule 59(e) motions in th[e] category" of second or successive petitions, and therefore AEDPA does not alter Rule 59(e)'s role. *Ante*, at 10.

This argument greatly exaggerates the very limited role of Habeas Rule 12. Although "habeas corpus proceedings are characterized as 'civil,'" "the label is gross and inexact." *Harris* v. *Nelson*, 394 U. S. 286, 293–294 (1969). They are "unique," and even before AEPDA they "conformed with civil practice only in a general sense." *Id.*, at 294. Thus, we have contrasted a "civil action, governed by the full panoply of the Federal Rules of Civil Procedure," with the "swift, flexible, and summary determination" of a habeas claim. *Preiser* v. *Rodriguez*, 411 U. S. 475, 495–496 (1973). The Civil Rules themselves give AEDPA precedence. They "apply to proceedings for habeas corpus" only insofar as "the practice in those proceedings is not specified in a federal statute" or the Habeas Rules and "has previously conformed

to the practice in civil actions." Fed. Rule Civ. Proc. 81(a)(4). And as we have observed, "[s]uch specific evidence as there is with respect to the intent of the draftsmen of the [civil] rules indicates nothing more than a general and non-specific understanding that the rules would have very limited application to habeas corpus proceedings." *Harris*, 394 U. S., at 295.

Let's count some of the ways in which habeas proceedings deviate from the Civil Rules. Discovery rules, which are central to civil litigation, do not apply "as a matter of right" in habeas proceedings. *Ibid.* Instead, a court's leave is required for factual development. See Habeas Rule 6(a); see also *Bracy* v. *Gramley*, 520 U. S. 899, 908–909 (1997). Another civil mainstay, the Rule 12(b)(6) motion to dismiss, also has no place in habeas. See *Browder* v. *Director, Dept. of Corrections of Ill.*, 434 U. S. 257, 269, n. 14 (1978); see also Habeas Rule 4 (responsive pleading not required unless the court directs). Indeed, the entire "civil action procedural sequencing—from a motion to dismiss, to an answer, to discovery, and ultimately to trial—[i]s not applicable in habeas cases." *O'Brien* v. *Moore*, 395 F. 3d 499, 506 (CA4 2005) (discussing *Browder*, 434 U. S., at 269, n. 14). Even nationwide service of process authorized by statute, rather than the Civil Rules, is unavailable in habeas. See *Schlanger* v. *Seamans*, 401 U. S. 487, 489–491, and n. 4 (1971). And though courts have long applied "noncontroversial rules in habeas corpus proceedings," *Harris*, 394 U. S., at 294, n. 5, the mixed bag shows habeas's hybrid nature. See 4 C. Wright, A. Miller, & A. Steinman, Federal Practice and Procedure §1021, n. 6 (4th ed. Supp. 2020) (Wright & Miller) (cataloging other rules that courts have and have not applied).

Our decisions rejecting some of the Civil Rules' procedural "formalisms" have often inured to the benefit of habeas petitioners. *Hensley* v. *Municipal Court, San Jose-Milpitas Judicial Dist., Santa Clara Cty.*, 411 U. S. 345, 350

ALITO, J., dissenting

(1973). In *O'Neal* v. *McAninch*, 513 U. S. 432 (1995), we rejected a State's argument that Rule 61 put the burden on habeas petitioners to resolve doubts about whether trial errors were harmless, and we reached that conclusion primarily because habeas proceedings are "[u]nlike the civil cases cited by the State." *Id.*, at 440. In *Holiday* v. *Johnston*, 313 U. S. 342 (1941), the petitioner sought habeas relief from a district court but received a hearing before an Alcatraz commissioner. We held that Rule 53, which allows a court to send some issues to a "master," did not justify that practice in habeas cases; the federal habeas statute contemplated proceedings before judges, giving Rule 53 "no application." *Id.*, at 353. In so holding, we rejected the argument that the practice at issue was permissible because it was "a convenient one," *id.*, at 352, the same claim that the Court makes about Rule 59(e), *ante*, at 11. Instead, we held that a court "may not substitute another more convenient mode" from civil practice if it contravenes "the Congressional policy" reflected "in the Habeas Corpus Act." *Holiday*, 313 U. S., at 352.

AEDPA has only widened the gap between habeas and other civil proceedings, see *Felker* v. *Turpin*, 518 U. S. 651, 664 (1996), and *Gonzalez* illustrates the point. Like Rule 59(e) and the other Rules just discussed, no federal habeas provision "expressly circumscribe[s]" the application of Rule 60(b) in habeas cases. 545 U. S., at 529. And like Rule 59(e) but unlike the discovery rules, which were "innovations," *Hickman* v. *Taylor*, 329 U. S. 495, 500 (1947), Rule 60(b) descends from "ancient" civil practice, 11 Wright & Miller §2851. But AEDPA so "dramatically" reshaped federal habeas procedure, *Rhines*, 544 U. S., at 274, that courts must proceed "in a manner consistent with the objects of the statute" even where it does not address a given detail, *Calderon* v. *Thompson*, 523 U. S. 538, 554 (1998). Where a Civil Rule does conflict with a specific AEDPA provision like §2244(b), AEDPA necessarily prevails.

Alito, J., dissenting

On its own, then, Habeas Rule 12 cannot do the work that Banister needs. He must show that AEDPA itself contains the loophole he seeks to exploit, and he has not done so. The refrain echoed by the Court—that a Rule 59(e) motion comes included with a petitioner's "one full and fair opportunity" for habeas relief, Brief for Petitioner 1; see *ante*, at 1—simply begs the question that AEDPA answers: namely, what that opportunity entails. It does not entail "a second chance to have the merits" of a habeas claim "determined favorably." *Gonzalez*, 545 U. S., at 533, n. 5.

Lifting partial quotations from our decision in *Browder*, 434 U. S., at 271, the Court states that we have "already held" that Rule 59(e) is "'thoroughly consistent' with habeas law," *ante*, at 7, but the partial quotations are highly misleading. The case had nothing to do with the interplay between Rule 59(e) and restrictions on filing a second or successive habeas petition.

In *Browder*, a prison warden moved for reconsideration of a judgment granting habeas relief, but he did not do so within the time allowed by Rule 59 and Rule 52(b), which sets the same deadline for a motion to amend factual findings. All that the Court held was that those "time limits" were "thoroughly consistent with the spirit of the habeas corpus statutes," which did not address the "timeliness" of such a motion. 434 U. S., at 270–271.

*Browder* in no way establishes that it is "thoroughly consistent with" AEDPA to allow a petitioner to accomplish via a Rule 59(e) motion what the prisoner could not achieve by honestly labeling his motion as a habeas petition.[2] The warden, of course, was not seeking habeas relief, so his Rule

---

[2]*Browder* cites two cases for the proposition that courts had power to alter their judgments "in habeas corpus cases." 434 U. S., at 270. Neither did so at the habeas petitioner's request. See *Aderhold* v. *Murphy*, 103 F. 2d 492, 493 (CA10 1939) (*sua sponte* alteration deemed void on appeal); *Tiberg* v. *Warren*, 192 F. 458, 462 (CA9 1911) (government motion).

ALITO, J., dissenting

59(e) motion could not have constituted a successive habeas petition.

E

This brings us to the Court's final redoubt, pre-AEDPA practice. We have sometimes looked there in interpreting AEDPA's terms. See *Slack* v. *McDaniel*, 529 U. S. 473, 486 (2000). But assuming pre-AEDPA practice can inform our understanding of AEDPA, history lends no real support to the Court's holding that a Rule 59(e) motion cannot count as a second or successive habeas petition. Research has found exactly one decision that directly addresses that question, and its holding is contrary to the Court's position.

In *Bannister* v. *Armontrout*, 4 F. 3d 1434 (CA8 1993), after the District Court denied a habeas petition, the prisoner filed a Rule 59(e) motion asserting a new claim. The Eighth Circuit held that this motion "was the functional equivalent of a second petition" and rejected it on that ground. *Id.*, at 1445. The Court does not attempt to distinguish that case, and cannot cite a single pre-AEDPA case that directly substantiates its claim about pre-AEDPA practice.

Without any direct support, the Court reads volumes into what it sees as the disparate treatment of habeas petitioners' Rule 60(b) and 59(e) motions in pre-AEDPA days. Pre-AEDPA courts often, though not always, treated prisoners' Rule 60(b) motions as successive habeas petitions. See *Brewer* v. *Ward*, 1996 WL 194830, *1 (CA10, Apr. 22, 1996) (noting the trend as to motions "raising new claims" but affirming a denial of Rule 60(b) relief on the merits). By contrast, only *Bannister* denied a Rule 59(e) motion on that basis, and a handful of cases denied (or reversed lower-court decisions granting) habeas petitioners' Rule 59(e) motions on other grounds. *Ante*, at 9. From this state of affairs, the Court infers that Rule 59(e) motions were generally regarded as free from the pre-AEDPA strictures on second or successive petitions. In other words, the Court infers that

judges thought that they were required to decide Rule 59(e) motions on the merits even if they were second or successive habeas petitions in substance.

This is nothing but speculation, and there is a more likely explanation for the disparity between reported cases dismissing Rule 60(b) and Rule 59(e) motions as second or successive. Before AEDPA, whether to entertain a successive habeas petition was left to "the sound discretion of the federal trial judges," *Sanders* v. *United States*, 373 U. S. 1, 18 (1963), and therefore the disparity may be attributable, not to what judges thought they were required to do, but to what they chose to do as a matter of discretion. And the Court provides the obvious reasons why judges might have been more inclined to reach the merits in Rule 59(e) cases. A Rule 59(e) motion raises claims that the judge recently decided; a Rule 60(b) motion may raise entirely new claims and may be filed later. For these reasons, judges might have found it more attractive to decide the merits in Rule 59(e) cases when they had the discretion to do so.

The important point, however, is that the Court can only speculate. But based on that speculation, the Court is willing to conclude that in the days before AEDPA, judges thought that they were legally required to decide the merits of second or successive habeas petitions if they were labeled as Rule 59(e) motions and that AEDPA's express and tight restrictions on second or successive petitions were enacted on the understanding that this feature of pre-AEDPA practice would not be disturbed. That is a tall order indeed, and this inconclusive case law does not suffice. See, *e.g.*, *Isbrandtsen Co.* v. *Johnson*, 343 U. S. 779, 783 (1952) ("Statutes . . . are to be read with a presumption favoring the retention of long-established and familiar principles").

ALITO, J., dissenting

## IV
## A

The Court muses that its opinion "may make habeas proceedings more efficient," *ante*, at 11, but improving statutes is not our job, and in any event, the Court's assessment of the consequences of its decision is dubious.

State prisoners file thousands of federal habeas petitions per year.[3]  After a petition is denied, as most are, the Court suggests that Rule 59(e) gives federal habeas courts a chance "to correct their own errors" or "to clarify their reasoning," but the value of this opportunity is questionable since, as the Court admits, "Rule 59(e) motions seldom change judicial outcomes." *Ante*, at 11.  Statistics agree that, in the main, district courts resolve habeas petitions correctly.  In 2019, appeals courts reversed in only a miniscule percentage of appeals in cases involving state prisoners' habeas claims.[4]

The Court is probably right that, once in a while, a Rule 59(e) motion could save the need for an appeal.  But that positive effect is very likely outweighed by the burden imposed by the entirely meritless Rule 59(e) motions that today's decision will give prisoners an incentive to file.  Not only will prisoners file such motions on the off chance of winning, but some may file simply to toll the deadline for filing an appeal, Fed. Rule App. Proc. 4(a)(4)(A)(iv).  The burden of wading through these motions will not always be "slight." *Ante*, at 11; see App. 219–253 (Banister's motion).  And the aggregate burden on the district courts may actually be quite substantial.

The Court's decision would be more understandable if it

_____

[3] See Administrative Office of the U. S. Courts, Federal Judicial Caseload Statistics, U. S. District Courts–Civil Cases Commenced, by Basis of Jurisdiction and Nature of Suit (2019) (Table C–2).  State prisoners' habeas petitions are listed under the "Federal Question" category of "Private Cases."

[4] See *id.*, Table B–5.

offered any real benefit for habeas petitioners, but it does
not.  As Banister concedes, see Brief for Petitioner 33, the
standard for Rule 59(e) relief from an erroneous judgment
is higher than the standard for permission to appeal.  Com-
pare *Miller-El* v. *Cockrell*, 537 U. S. 322, 336 (2003) ("rea-
sonable debate" standard for a certificate of appealability),
with 11 Wright & Miller §2810.1 ("manifest error" standard
for Rule 59(e) relief ).  So if a prisoner has a claim that can
prevail under Rule 59(e), there should be no problem in ob-
taining permission to appeal.  That is the procedure pre-
scribed by AEDPA, and it is an entirely reasonable one that
does not prejudice habeas petitioners.

### B

If treated according to their substance rather than their
label, Rule 59(e) motions would still have "an unquestiona-
bly valid role to play" in habeas cases.  *Gonzalez*, 545 U. S.,
at 534.  The construction of AEDPA in *Gonzalez* did not
doom the Rule 60(b) motion at issue in that case.  Although
deficient for other reasons, that motion challenged "a non-
merits aspect of the first federal habeas proceeding," the de-
nial of the habeas petition on timeliness grounds.  *Ibid.*
That sort of claim is not the equivalent of a habeas claim.
It does not assert a federal basis for relief from the state-
court judgment; rather, it seeks to cure a "defect" in the fed-
eral habeas proceeding itself.  *Id.*, at 532.

Rule 59(e) motions can do the same.  Through that Rule,
a petitioner can flag manifest errors in a district court's ap-
plication of AEDPA's statute of limitations, AEDPA's ex-
haustion requirement, or the rules of procedural default.
See *Webb* v. *Davis*, 940 F. 3d 892, 898 (CA5 2019) (adding
"the district court's denial of funding, the district court's
dismissal of claims without conducting an evidentiary hear-
ing, . . . the district court's failure to consider claims pre-
sented in the habeas application," and "the denial of a claim
based on a valid appeal waiver" (internal quotation marks

ALITO, J., dissenting

omitted)).  These challenges relate only to a petitioner's
ability to assert a claim, not the merits of the claim itself.
Under *Gonzalez*, a petitioner could seek reconsideration of
them unencumbered by §2244(b).

That is not what Banister sought.  In substance, his Rule
59(e) motion was simply a repackaged version of his peti-
tion, and since the Fifth Circuit had not authorized him to
file it, the District Court had no jurisdiction to consider it.
See *Burton* v. *Stewart*, 549 U. S. 147, 153 (2007) (*per
curiam*).

## V

The question remains whether Banister's Rule 59(e) mo-
tion tolled his appeal deadline.  Under 28 U. S. C. §2107(a),
the Fifth Circuit could hear his appeal only if he filed it
within 30 days of the District Court's judgment.  See *Hamer*
v. *Neighborhood Housing Servs. of Chicago*, 583 U. S. ___,
___ (2017) (slip op., at 1).  During that time, Banister filed
his Rule 59(e) motion, but he did not file his appeal until 66
days after the court denied his habeas petition.

Appellate Rule 4(a) provides that "the time to file an ap-
peal runs for all parties from the entry of the order dispos-
ing of," among other things, a Rule 59(e) motion.  Fed. Rule
App. Proc. 4(a)(4)(A)(iv).  Not on that list: successive habeas
petitions.  Since that is what Banister's Rule 59(e) motion
was in substance, it did not toll his appeal deadline.

Banister contends that, even if his Rule 59(e) motion con-
stituted a habeas petition, the simple act of filing it gave
him more time to appeal.  He points to the statement in
*Artuz* v. *Bennett*, 531 U. S. 4 (2000), that an application is
commonly regarded as having been "'filed'" if "it is deliv-
ered to, and accepted by, the appropriate court officer for
placement into the official record."  *Id*., at 8.  Under this
definition, he argues, his motion was filed, and therefore,
the time to take an appeal was tolled until it was denied.

This argument fails because the timeliness of Banister's

appeal does not depend on whether what Banister labeled a Rule 59(e) motion was "filed" in the District Court. Under Appellate Rule 4(a), the time to appeal runs from the date when the district court finally disposes of a motion falling within one of six categories, including motions to alter or amend the judgment under Rule 59. And whether a motion falls into one of those categories depends on the substance of the motion, not the label that is affixed to it. See, *e.g.*, *Budinich* v. *Becton Dickinson & Co.*, 486 U. S. 196, 199–200, 203 (1988) (a motion for attorney's fees is not equivalent to a Rule 59(e) motion and did not toll the time to appeal); *State Nat. Ins. Co.* v. *County of Camden*, 824 F. 3d 399, 410 (CA3 2016); *Yost* v. *Stout*, 607 F. 3d 1239, 1243 (CA10 2010); *Borrero* v. *Chicago*, 456 F. 3d 698, 700 (CA7 2006); *Moody Nat. Bank of Galveston* v. *GE Life and Annuity Assurance Co.*, 383 F. 3d 249, 251 (CA5 2004); *Jones* v. *UNUM Life Ins. Co. of America*, 223 F. 3d 130, 136 (CA2 2000). Thus, to toll the time to appeal, Banister's motion had to be a motion to alter or amend, and because §2244(b) dictates that his motion be treated as a habeas petition, it cannot be allowed to toll the time to appeal.

\*    \*    \*

I would hold that a Rule 59(e) motion that constitutes a second or successive habeas petition is subject to §2244(b) and that such a motion does not toll the time to appeal. I therefore conclude that the Fifth Circuit was correct to dismiss Banister's untimely appeal. Because the Court holds to the contrary, I respectfully dissent.