IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

———————————

No. 18-30694

———————————

UNITED STATES OF AMERICA,

*Plaintiff-Appellee*,

v.

ROBERT CUFF,

*Defendant-Appellant.*

———————————

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF LOUISIANA
5:14-CV-3384

———————————

INITIAL BRIEF OF APPELLANT
28 U.S.C. § 2255 APPEAL

———————————

John N. Maher
Illinois Bar No. 6237599
District of Columbia Bar No. 489113

MAHER LEGAL SERVICES PC
17101 71st Avenue
Tinley Park, Illinois 60477
Tel: (708) 468-8155
Fax: (708) 468-9693
john@maherlegalservices.com

*Attorneys for Defendant-Appellant*

## CERTIFICATE OF INTERESTED PERSONS

The undersigned counsel of record certifies that the following listed persons have an interest in the outcome of this case. These representations are made in order that the judges of this Court may evaluate possible disqualification or recusal.

| | | |
|---|---|---|
| 1. | District Judge: | Honorable S. Maurice Hicks, Jr. |
| 2. | Appellant: | Robert Cuff |
| 3. | Appellant's Legal Guardian: | Jacqueline Siebert |
| 4. | United States Attorney for the Western District of Louisiana | Honorable Brandon Bonaparte Brown |
| 5. | Assistant United States Attorney for the Western District of Louisiana | John Luke Walker (Trial)<br>Cristina Walker (Appeal) |

**/s/ John N. Maher**
John N. Maher
MAHER LEGAL SERVICES PC
17101 71st Avenue
Tinley Park, Illinois 60477
Tel: (708) 468-8155
Fax: (708) 468-9693
john@maherlegalservices.com
Illinois State Bar No. 6237599
District of Columbia Bar No. 489113

*Attorneys for Defendant-Appellant*

## STATEMENT REGARDING ORAL ARGUMENT

Defendant-Appellant Robert Cuff ("Cuff") respectfully submits that oral argument will assist the Court in reaching a just decision. This case began with a multi-district investigation the United States Attorney General ("AG") coordinated with the heads of Homeland Security ("DHS"), Immigration and Customs Enforcement ("ICE"), the Federal Bureau of Investigation ("FBI"), the U.S. Navy Criminal Investigative Service ("NCIS"), international law enforcement, and local law enforcement agencies.

Arrested in July 2011 at his home in El Paso, Texas, in the Western District of Texas ("Texas"), and extradited to the Western District of Louisiana ("Louisiana"), Cuff moved the lower court to determine that his was a "complex case," which motion the lower court granted. The subsequent litigation spans over a decade, occurred before two United States District Courts in this Circuit, a direct appeal to this Court, certiorari to the United States Supreme Court, as well as iterations of postconviction collateral litigation.

The certificate of appealability authorized appeals involving the Fifth and Sixth Amendments, Supreme Court precedent, Fifth Circuit and sister Circuit decisions, breach of a non-prosecution clause within a plea agreement, ineffective assistance of counsel, questions of the Government's obligation to be transparent and forthcoming when negotiating the terms and conditions of a plea agreement,

whether the Louisiana plea agreement bound Texas not to prosecute Cuff for the same conduct introduced during Louisiana sentencing and on which the lower court assessed a 5-point enhancement to adjudge life imprisonment, questions of procedural default in the context of a 28 U.S.C. § 2255 motion, whether the plea of guilty was constitutional, that is, knowing and voluntary, and whether Cuff demonstrated "cause" and "prejudice" such that the lower erred in not reaching the merits of his constitutional plea breach claim.

In 2011, medical and scientific evidence began to unfold revealing that the anti-malarial drug Lariam, (name brand mefloquine), which the Navy ordered Cuff to take at various points throughout his 28-year active-duty career, not only caused long term psychotic effects and persecutorial hallucinations, but also that the drug caused brain lesions. Declared incompetent shortly after sentencing, Cuff's psychological and physical health has declined dramatically over the years, and his medical prognosis is bleak.

These discrete issues coalesced resulting in the Government's deprivation of Cuff's Due Process and effective assistance of counsel constitutional guarantees, which further rendered his guilty plea neither knowing nor intelligent, such that the appropriate remedy, pursuant to Supreme Court precedent and Fifth Circuit caselaw, is to reverse, remand, and vacate it.

This is especially so where Cuff sought to withdraw his guilty plea upon unfolding medical and scientific evidence that he was laboring not only under long term psychotic effects, but also organic damage in the form of brain lesions as a result of his having been ordered by the United States Navy to take mefloquine, such that United States Department of Justice, Bureau of Prisons ("BOP") medical personnel have declared him incompetent.

# TABLE OF CONTENTS

CERTIFICATE OF INTERESTED PERSONS ........................................................i

STATEMENT REGARDING ORAL ARGUMENT ............................................ ii

TABLE OF CONTENTS ........................................................................................v

TABLE OF AUTHORITIES ................................................................................vi

SUBJECT MATTER AND APPELLATE JURISDICTION ...................................1

STATEMENT OF ISSUES PRESENTED FOR REVIEW .....................................1

STATEMENT OF THE CASE ...............................................................................2

SUMMARY OF THE ARGUMENTS ...................................................................11

ARGUMENTS .....................................................................................................12

CONCLUSION .....................................................................................................53

CERTIFICATE OF SERVICE .............................................................................55

CERTIFICATE OF COMPLIANCE .....................................................................56

# TABLE OF AUTHORITIES

**The Constitution for the United States of America**

U.S. Const. amend. V ....................................................................11,13,14,34,52,53

U.S. Const. amend VI ................................................ 11,12,3132,34,38,42,49,53,54

**United States Supreme Court**

*Bannister v. Davis,* 2020 WL 2814300 (June 1, 2020) ...........................................11

*Berger v. United States*, 295 U.S. 78 (1935) ...........................................................27

*Blackledge v. Allison*, 431 U.S. 63 (1977)...............................................................31

*Bousley v. United States*, 523 U.S. 614 (1998)........................................................31

*Boykin* v. *Alabama*, 395 U.S. 238 (1969) .................................................................31

*Brady v. United States*, 397 U.S. 742 (1970)............................................................31

*Giglio v. United States*, 405 U.S. 150 (1972) ...........................................20,21,23,25

*Johnson v. Zerbst*, 304 U.S. 458 (1938) ..................................................................31

*Mabry v. Johnson*, 467 U.S. 504 (1984)...................................................................14

*Massaro v. United States*, 538 U.S. 500 (2003) ................................................. 47-48

*Murray v. Carrier,* 477 U.S. 478 (1986) ..................................................................50

*North Carolina v. Alford*, 400 U.S. 25 (1970)..........................................................31

*Santobello v. New York*, 404 U.S. 257 (1971) ...........................................13,15,17,41

*Strickland v. Washington*, 466 U.S. 668 (1984) ............... 1,30,31,32,37,40,49,50,54

*United States v. Bagley*, 475 U.S. 667 (1985) ..........................................................27

## U.S. Court of Appeals for the Fifth Circuit

*Bower v. Quarterman*, 497 F.3d 459 (5th Cir. 2007) ...............................................31

*Cooks v. United States,* 461 F.2d 530 (5th Cir. 1972) ...................................36,38,41

*Diaz v. Martin*, 718 F.2d 1372, 1378 (5th Cir. 1983)..............................................32

*Druery v. Thaler*, 647 F.3d 535 (5th Cir. 2011) ......................................................31

*Geisser v. United States*, 513 F.2d 862 (5th Cir. 1975)...........................................27

*Great Plains Equip., Inc. v. Koch Gathering Sys., Inc.*,
   45 F.3d 962 (5th Cir. 1995) ................................................................52

*Herring v. Estelle*, 491 F.2d 125 (5th Cir. 1974)....................................................32

*Humphrey v. Lynaugh*, 861 F.2d 875 (5th Cir. 1988)..............................................13

*Johnson v. Puckett*, 176 F.3d 809 (5th Cir. 1999) ...................................................51

*Morris v. Dretke*, 413 F.3d 484 (5th Cir. 2005).......................................................41

*Romero v. Collins,* 961 F.2d 1181 (5th Cir. 1992) ..................................................50

*Theriot v. Parish of Jefferson*, 185 F.3d 477 (5th Cir. 1999) .................................52

*Trahan v. Estelle*, 544 F.2d 1305 (5th Cir. 1977)....................................................32

*United States v. Allen*, 918 F.3d 457 (5th Cir. 2019)...............................45,46,50,51

*United States v. Asset*, 990 F.2d 208 (5th Cir. 1993)...............................................20

*United States v. Borders*, 992 F.2d 563 (5th Cir. 1993) ..........................................43

*United States v. Casiano*, 929 F.2d 1046 (5th Cir. 1991).........................................42

*United States v. Castaneda*, 162 F.3d 832 (5th Cir. 1998)................................ 13-14

*United States v. Cates*, 952 F.2d 149 (5th Cir. 1992) ..............................................43,44

*United States v. Cavitt*, 559 F.3d 430 (5th Cir. 2008) ...........................................53

*United States v. Ceron*, 775 F.3d 222 (5th Cir. 2014) ...........................................52

*United States v. Edwards*, 442, F.3d 258 (5th Cir. 2006)........................................12

*United States v. Elashyi*, 554 F.3d 480 (5th Cir. 2008) .....................................14,24

*United States v. Escobedo*, 757 F.3d 229 (5th Cir. 2014) .......................................16

*United States v. Gaudet*, 81 F.3d 585 (5th Cir. 1996) ...........................................49

*United States v. Goldfaden*, 959 F.2d 1324 (5th Cir. 1992) ....................................15

*United States v. Guerra*, 1996 U.S. App. LEXIS 24982 (5th Cir. 1996)...............50

*United States v. Harper*, 901 F.2d 471 (5th Cir. 1990) ..........................................43

*United States v. Harper*, 643 F.3d 135 (5th Cir. 2011) ..........................................14

*United States v. Kinsey,* 917 F.2d 181 5th Cir. 1990) ............................................32

*United States v. McDaniels*, 907 F.3d 366 (5th Cir. 2018) .....................................13

*United States v. Palomo*, 998 F.2d 253 (5th Cir. 1993).........................................12

*United States v. Patten*, 40 F.3d 774 (5th Cir. 1994)..............................................49

*United States v. Pierce*, 959 F.2d 1297 (5th Cir. 1992).........................................49

*United States v. Reed*, 719 F.3d 369 (5th Cir. 2013) ..............................................12

*United States v. Rumery*, 698 F.2d 764 (5th Cir. 1983)..........................34,35,36,41

*United States v. Segler*, 37 F.3d 113 (5th Cir. 1994)..............................................42

*United States v. Valencia*, 985 F.2d 758 (5th Cir. 1993)........................................19

*United States v. Vaughn*, 955 F.2d 367 (5th Cir. 1992)..........................................42

*United States v. Watson*, 988 F.2d 544 (5th Cir. 1993) ...........................................14

**Other U.S. Circuit Courts of Appeal**

*Correale v. United States*, 479 F.2d 944 (1st Cir. 1973).........................................28

*United States v. Gebbie*, 294 F.3d 540 (3d Cir. 2002)............................................25

*Guinan v. United States*, 6 F.3d 468 (7th Cir. 1993).........................................46,47

*Margalli-Olvera v. INS*, 43 F.3d 345 (8th Cir. 1994)..............................................14

*Ooley v. Schwitzer Div., Household Mfg. Inc.,*
   961 F.2d 1293 (7th Cir. 1992) ..........................................................................14

*Palermo v. Warden*, 545 F.2d 286 (2d Cir. 1976) ...................................................27

*United States v. Annabi*, 771 F.2d 670 (2d Cir. 1985)............................................26

*United States v. Caceres*, 745 F.2d 935 (5th Cir. 1984)..........................................42

*United States v. Carter*, 454 F.2d 426 (4th Cir. 1972) ...................................22,23,25

*United States v. Harvey*, 791 F.2d 294 (4th Cir. 1986) ..................................22,23,25

*United States v. Robison*, 924 F.2d 612 (6th Cir. 1991).........................................26

*United States v. Rourke*, 74 F.3d 802 n.5 (7th Cir. 1996) ......................................26

*United States v. Taylor*, 77 F.3d 368 (11th Cir. 1996) ...................................... 53-54

*United States v. Thomas*, 580 F.2d 1036 (10th Cir. 1978) ......................................25

*United States v. Van Thournout*, 100 F.3d 590 (8th Cir. 1996)...............................25

*United States v. Verrusio*, 803 F.2d 885 (7th Cir. 1986)........................................14

*United States v. Walling*, 982 F.2d 447 (10th Cir. 1992) .................................. 49-50

## United States District Courts

*Little v. United States*, 2010 U.S. Dist. LEXIS 110461
(S.D. Ohio Oct. 7, 2010) ........................................................................25

*United States v. Hartwell,* 302 F.Supp.2d 609 (E.D. Va. 2004) ........................24,25

*United States v. Olis*, 2008 U.S. Dist. LEXIS 94947,
2008 WL 5046342 (S.D. Tx. 2008) ........................................................51

## Statutes

18 U.S.C. § 2252(A) ........................................................................2,3

28 U.S.C. § 2253 ........................................................................1

28 U.S.C. § 2255 ........................................................................*passim*

## United States Sentencing Guidelines

U.S.S.G. § 4B1.5(b)(1) ........................................................................6

## Rules

Fed. R. Evid. 201(c)(2) ........................................................................23

Fed. R. Crim. P. 11........................................................................39

Fed. R. App. P. 32........................................................................56

## Other Sources

J. Calamari & J. Perillo, *The Law of Contracts* § I (2d ed. 1977) ........................15

## SUBJECT MATTER AND APPELLATE JURISDICTION

This Court possesses jurisdiction pursuant to 28 U.S.C. § 2253 ("In a habeas corpus proceeding under section 2255 before a district judge, the final order shall be subject to review, on appeal, by the court of appeals for the circuit in which the proceeding is had.").

## STATEMENT OF ISSUES PRESENTED FOR REVIEW

1.    This Court Should Vacate Cuff's Guilty Plea Because the Government Breached the Non-Prosecution Clause of the Louisiana Plea Agreement When After Sentencing, the Government Nevertheless Prosecuted Cuff in Texas for the Next 2.5 Years for the Very Same Conduct Used in Louisiana to Secure a 5-Point Sentence Enhancement to Life Imprisonment.

2.    This Court Should Vacate Cuff's Guilty Plea Because the Government's Promise Not to Prosecute for ***Any Other Offense Known*** in Exchange for Cuff's Louisiana Guilty Plea, Coupled with the Government's Sealing of the Texas Indictment and Concealing of its Intent to Prosecute in Texas Until After Proceedings in Louisiana Concluded, Violated Due Process and Deprived Defense Counsel of Essential Information to Comply with *Strickland* and Ensure that Cuff's Guilty Plea in Louisiana Was Knowing and Intelligent.

3.    This Court Should Vacate Cuff's Guilty Plea Because the Lower Court Erred by Finding Cuff Procedurally Defaulted his Section 2255 Breach of

Plea Agreement Claim, Where the Breach Occurred After Sentencing and Cuff Showed "Cause" and "Prejudice?"

## STATEMENT OF THE CASE

### I.    Facts and Proceedings Below.

Cuff is a 28-year veteran of the United States Navy serving life imprisonment. Having signed a plea agreement in Louisiana in 2011 to the first of a three-count, second superseding Indictment which resulted from an AG-coordinated multi-district, multi-agency investigation into "Dreamboard," a child-pornography website, BOP determined him incompetent shortly after sentencing in 2012, which prompted Texas Assistant U.S. Attorneys (AUSAs) to move to dismiss an Indictment in that district in 2015 which involved the very same conduct Louisiana introduced and the sentencing court used to assess a 5-point enhancement occasioning a life sentence.

### A.    The Offense.

On August 10, 2011, a Federal grand jury sitting in Louisiana returned a Second Superseding Indictment alleging Cuff violated three sections of 18 U.S.C. § 2252(A).

Count I alleged engaging in a child exploitation enterprise in violation of 18 U.S.C. § 2252(A)(g).

Count II alleged conspiracy to advertise the distribution of child pornography in violation of 18 U.S.C. §§ 2252A(d)(1) and (e).

Count III alleged conspiracy to distribute child pornography in violation of 18 U.S.C. §§ 2252A(a)(2)(A) and (b)(1).

### B.     The Plea Agreement, the Sealed Texas Indictment, and Concealment of Intent to Prosecute in Texas After Sentencing in Louisiana.

On August 29, 2011, Stephen P. Karns, Esquire ("Karns") an attorney practicing in Texas, appeared as counsel for Cuff. Cuff made his initial appearance on September 1, 2011, and entered a plea of not guilty.

On that date, Assistant United States Attorney John Luke Walker ("AUSA Walker") informed Karns that the Government intended to introduce during sentencing videotape evidence of Cuff and a minor child engaged in sexual acts obtained in Texas where Cuff lived at the time of his arrest. Subsequently, AUSA Walker and his colleague in Texas, AUSA Brandy Gardes, informed Karnes that the Government sought to avoid calling the Texas victim, but still address Cuff's misconduct as part of its Louisiana prosecution.

Twenty-seven days after arraignment, on September 27, 2011, Karns advised Cuff to plead guilty on the assumption that the probable sentence for Count I would be 20 – 25 years confinement in exchange for dismissal of the remaining two counts and the Government's promise not to prosecute Cuff for any

offenses known by the Government as a result of its investigation to date. Cuff signed the plea agreement on the same date.

Specifically, the plea agreement stated the Government would "not prosecute [Cuff] for any other offense known to the United States Attorney's Office, based on the investigation which forms the basis of the Second Superseding Indictment."

But, consistent with AUSA Walker's and AUSA Gardes's representations to Karns, the Government sought to use the Texas video evidence during sentencing in the Louisianacase. "[A]s part of the presentencing investigation the Government will make available to the Court all evidence developed in the investigation thus far." *Id.*

Based upon his communications with both AUSAs in both districts, Karns came away with the understanding that no prosecution in Texas would proceed once the Government introduced the Texas evidence in the Louisiana sentencing case.

On December 1, 2011, the lower court accepted Cuff's plea agreement, ordered a Pre-Sentence Investigation, and set the matter for sentencing.

Two weeks later, on December 14, 2011, unbeknownst to Karns or Cuff, Texas moved to seal an Indictment of Cuff for sexual abuse of a minor containing

the precise information the Government intended to use in the Louisiana sentencing case.

In the motion to seal, the Government misinformed the Texas district judge that "disclosure of the existence of the Indictment would seriously jeopardize the ability of law enforcement officers to locate the Defendant and apprehend him without incident."

Cuff had been in Federal custody in Louisiana since his July 2011 arrest in Texas – six months before the Government moved to seal the Texas Indictment, and the AUSAs in Louisiana and Texas knew that.[1]

Although the Government drafted the non-prosecution clause and a clause to use the information adduced in Texas during the Louisiana case, the Government nevertheless urged the Texas court to seal Cuff's Indictment on a basis that was factually incorrect.

### C. Motion to Withdraw the Guilty Plea Based on Undisputed Evidence of Compromised *Mens Rea* and Incompetence Due to Insanity and Involuntary Mefloquine Poisoning.

---

[1] Cuff was taken into federal custody on the Federal charges out of the Western District of Louisiana in El Paso, Texas, in the Western District of Texas. Accordingly, there was a case opened in the Western District of Texas dealing with Cuff's extradition to Louisiana. *See United States v. Robert E. Cuff*, No. 3:11-mj-03630-RFC. Further, AUSA Gardes represented the United States in Cuff's extradition. AUSA Gardes also is counsel of record in Cuff's pending prosecution in the Western District of Texas, making the assertion that the indictment must be sealed pending the location and apprehension of Cuff all the more irresponsible and probative of Louisiana and Texas working together.

The Louisiana Pre-Sentence Report ("PSR") reflected a total offense level of 43 with a five-point enhancement pursuant to U.S.S.G. § 4B1.5(b)(1) because Cuff "engaged in a pattern of activity involving prohibited sexual conduct," namely, the conduct contained on the Texas video evidence the Government sought to introduce during sentencing in Louisiana. ROA.1004.

On July 13, 2012, the lower court denied Cuff's motion to withdraw his plea of guilty. His motion was based mostly on undisputed medical evidence, to include the nation's premier expert on mefloquine, Dr. Remington Nevin, demonstrating that Cuff was laboring under both long-term psychotic effects and actual destruction of his brain tissue due to the Navy's having ordered him to take mefloquine.

Mefloquine's label, written by manufacturer Hoffmann-La Roche and approved by the Food and Drug Administration ("FDA"), included increasingly troublesome side effects, and warned about aggression, paranoia, psychosis, hallucinations, and suicidal thinking. Other side effects now include persecutorial delusions, hallucinations, psychosis, ***sexual inhibitions***, homicidal and suicidal ideation, depersonalization, serious neuropsychiatric effects, neurotoxicity, and destruction of brainstem tissue.

In April 2012, Roche issued a "medically confirmed" report that an unnamed U.S. soldier "was treated with Mefloquine Hydrochloride . . . and led to Homicide killing of 17."

In July 2013, the FDA issued a "Black Box Warning" describing the potential adverse effects of mefloquine.

On July 29, 2013, the FDA-issued a Drug Safety Communication advising the public about "strengthened and updated warnings regarding neurologic and psychiatric side-effects associated with the antimalarial drug mefloquine."

On September 13, 2013, U.S. Special Operations Command issued an order to all units to stop administering mefloquine to personnel given the scientific discoveries of psychosis, brain lesions, *sexual inhibitions*, and behavioral problems.

Alarmed that Karns recommended the plea agreement less than 30 days after Cuff retained him without sufficient investigation into *mens rea*, insanity, or involuntary mefloquine intoxication, Cuff retained Eric Schweitzer, Esquire ("Schweitzer") to withdraw the plea and continue investigation into these defenses. Even though Schweitzer offered unchallenged affidavits of recognized mefloquine experts who had examined Cuff, and called one expert to the stand, the lower court refused to release Karns, refused to hear from the medical expert on the stand, discounted the unchallenged medical affidavits, denied a defense continuance,

denied the motion to withdraw the plea, assessed a 5-level enhancement based on the Texas video evidence, and sentenced Cuff to life imprisonment.

Based on communications with AUSAs in Louisiana and Texas, the non-prosecution clause of the plea agreement, and the Government's use of the Texas evidence during sentencing in Louisiana, Schweitzer, Karns, and Cuff understood the Government's prosecution of Cuff concluded.

**D.    After the Louisiana Sentencing, Texas Prosecuted the Same Conduct Used to Secure a Life Sentence in Louisiana, Which Breached the Non-Prosecution Clause Justifying Vacating the Guilty Plea.**

Between the time the lower court accepted the plea agreement (December 1, 2011) and actual sentencing, (July 13, 2012), the NCIS coordinated with Texas AUSA Daniel Crumby, who related to NCIS that a sealed indictment had been returned in Texas, and that "*the indictment will remain sealed until Cuff's [] sentencing and that neither Cuff nor his family is aware of the second indictment*." (Emphasis added).

On August 29, 2012, the next month after Cuff's July 2012 sentencing in Louisiana, Federal authorities arrested Cuff at his place of confinement in Louisiana to prosecute the Texas Indictment.

Returning to the Louisiana PSR for the moment, the report incorrectly informed the sentencing Court, Cuff, Schweitzer, and Karns, that "presently [before Cuff's Louisiana sentencing] no charges are pending against the defendant

as a result of this [Texas] behavior." ROA.1002. This was a patent lie. The U.S. Probation and Parole office misstated that at that very moment, an Indictment focusing on the same evidence presented during sentencing in Louisiana was pending in Texas.

No AUSA took corrective action to inform the defense or the sentencing court that the Government intended to proceed with the Texas Indictment upon conclusion of the Louisiana proceedings. The canon of candor compelled the AUSAs to correct the misstatement by disclosing that an Indictment was pending in Texas, and that the Government intended to prosecute it upon conclusion of the Louisiana proceedings. This canon went unobserved through Government silence.

Instead, the Government allowed the incorrect representation to stand. Indeed, had the Government advised the defense and the sentencing court that the Government planned to prosecute in Texas, the 5-point enhancement may not have been levied in Louisiana for the very same conduct to be prosecuted in Texas. And, defense counsel's tactical decisions, as Karns swore in his declaration, would have been dramatically different.

In any event, from August 29, 2012, to February 18, 2015, approximately 2.5 years, Government officials prosecuted Cuff in Texas based on the information used to secure the 5-point sentencing enhancement in Louisiana, notwithstanding the non-prosecution clause in the Louisiana plea agreement.

Upon direct appeal, Cuff's new counsel were aware of the Texas prosecution. They determined, however, not to pursue the breach of plea agreement claim given this Circuit's caselaw holding that matters not raised before the trial court are not appropriate for appeal, that is, no record below existed on this question for the court of appeals to review.

Only when BOP medical personnel determined Cuff incompetent, (indicated 2.5 years earlier during the hearing on Cuff's motion to withdraw his guilty plea before sentencing), did the Government move to dismiss the Texas Indictment. The Texas court dismissed the case on February 18, 2015.

### E.    Direct Appeal and Collateral Proceedings.

On August 30, 2013, this Court denied Cuff's direct appeals, and on December 13, 2012, the United States Supreme Court denied his Petition for a Writ of Certiorari.

Cuff proceeded on December 6, 2014, with a 28 U.S.C. § 2255 motion and sought recusal of the sentencing judge. On March 12, 2018, the lower court denied both motions as well as Cuff's request for a certificate of appealability ("COA").

On April 9, 2018, Cuff filed to alter the judgment that denied his Section 2255 motion, which the lower court denied four days later, on April 12, 2018.

On June 1, 2018, Cuff timely filed a Notice of Appeal to this Court, which this Court denied on May 10, 2019. Cuff sought reconsideration of this Court's

denial, and this Court granted the unopposed motion to stay reconsideration pending the opinion of the Supreme Court in 18-6943, *Bannister v. Davis*.

On July 28, 2021, this Court granted a certificate of appealability for the issues presented herein.

## SUMMARY OF THE ARGUMENTS

There is no excuse for the Justice Department to break its Due Process promises and act in deliberate secrecy to gain tactical advantages – especially where conduct discovered in Texas was used, per the plea agreement, to secure a 5-point sentence enhancement in Louisiana, and then, the very same conduct was prosecuted for 2.5 years in Texas, thereby breaching the non-prosecution clause of the plea agreement justifying this Court's vacating the guilty plea.

The Government's concealing of the Texas Indictment prevented defense counsel from fully informing Cuff of the full penalty exposure, such that his Louisiana guilty plea cannot satisfy the constitutional requirements of knowing and intelligent. At the same time, the Government's concealing of its intent to prosecute fully in Texas after sentencing in Louisiana denied Cuff fundamental Due Process under the Fifth Amendment and violated his Sixth Amendment right to effective assistance of counsel justifying this Court's vacating the guilty plea.

The lower court erred when it determined Cuff procedurally defaulted his constitutional breach of plea agreement claim. The Government did not disclose its

11

intent to proceed in Texas at or during sentencing, and the timing of the Texas prosecution, after sentencing in Louisiana, proves the material breach of the plea agreement demonstrating this Court should vacate the plea.

That the Government never disclosed its intent to continue prosecuting in Texas and did so only after securing the guilty plea and life sentence in Louisiana, proves not only that Cuff properly brought the issue in the first instance as part of his Section 2255 motion below, but also that he had "cause" and "prejudice" demonstrating that the lower court erred in finding procedural default.

## ARGUMENTS

I.    **The Government Violated Cuff's Constitutional Due Process Rights Because It Breached the Non-Prosecution Clause in His Louisiana Plea Agreement, and, in the Process, Violated Cuff's Sixth Amendment Right to Effective Assistance of Counsel by Concealing a Sealed Indictment and Intent to Prosecute in Texas, Preventing Defense Counsel from Fulfilling his Duty to Ensure the Guilty Plea was Knowing and Voluntary.**

A.    **Standards of Review.**

This Court reviews a district court's denial of § 2255 relief *de novo*. Whether the Government failed to fulfill its plea agreement duties "is a question of law," *United States v. Palomo*, 998 F.2d 253, 256 (5th Cir. 1993), and the Court reviews denial of a Section 2255 evidentiary hearing for an abuse of discretion. *See United States v. Reed*, 719 F.3d 369, 373 (5th Cir. 2013) (citing *United States v. Edwards*, 442, F.3d 258, 264 (5th Cir. 2006)). This Court reviews the lower court's

factual findings to determine if they were "clearly erroneous." *Humphrey v. Lynaugh*, 861 F.2d 875, 876 (5th Cir. 1988).

### B. The Government Breached the Louisiana Plea Agreement When After Sentencing, it Prosecuted Cuff in Texas for 2.5 Years for the Same Conduct Used in Louisiana to Secure a 5-Point Enhancement, Justifying this Court's Vacating the Guilty Plea.

The Supreme Court explained that the "disposition of criminal charges by agreement between the prosecutor and the accused . . . is an essential component of the administration of justice" and that the bargaining process "presupposes fairness" on the part of the prosecution. *Santobello v. New York*, 404 U.S. 257, 260-61 (1971).

Since *Santobello*, it is black letter law that if a guilty plea "rests in any significant degree on a promise or agreement of the prosecutor, so that it can be said to be a part of the inducement or consideration, such promise must be fulfilled." 404 U.S. at 262.

This Circuit follows *Santobello*. In *United States v. McDaniels*, 907 F.3d 366, 370 (5th Cir. 2018), this Court reaffirmed that "[w]here a defendant pleads guilty based on a promise by the prosecutor, 'breach of that promise taints the voluntariness of his plea' and offends the Fifth Amendment."

> Nonprosecution agreements, like plea bargains, are contractual in nature, and are therefore interpreted in accordance with general principles of contract law. Under these principles, if a defendant lives up to his end

13

> of the bargain, the government is bound to perform its
> promises.

*United States v. Castaneda*, 162 F.3d 832, 835-36 (5th Cir. 1998).

Plea agreements are "strictly construed against the Government as drafter." *United States v. Elashyi*, 554 F.3d 480, 501 (5th Cir. 2008). "We construe a plea agreement like a contract, seeking to determine the defendant's 'reasonable understanding' of the agreement and construing ambiguity against the Government." A contractual provision is ambiguous if it is subject to more than one reasonable interpretation. *Ooley v. Schwitzer Div., Household Mfg. Inc.,* 961 F.2d 1293, 1298 (7th Cir. 1992).

The "Government must strictly adhere to the terms and conditions of its promises in a plea agreement." *United States v. Harper*, 643 F.3d 135, 139 (5th Cir. 2011). The Fifth Amendment's due process clause is the source of the defendant's constitutional rights implied in plea agreements. *Mabry v. Johnson*, 467 U.S. 504, 507-08 (1984); *United States v. Verrusio*, 803 F.2d 885, 888 (7th Cir. 1986). "Allowing the Government to breach a promise that induced a guilty plea violates due process." *Margalli-Olvera v. INS*, 43 F.3d 345, 351 (8th Cir. 1994). This Court uses a preponderance of the evidence standard to determine if a defendant met his burden to prove breach of plea agreement. *United States v. Watson*, 988 F.2d 544, 548 (5th Cir. 1993).

14

A defendant ordinarily has two remedies for the Government's breach of a plea agreement, one of which is to allow the defendant to "withdraw his plea agreement," and the other is specific performance. *Santobello*, 404 U.S. at 263; *see also* J. Calamari & J. Perillo, *The Law of Contracts* § I 1- 22, at 407 (2d ed. 1977) ("If the breach is material ... [and] the breaching party's performance is a constructive condition to the aggrieved party's duty of performance the latter may also treat the material breach as a failure of condition. In other words, he has the power to cancel the contract.") (Footnote omitted).

"[T]he failure of the Government to fulfill its promise . . . affects the fairness, integrity, and public reputation of judicial proceedings . . . *United States v. Goldfaden*, 959 F.2d 1324, 1327 (5th Cir. 1992). When a court vacates a plea agreement, it is the functional equivalent of the traditional contract remedy of rescission. *Santobello*, 404 U.S. at 268 (Marshall, J., concurring in part and dissenting in part) (calling vacating a plea "rescinding the plea").

Here, in exchange for pleading guilty to Count I of the Second Superseding Indictment, the Government promised:

> [T]o dismiss the remaining counts of the superseding indictment after sentencing and not prosecute him for any other offense known to the United States Attorney's Office, based on investigation which forms the basis of the Second Superseding Indictment.

ROA.976 – 977.

15

Application of contract interpretation principles reveals that ending other prosecutions, to include any of those arising from the Texas investigation, was a material term and contractual consideration for Cuff to offer his plea, which he did. And, to the extent the terms are ambiguous, this Court construes the ambiguity against the Government and for Cuff's. *United States v. Escobedo*, 757 F.3d 229, 230 (5th Cir. 2014) (reverse and remand "[b]ecause an ambiguous plea agreement must be reasonably construed in favor of the defendant.").

Cuff fully performed. The Government partially performed its contractual duties when it moved to dismiss Counts II and III. However, the Government's performance only went so far.

Karns understood the agreement to mean the Louisiana prosecution would be the exclusive case against Cuff, and that no other charges would proceed in Texas in exchange for Cuff's guilty plea in Louisiana. As Karns explained:

> At the time Cuff and I executed the Plea Agreement, it was my belief that the Government would not be pursuing charges against him in Texas based on the contents of the videos. My conversations with both AUSA Walker [Louisiana] and AUSA Gardes [Texas], in conjunction with the non-prosecution clause in the Plea Agreement, supported that belief. I conveyed this information and my belief that he would not be prosecuted in state or federal court in Texas to Cuff. I utilized this information to advise Cuff that he should accept the Plea Agreement.

16

After Cuff pled guilty, Karns and Cuff expected that the case in Texas would come to a halt. Given that the Government must strictly adhere to its material promises in plea agreements, their proceeding with the Texas prosecution after Cuff's guilty plea and sentence in Louisiana is a material breach authorizing this Court to vacate the guilty plea. *Santobello*, 404 U.S. at 263.

What is more, had the Government been forthcoming about its intent to pursue the prosecution in Texas after proceedings concluded in Louisiana, Karns's advice to Cuff would have changed.

> Had the Government informed of its intent to pursue charges in the Western District of Texas, I would not have allowed Cuff's guilty plea to go forward on December 1, 201[1]. I would have advised Cuff not to plead guilty until I had the opportunity to address any potential federal charges in the Western District of Texas and advise him accordingly.

ROA.

Consequently, the Government's withholding of its goal to proceed in Texas, notwithstanding Karns's direct communications with both Louisiana and Texas AUSAs leaving him with the contrary belief, deprived Karns of essential knowledge to ensure that Cuff's plea in Louisiana was knowing and intelligent.

> Based on my conversations with AUSA Walker [Louisiana] and AUSA Gardes [Texas] and based on the non-prosecution clause in the Plea Agreement, I had no reason to inquire further about any potential federal prosecution in Texas before Cuff entered his guilty plea on December 1, 201[1]. Had the non-prosecution clause

in the Plea Agreement been specific to the United States Attorney's Office in the Western District of Louisiana, I would have made further inquiries into potential federal charges in Texas in order to properly advise Cuff.

\* \* \* \* \*

The manner that the [Texas] Indictment was obtained, and the timing in which the Indictment was obtained, prevented me from fully advising Cuff and prevented him from making a voluntary, knowing, and intelligent plea under these circumstances. Had I learned that the Government in the Western District of Texas had indicted Cuff before his sentencing hearing, I would have moved the Court to vacate the guilty plea and moved the Court to allow Cuff to withdraw his guilty plea based on the Government's breach of the Plea Agreement, and because Cuff's plea would not have been made knowingly, voluntarily, and intelligently. I believe the appropriate remedy is to vacate Cuff's guilty plea.

*Id*.

Based on the Government's representations in two districts, discussions with Karns, the non-prosecution clause, and upon the Government's silence relating to its object to proceed in Texas, Karns was not able to fully advise Cuff in Louisiana.

Further demonstrating Government breach is paragraph seven under the caption "Sentencing." There, the Government inserted, "as part of the presentence investigation the Government will make available to the Court all evidence developed in the investigation of this case[.]"

This language tracks the intent the AUSAs expressed to Karns to use the Texas video during sentencing in Louisiana. As Karns declared, "AUSA Walker

informed me of the existence of child pornographic videos produced by Cuff in the Western District of Texas."

Accordingly, the Texas offenses were undoubtedly known to the Government based on the investigation and were used against Cuff in Louisiana. That the Texas prosecution nevertheless proceeded, must be not only a breach, but also a knowing and willful breach. As Karns further declared:

> It is my opinion that the Government breached the plea agreement with Cuff. The Government agreed not to prosecute Cuff for any offense it knew about based on the investigation that formed the basis of the Second Superseding Indictment. AUSA Walker told me about the videos when I appeared for the arraignment on September 1, 2011, and we discussed the impact the videos would have on sentencing proceedings in the Western District of Louisiana.

Record Excerpt

This sworn evidence shows not only a deliberate Government tactical decision to withhold this information from Cuff and his counsel while they litigated the case in Louisiana, but also that the Government intended to breach the non-prosecution agreement all along.

The Government's conduct is not consistent with Cuff's reasonable understanding of the agreement, and is thus, a material breach justifying vacating the guilty plea. *United States v. Valencia*, 985 F.2d 758, 761 (5th Cir. 1993) (finding Government breach – whether the Government's conduct is consistent

with defendant's reasonable expectations); *United States v. Asset*, 990 F.2d 208, 216 (5th Cir. 1993) ("The government is not permitted to breach its part of a plea agreement in such a way that frustrates the defendant's reasonable expectations under the plea agreement.").

Accordingly, application of contract interpretation principles – the plain language of the agreement, the defendant's reasonable expectations, and the rule to construe ambiguities against the Government leads to the conclusion that Cuff would not have pled guilty but for the Government's dropping the Texas Indictment and/or any other prosecutions based on information known to the Government gathered during the investigation leading to the Second Superseding Indictment in Louisiana.

Yet, the Government defended its breach in the Section 2255 motion below claiming that the plea agreement applied only to Louisiana. ROA.385. The position is against the weight of authority for at least four reasons.

First, in *Giglio v. United States*, 405 U.S. 150, 154 (1972), the Supreme Court said that "[t]he prosecutor's office is an entity and as such it is the spokesman for the Government. A promise made by one attorney must be attributed, for these purposes, to the Government." This reasoning is a clear and definitive statement on the agency status of U.S. Attorneys with respect to the Attorney General's office, the Government, and each other.

The plea agreement, drafted by the Government, uses the term "Government" no fewer than 12 times. The plea agreement uses the phrase "United States" three times. ROA.977 – 980.

Application of *Giglio, supra,* as well as interpreting the plain meaning of the language used and Cuff's reasonable interpretation and expectation, the AG's public remarks about the multi-district investigations prove that Louisiana's promises to Cuff bound Texas not to prosecute him.

> Today I'm pleased to be joined by several key leaders in the federal government's fight to protect the most vulnerable among us – our children – from exploitation, violence, and sexual abuse: Secretary of Homeland Security, Janet Napolitano; Assistant Attorney General for the Criminal Division, Lanny Breuer; United States Attorney for the Western District of Louisiana, Stephanie Finley; and Director of U.S. Immigration and Customs Enforcement, John Morton.

Press Release, Attorney General Eric Holder Announces Results of International Child Pornography Investigation at Operation Delego Press Conference (August 3, 2011), available at https://www.justice.gov/opa last viewed January 2, 2022.

That senior officials in Washington D.C. coordinated the multi-district investigation involving various Federal agencies and departments demonstrates that Louisiana's plea agreement served as "spokesman" for the Government as a whole, not just Louisiana. Indeed, Karns interpreted the agreement to apply to Texas.

> Had the non-prosecution clause in the Plea Agreement been specific to the United States Attorney's Office in

21

the Western District of Louisiana, I would have made further inquiries into potential federal charges in Texas in order to properly advise Cuff.

Record Excerpt

Additionally, the Fourth Circuit's caselaw suggests breach here. In *United States v. Carter*, 454 F.2d 426, 427 (4th Cir. 1972), the defendant asserted that he was immune from prosecution in the Eastern District of Virginia based on a promise made in exchange for his cooperation in the District of Columbia. The Fourth Circuit agreed, holding that the Government should be held to the terms of its promise, notwithstanding the fact that the Virginia district court had not even known of the promise. *Carter*, 454 F.2d at 428. The Court stated:

> The United States government is the United States government throughout all of the states and districts. If the United States government in the District of Columbia, acting through one of its apparently authorized agents, promised that the sole prosecution against defendant would be the misdemeanor charge in that jurisdiction, and defendant relied on the promise to his prejudice[,] . . . . we will not permit the United States government in the Eastern District of Virginia to breach the promise.

454 F.2d at 428.

Following the reasoning in *Carter*, Louisiana, acting as agent of the Government, promised that no prosecution would proceed against Cuff based on the investigation leading to his Louisiana conviction. The Fourth Circuit reaffirmed *Carter* with its decision in *Harvey*, 791 F.2d at 302-03 explaining:

22

> [T]hough the Government negotiates its plea agreements through the agency of specific United States Attorneys - as necessarily it must - the agreements reached are those of the Government. It is the Government at large - not just specific United States Attorneys or United States "Districts" - that is bound by plea agreements negotiated by agents of Government.

*Id.*

The AG and the Secretary of Homeland Security made public statements concerning this multi-district prosecution in 2011, removing any doubt that the terms used in Cuff's agreement had broader application to districts beyond Louisiana. *See, e.g.*, "Living horror:" Dozens charged in international child porn ring (nbcnews.com) (Attorney General Eric Holder and Homeland Security Secretary Janet Napolitano announced details of the year-long investigation, dubbed Operation Delego).[2] *Giglio, Carter*, and *Harvey*, *supra*, inform that Texas had no authority to prosecute Cuff.

Second, the plea agreement contains no language limiting its applicability to Louisiana only. The AUSAs in Texas were assuredly aware of the non-prosecution terms in Cuff's Louisiana plea agreement and did nothing to limit the application

---

[2] Because these facts are not subject to dispute, generally known within this Court's jurisdiction, readily determined from sources whose accuracy cannot reasonably be questioned, Cuff respectfully requests this Court to take judicial notice of news accounts of the prosecution and the Attorney General's and Secretary of Homeland Security's public statements about the multi-district investigation and prosecutions. Fed. R. Evid. 201(c)(2) ("The Court must take notice if a party requests it and the Court is supplied with the necessary information.").

of the Government's promise to Louisiana only. Indeed, the Texas AUSA's declination to seek limiting language can be fairly seen as acknowledging Louisiana's having bound Texas not to prosecute Cuff – especially where the plain language of the clause reads the Government will "not prosecute the Defendant for any other offense known to the United States Attorney's Office, based on the investigation which forms the basis of the Second Superseding Indictment."

Cuff was arrested in Texas, a Texas grand jury indicted him, and Texas provided Louisiana with the evidence "based on the investigation" for use in the Louisiana sentencing proceedings to secure a 5-point sentence enhancement. Beyond doubt, the Government knew of the Texas evidence, as it was used in Louisiana to secure a 5-point sentence enhancement.

Other cases abound where the Government used limiting language when it intended to constrain the reach of a plea agreement to one district. *E.g.*, *United States v. Hartwell,* 302 F.Supp.2d 609, 618 (E.D. Va. 2004) ("Except where specifically noted, the plea agreement binds only the United States Attorney's Office for the Eastern District of Virginia and the defendant; it does not bind any other prosecutor in any other jurisdiction."); *Elashyi*, 554 F.3d at 500 (finding Government breach of non-prosecution clause where Government brought a second prosecution arising out of facts known to the Government at the time of the plea agreement).

Third, interpreting the language as the Government suggested in the court below would subject Cuff to potentially numbers of prosecutions without finality, *e.g.*, a plea in one Federal  district leaving him exposed in all other federal districts for related, or in this instance, duplicate charges.

Fourth, like *Giglio, Carter*, and *Harvey*, many Federal Circuits have adopted the view that without limiting language like that in *Hartwell, supra*, the terms "Government" and "United States" bind all other United States Attorney's Offices. *See, e.g.,  United States v. Gebbie*, 294 F.3d 540, 550 (3d Cir. 2002) ("When a United States Attorney negotiates and contracts on behalf of 'the United States' or 'the Government' in a plea agreement for specific crimes, that attorney speaks for and binds all of his or her fellow United States Attorneys with respect to those same crimes and those same defendants); *Little v. United States*, 2010 U.S. Dist. LEXIS 110461 (S.D. Ohio Oct. 7, 2010) (because the agreement used term "United States of America" the Court found that the plea agreement entered into by the Petitioner bound the United States Attorneys in all other districts); *United States v. Van Thournout*, 100 F.3d 590, 594 (8th Cir. 1996) (holding that absent express limitation, any promises made by an AUSA in one district will bind another district); *United States v. Thomas*, 580 F.2d 1036, 1038 (10th Cir. 1978), that court cited the Fourth Circuit in *Carter* (promise of one district binds all districts).

Slightly off-point here are a line of cases originating from the Second Circuit in *United States v. Annabi*, 771 F.2d 670 (2d Cir. 1985) which appear at odds with the Government-agency binding line of cases, *supra*. These cases hold that "[a] plea agreement binds only the office of the United States Attorney for the district in which the plea is entered unless it affirmatively appears that the agreement contemplates a broader restriction." 771 F.3d at 672; *United States v. Robison*, 924 F.2d 612, 613 (6th Cir. 1991), that a plea bargain in which the "Government agree[d] . . . [t]hat the defendant [would] not be further prosecuted for any activities which arose in the Western District of Louisiana" did not clearly contemplate binding other U.S. Attorneys); *United States v. Rourke*, 74 F.3d 802 n.5 (7th Cir. 1996) (our holding is consistent with the Second Circuit which has held that "[a] plea agreement binds only the officer of the United States Attorney for the district in which the plea is entered unless it affirmatively appears that the agreement contemplates a broader restriction.").

Given the multi-district investigation and the use of Texas evidence in the Louisiana sentencing case, Cuff's agreement contemplates broader application, to include Texas, where Cuff was arrested, extradited, and evidence obtained from his computer used against him in Louisiana. Consequently, both lines of cases support the determination that Louisiana bound Texas.

Untoward about the Government's treatment of Cuff is the unnecessary secrecy and failure to be forthcoming with Governmental intentions. Prosecutors are subject to heightened ethical obligations due in part to their special position. *Berger v. United States*, 295 U.S. 78, 88 (1935) ("The United States Attorney is the representative not of an ordinary party to a controversy, but of a sovereignty whose interest, therefore, in a criminal prosecution is not that it shall win a case, but that justice shall be done.").

As representatives of the United States, prosecutors cannot lose sight that their duty is more than to be exclusively adversarial or ardent advocates. *United States v. Bagley*, 475 U.S. 667 (1985). The prosecutor:

> [M]ay prosecute with earnestness and vigor . . . But while he may strike hard blows, he is not at liberty to strike foul ones. It is as much his duty to refrain from improper methods calculated to produce a wrongful conviction as it is to use every legitimate means to bring about a just one.

*Berger,* 295 U.S. at 88.

In the context of guilty pleas, it is well-settled that prosecutors must abide by meticulous standards of fair play, transparency, and forthrightness. *Geisser v. United States*, 513 F.2d 862, 863 (5th Cir. 1975) (This "is a case of the great United States going back on its word in a plea bargain made by the Department of Justice."); *Palermo v. Warden*, 545 F.2d 286, 296 (2d Cir. 1976) ("[F]undamental fairness and public confidence in government officials require that prosecutors be

held to 'meticulous standards of both promise and performance.'") (quoting *Correale v. United States*, 479 F.2d 944, 947 (1st Cir. 1973)).

Here, the sentencing court found that Cuff had sexually abused the minor daughter of his girlfriend in Texas on videotape – something for which he received a five-level sentencing enhancement in Louisiana, resulting in a life sentence.

Although the Government may have had the right to bring the Texas prosecution initially, it clearly did not possess the legal authority to delay that prosecution knowingly and tactically, then conceal its existence from Cuff in order to secure a guilty plea in Louisiana before revealing that it had always intended to prosecute him in Texas regardless of the inducements to plead guilty the Government offered Cuff.

More problematic, the justification for seeking to seal the Texas Indictment appears disingenuous. In its December 14, 2011, (two weeks after Cuff pled guilty in Louisiana), "Motion for Leave to File [the Indictment and Related Documents] Under Seal," in the Texas case, the Government made the following misrepresentation to the district judge:

> The disclosure of the existence of the Indictment would seriously jeopardize the ability of law enforcement officers to locate the Defendant and apprehend him without incident.

ROA.265

28

This must be a distortion at a minimum, or a knowing falsification at the other end of the candor-spectrum. The Government knew at the time, on December 14, 2011, that it made this deception to the Texas district judge that Cuff was already in Federal custody in Bossier Parish, Louisiana, having been in Federal custody since his arrest in July 2011 in Texas whereafter the Government extradited him to Louisiana. What is more: the Government filed the Texas detainer at Cuff's place of confinement in Louisiana, where he had been Federal custody since July 2011. ROA.321. This begs the obvious question: if Cuff was already in Federal custody, how could unsealing the Indictment "jeopardize" the ability of law enforcement to locate and apprehend him? The simple answer is this: the Government attorneys lied in the document they filed.

Telling that the Government intended to keep the Texas Indictment from Cuff's knowledge, which is troublesome under these circumstances, is not only the fact that it moved to seal it under the false pretense that sealing was necessary to apprehend Cuff (when at all times he was already in Federal custody), but also an AUSA's having confided to NCIS that the Government knowingly kept the Texas prosecution a secret, and would continue to do so, until after Cuff's sentencing in Louisiana. ROA.1536.

The NCIS report reflects at paragraph 6 that AUSA Daniel Crumby from the Western District of Texas informed a Naval investigator that the Texas Indictment

"will remain sealed until Cuff's sentencing in March 2012 [in Louisiana] and that ***neither Cuff nor his family is aware of the second indictment***." *Id.* (emphasis added).

The constitutional problem with this Governmental gamesmanship – endeavoring to gain a conviction in one district and then prosecute in another district for the same conduct used to secure life imprisonment even in the face a non-prosecution term in the plea agreement – the Government deprived Cuff of his constitutional right to effective assistance of counsel by cloaking the Texas indictment and masking its intent to prosecute in Texas, thereby depriving Karns from advising Cuff of the full landscape of potential criminal consequences and making informed plea decisions in light of the full disclosure of information material to Cuff.

For these reasons, the Government breached the Louisiana plea agreement by bringing a 2.5-year prosecution in Texas after sentencing in Louisiana, sealing the Texas Indictment, knowingly "holding-it" per AUSA Crumby, to keep it from Cuff and his family, and suppressing its intent to prosecute in Texas all along.

Because  Karns was not able to provide this awareness (due to Government exploitation), the Government allowed Cuff's constitutional due process rights to be violated, his *Strickland* rights to be violated, his plea to be unknowing and unintelligent, thereby justifying this Court's vacating the guilty plea.

30

### C. The Government Violated Cuff's *Strickland* Rights by Concealing from Defense Counsel Information Which Prevented him from Fulfilling his Duty to Ensure Cuff's Guilty Plea was Knowing and Voluntary.

The test for determining a guilty plea's constitutionality is "whether the plea represents a voluntary and intelligent choice among the alternative courses of action open to the defendant." *North Carolina v. Alford*, 400 U.S. 25, 31 (1970); *see Boykin* v. *Alabama*, 395 U.S. 238, 242 (1969). "A plea of guilty is constitutionally valid only to the extent it is voluntary and intelligent." *Bousley v. United States*, 523 U.S. 614, 618 (1998). For the waiver of substantial trial rights to be valid under the Due Process Clause, it must be "an intentional relinquishment or abandonment of a known right or privilege." *Johnson v. Zerbst*, 304 U.S. 458, 464, (1938). A guilty plea must also be intelligent (also called "knowing"). *See Blackledge v. Allison*, 431 U.S. 63, 75 n.8 (1977); *Brady v. United States*, 397 U.S. 742, 748 (1970).

In *Strickland v. Washington*, 466 U.S. 668, 686 (1984), the Supreme Court recognized that ineffective assistance of counsel claims violate the Sixth Amendment. To succeed, a Section 2255 movant or appellant "must demonstrate that (1) counsel's representation fell below an objective standard of reasonableness and that (2) prejudice results." *Druery v. Thaler*, 647 F.3d 535, 538 (5th Cir. 2011) (citing *Bower v. Quarterman*, 497 F.3d 459, 466 (5th Cir. 2007)). Mere

disagreement about tactics does not amount to constitutional infirmity. *Strickland*, 466 U.S. at 689.

This Circuit has interpreted that *Strickland* prejudice as "a reasonable probability that except for the attorney's unprofessional errors, the results of the proceeding would have been different." *United States v. Kinsey,* 917 F.2d 181, 183 (5th Cir. 1990). In the context of a guilty plea, this Circuit articulated the effective assistance of counsel standard as:

> It is the lawyer's duty to ascertain if the plea is entered voluntarily and knowingly. He must actually and substantially assist his client in deciding whether to plead guilty. It is his job to provide the accused an "understanding of the law in relation to the facts." The advice he gives need not be perfect, but it must be reasonably competent. His advice should permit the accused to make an informed and conscious choice. In other words, if the quality of counsel's service falls below a certain minimum level, the client's guilty plea cannot be knowing and voluntary because it will not represent an informed choice. And a lawyer who is not familiar with the facts and law relevant to his client's case cannot meet that required minimal level.

*Herring v. Estelle*, 491 F.2d 125, 128 (5th Cir. 1974) (citations omitted). *See Trahan v. Estelle*, 544 F.2d 1305, 1309 (5th Cir. 1977) ("a guilty plea lacks the required voluntariness and understanding if entered on advice of counsel that fails to meet the minimum standards of effectiveness derived from the sixth and fourteenth amendments"); *Diaz v. Martin*, 718 F.2d 1372, 1378 (5th Cir. 1983).

The timing of the Texas Indictment, the Government's action to have the indictment sealed, AUSA Crumby's statement to the NCIS that the Government intended to keep the Texas prosecution from Cuff and his family until after sentencing in Louisiana, and the Government's "knowing-silence" about its intent to prosecute in Texas, deprived Cuff's counsel of information necessary to ensure the plea was knowing and voluntary, especially when the possible sentence Cuff faced included life imprisonment and his mental and physical health were deteriorating due to mefloquine poisoning. Put differently, as Karns swore in his declaration, had he known the Texas prosecution would proceed, he would ***not*** have advised Cuff to plead guilty.

Upon learning that Texas was proceeding, Karns would have entered a plea of not guilty in Louisiana, likely retained investigators to probe the Government's cases in both Louisiana and Texas and developed the expert medical evidence that Schweitzer eventually brought to the sentencing court to determine the viability of an insanity defense and/or an involuntary intoxication.

The entire landscape of the case would have changed such that Cuff would have pled not guilty by reason of insanity and defended with evidence of involuntary mefloquine intoxication, and the merits of medical evidence could be evaluated by the jury. Counsel's failures to advise Cuff fully and accurately, attributable on this question to the Government's coordinated lack of candor

between districts, were so serious as to render the proceedings unreliable and fundamentally unfair in violation of the Fifth and Sixth Amendments.

*United States v. Rumery*, 698 F.2d 764 (5th Cir. 1983), illustrates these points and supports the determination that the Government's suppression of the sealed Indictment, concealing of its intent to prosecute in Texas, and revelation of pressing the Texas case only after the guilty plea and sentence in Louisiana, deprived Cuff of the right to minimally effective counsel before entering his plea, rendering the plea uninformed and unconstitutional.

In *Rumery*, counsel unreasonably advised his client that he was facing three counts of conspiracy and 30 years imprisonment, when the Indictment contained but one count and 5 years exposure to imprisonment. 698 F.2d at 766. This Court found counsel constitutionally ineffective and the plea unconstitutional.

> This error constitutes ineffective assistance of counsel. Appellant's guilty plea, based as it was upon the erroneous expectation that it reduced his maximum potential sentence from thirty years to five years, was not knowingly and intelligently made.

*Id.*

"Where, as here, counsel has induced his client to plead guilty based on patently erroneous advice, we may find that the plea itself was involuntary and unknowing." *Id.* This Court reversed, remanded, and ordered the defendant released subject to the Government's right to retry him. *Id.* at 766-67. "We find

34

appellant's plea to have been involuntarily and unknowingly made in this case and therefore vacate his conviction." *Id*. at 767.

Like the constitutionally ineffective counsel in *Rumery*, Karns was not able to fully or accurately assess the full penalty exposure Cuff faced and incorrectly advised him because of the Government's withholding.

Also like the ineffective counsel in *Rumery* who misadvised the client of the potential criminal sanction, Karns did not advise Cuff that a 5-point enhancement applied pursuant to the Sentencing Guidelines, which, had Cuff known, he would ***not*** have pled guilty in exchange for a life sentence. The counsel in *Rumery* was ineffective for missing 25 years. Karns missed a life sentence.

Karns's patently erroneous advice is as constitutionally ineffective as counsel's was in *Rumery* if not more so, not only through Government withholdings, but also due to his own misapprehension of the penalty landscape applicable to Cuff and failure to research the sentencing guidelines as they applied to the Texas evidence introduced at sentencing in the Louisiana proceeding.

Because Karns inaccurately advised Cuff of the full criminal and penalty landscape, his plea cannot rightly be seen as knowing and intelligent. Following this Court's analysis in *Rumery*, this Court should reverse the conviction and vacate the guilty plea.

This Court in *Rumery* relied on *Cooks v. United States*, 461 F.2d 530 (5th Cir. 1972). In *Cooks*,

> [T]he defendant was indicted on six counts of transporting forged money orders across state lines. The indictment was defective because only a single trip across state lines was alleged, and a single trip across state lines can result in only one criminal charge of transporting forged securities in interstate commerce.
>
> Defendant's court appointed attorney did not recognize the indictment's infirmity. Thinking his client faced a possible sixty years in prison, rather than the actual maximum of ten, the attorney encouraged his client to plead guilty to a single count in return for dismissal of the others. This court held that defendant was entitled to withdraw his guilty plea because it was offered based upon the ineffective assistance of his counsel.

461 F.2d at 533-34.

Like the ineffective counsel in *Cooks*, Karns inaccurately informed Cuff of the criminal liability exposure he was facing before the plea. As discussed more fully above, Karns was unable to do so given the Government's secrecy and intent to proceed in Texas notwithstanding the Louisiana non-prosecution agreement and use of the Texas evidence to secure a 5-point sentence enhancement in Louisiana.

This Court's reasoning in *Cooks* applies here to reverse, remand, and authorize Cuff to withdraw his plea. Karns, through Government representations and concealments, as well as his own failure to assess the impact the Texas evidence would have had on the Louisiana sentencing case, induced his client to

plead guilty based on patently erroneous advice, and this Court should find that the plea itself was involuntary and unknowing.

As part of this Court's *Strickland* analysis, it is altogether fitting and proper to consider that Karns stated in open court during the sentencing hearing that he was not aware that the Texas conduct could result in a 5-level enhancement in Louisiana, thereby bringing the guideline sentence to life imprisonment, and that he did not advise Cuff of this exposure. The following colloquy occurred during the July 13, 2012, sentencing hearing between the Court, Schweitzer, and Karns:

> THE COURT: The five-level upward adjustment or enhancement, the CD that was just accepted into evidence, under seal, pertains to that in this particular [Texas] matter. In this instance, the adjustment appears to have support. But is there anything to be added, Schweitzer, to the written argument contained in the defense sentencing memorandum on this specific issue?

> SCHWEITZER: As to the five-level enhancement, Your Honor?

> THE COURT: Yes, sir.

> SCHWEITZER: It would be our position that my client was unaware of the possibility of that being used at the time that he entered the plea. I believe that that did come as a surprise to Cuff when he found out about that, as well as to Karns. If Karns has anything whatsoever to add, I would ask that he be heard.

> KARNS: That's accurate. That's accurate.

> THE COURT: That's a point?

> KARNS: *Yes, sir. I didn't advise him of the possibilities of a plus-five, yes*.

ROA.936. (Emphasis added).

In his declaration, Karns swore that he was aware that the prosecution would introduce the Texas evidence during sentencing in Louisiana since the arraignment in September 2011. Thinking that Cuff faced a term of imprisonment less than life, rather than the actual term of imprisonment for life, Karns encouraged Cuff to plead guilty – to a term of life. Following this Court's reasoning in *Cooks, supra*, as well as Circuit caselaw, this failure must be ineffective assistance rendering Cuff's plea unconstitutional.

Consequently, both the Government's concealment and Karn's unreasonable failure to assess the penalty exposure applicable independently, fully, and accurately to this case resulted in deprivation of Cuff's Due Process rights under both the Fifth and Sixth Amendments.

Another impact disserving Cuff attributable to the Government and Karns involves Schweitzer and Cuff's motion to withdraw his guilty plea. During sentencing, a reasonable conclusion is that the trial judge opposed, in part, the motion to withdraw the guilty plea because of the time the motion was lodged.

"In this instance, the delay in filing the motion [to withdraw the guilty plea] appears to the Court to be suspect," "the timing of it is somewhat suspicious to

me," "the delay is suspicious to me," the circumstances are what give me pause for concern," and "it is the circumstances that give rise to suspicion."

Then, the sentencing judge announced that he would have imposed life imprisonment as a "non-guideline sentence," even if the Guideline calculations did not so state.

Beyond the appearance of bias, impartiality, and even hostility (especially after having rejected repeated attempts to provide the Court with unchallenged medical expert reports and testimony during sentencing showing not only mitigation, but also giving rise to complete defenses constituting good cause to grant the motion to withdraw the guilty plea), such that the defense moved to disqualify the sentencing judge to sit for the Section 2255 motion, the lower court's approach exacerbated the Government's concealments and Karns's failures to reflect poorly on Cuff during sentencing.

As Karns swore, had the Government disclosed its intent to prosecute Cuff in Texas, he would have moved to withdraw the guilty plea before the Louisiana trial court accepted it. Fed. R. Crim. P. 11(d)(1), (d)(2) (defendant may withdraw a guilty plea "before the Court accepts the plea for any reason or no reason;" after the court accepts the plea, but before it imposes a sentence, if he "can show a fair and just reason for requesting the withdrawal.").

With the guilty plea correctly withdrawn, Cuff's Due Process and *Strickland* protections would have been observed, and the lower court's unspecified suspicions about the timing of the defense motion to withdraw the plea would have been obviated, leaving the defense in a far better light than that expressed by the sentencing judge.

All of this to say, that the Government deprived Karns of material information to properly advise Cuff can be seen as the functional equivalent of a defendant who does not possess the sufficient present ability to consult with his attorney with a reasonable degree of rational understanding (which the medical evidence, to include BOP personnel, has borne out as fact).

The resultant *Strickland* prejudice is unknowing waiver of substantial trial rights to include confrontation, jury trial, self-incrimination, complete defenses, (insanity and/or involuntary mefloquine intoxication/poisoning), and the right to be convicted by proof beyond a reasonable doubt.

Additional unfair prejudice is Cuff's conviction secured by an unconstitutional plea and a sentence to life imprisonment based on that plea grounded in patently incorrect legal advice, which, had the Government been forthcoming as is its duty when treating its citizens, Cuff would have investigated more robustly in both districts, likely arriving at the viable defense of insanity

(which has borne out not only by defense-retained medical experts, but also BOP professionals who determined Cuff incompetent). ROA.747.

For these reasons and following the Supreme Court in *Santobello* and this Circuit's caselaw, to include *Rumery* and *Cooks*, the Court should vacate Cuff's guilty plea.

## II. The District Court Erred in Finding That Cuff's Plea Breach Claim Was Procedurally Defaulted.

### A. *De Novo* Standard of Review Applied to Procedural Bars.

This Court conducts *de novo* review of questions of exhaustion and/or procedural bars in habeas proceedings. *Morris v. Dretke*, 413 F.3d 484, 491 (5th Cir. 2005).

### B. Cuff's Breach of Plea Agreement Claim is Properly Asserted in the First Instance in a § 2255 Motion.

There is no dispute that Cuff raised for the first time the breach of plea constitutional agreement claim before the lower court in his § 2255 motion. Having done so is consistent with this Circuit's caselaw which has long recognized that the procedural bar does not apply to those claims which could not have been raised on direct appeal – because they require factual development, (the district court being the better forum for witnesses and taking evidence) or are not discoverable until after appeal.

41

"Relief under 28 U.S.C. § 2255 is reserved for transgressions of constitutional rights . . . that could not have been raised on direct appeal and would, if condoned, result in a complete miscarriage of justice." *United States v. Segler*, 37 F.3d 1131, 1133 (5th Cir. 1994) (quoting *United States v. Vaughn*, 955 F.2d 367, 368 (5th Cir. 1992) (per curiam)).

This Court addressed an issue that could not have been raised on direct appeal but was properly presented in the first instance in a Section 2255 motion in *United States v. Casiano*, 929 F.2d 1046 (5th Cir. 1991). There, the Court allowed a Section 2255 movant to litigate a counsel conflict-of-interest issue that was not raised on direct appeal because the movant neither deliberately bypassed the claim nor failed to raise it to gain a tactical advantage. *Casiano*, 929 F.2d at 1051.

> Further, because Casiano 'has not deliberately bypassed the appellate process in order to gain tactical advantage,' *United States v. Caceres*, 745 F.2d 935, 936 n. 2 (5th Cir. 1984), he may assert his Sixth Amendment claim notwithstanding the fact that he failed to raise it in his direct appeal.

*Id*.

In this case, Cuff did not learn of the Government's breach of the non-prosecution clause of his plea agreement until after sentencing before the trial court. That he did not raise the issue on direct appeal was not a deliberate bypass to gain a tactical advantage pursuant to *Casiano* and *Caceres*, *supra*, and is thus properly preserved for Section 2255 review.

42

Again, this Court authorized a Section 2255 movant raising an issue for the first time after direct appeal to proceed, reasoning that the indictment's failure to charge an offense was properly raised in a Section 2255 proceeding, even where the movant pled guilty – because the error, if true, would have divested the sentencing court of jurisdiction. *United States v. Harper*, 901 F.2d 471, 472-73 (5th Cir. 1990) ("Failure to charge an offense may be raised for the first time in a § 2255 petition because such an error divests the sentencing court of jurisdiction.")

In still another instance, this Court held in *United States v. Borders*, 992 F.2d 563, 566 (5th Cir. 1993) that "[a] defendant may collaterally attack his guilty plea on the grounds of an alleged violation of the plea agreement." More to the point here, Borders did not raise his breach of plea agreement on direct appeal, rather, he raised only a single claim regarding the district court's application of the sentencing guidelines. *Borders*, 992 F.2d at 566.

After direct review, this Court reached the merits of his breach of plea agreement claim – raised in the first instance – in his Section 2255 motion. *Id*. *Borders* authorizes Cuff to bring his breach of plea agreement as a postconviction motion after direct appeals given the time he first learned of the breach.

So does *United States v. Cates*, 952 F.2d 149 (5th Cir. 1992), which counsels that a Section 2255 movant may properly raise a breach of plea claim on in collateral proceedings without having addressed the claim during direct appeal. In *Cates*, the

movant did not raise any direct appeals, but brought his Section 2255 motion years after sentencing. *Cates*, 952, F.2d at 150-51.

Cates alleged the Government breached his plea agreement in four ways. *Id*. at 152. Two matters were dismissed out-of-hand: (1) one ground failed because the Government did not agree to perform what Cates claimed; and (2) Cates did not raise his Rule 35 issue with the sentencing court below when he was able to do so before proceedings concluded. *Id*.

Still, this Court reached the merits of two Section 2255 allegations of Governmental breach: (1) comments at sentencing; and (2) recommendation of a ten-year cap. *Id*. at 152-53. The significant point: the district court and this Court upon appeal reached the merits of the breach of plea claim Cates raised, even though there was no direct appeal taken and Cates brought the breach claim in the first instance as part of a Section 2255 motion.

> It is well settled that a guilty plea based on a breached plea agreement is subject to collateral attack under the writ of habeas corpus . . . Such a plea is also necessarily subject to collateral attack under § 2255. 'A guilty plea, if induced by promises or threats which deprive it of the character of a voluntary act, is void. A conviction based upon such a plea is open to collateral attack.'

*Id*. at 151.

This Court's holding and ruling in *United States v. Allen*, 918 F.3d 457 (5th Cir. 2019), identified in this Court's certificate of appealability, does nothing to disturb these holdings, *supra*.

*Allen* was a Section 2255 case where the Court found his breach of plea agreement procedurally barred because he did not raise matters available and known to him to the sentencing court, and instead, brought them to light only later upon his postconviction motion.

The distinction: Allen had evidence available and known to him before the sentencing court that he did not raise when the sentencing court still possessed jurisdiction. The terms in Allen's agreement related to sentencing matters, and thus, as this Court reasoned, should have been brought to the attention of the sentencing judge. "But Allen failed to identify any such breach to the district court: He did not object to the PSR. Nor did he object during the sentencing hearing." *Allen*, 918 F.3d at 457.

Because Allen had the opportunity to address what he claimed to be breaches of the Government's duties in both the PSR and during the sentencing hearing, this Court determined the procedural bar applied and that Allen defaulted his constitutional Due Process claim.

By contrast, in the cases cited *supra*, the plea agreement challenges, like here, arose after sentencing. *Allen* stands for a procedural bar when the defendant

knew of the breach *before* sentencing and had an opportunity to object and create a record and did not do so resulting in procedural default.

Unlike the Section 2255 movant in *Allen*, Cuff did not know about the Government's breach *before* sentencing and in fact could not know because the Government had concealed it by sealing the Texas Indictment and by determining not to disclose its intent to prosecute in Texas. ROA.255-259. Reliance on *Allen* to resolve this specific question is therefore misplaced. *Allen* stands for a proposition inapplicable to the instant case.[3]

Applied here, the breach happened after Cuff's plea, and he did not learn of it until after sentencing and his time to create a record had expired. It is thus proper to proceed with his claim, in the first instance, in a § 2255 motion. Having done so, Cuff followed the sensible guidance that procedural rules should be aimed to induce litigants to present their contentions to the right tribunal at the right time. *Guinan v. United States*, 6 F.3d 468, 474 (7th Cir. 1993) ("[r]ules of procedure should be designed to induce litigants to present their contentions to the right tribunal at the time.").

---

[3] This Court in *Allen* continued to recognize that "[a] movant is barred from raising . . . constitutional claims for the first time on collateral review unless he demonstrates [1] cause for failing to raise the issue on direct appeal and [2] actual prejudice resulting from the error." *Id.* at 460 (citations and quotation omitted).

Finally, nowhere in the lower court's procedural bar determination were these controlling cases mentioned or applied to Cuff's constitutional Due Process claim that the Government breached the non-prosecution clause of his Louisiana plea agreement.

Therefore, the lower court erred in determining that Cuff's breach of plea agreement was procedurally defaulted. Cuff's constitutional claim was properly before the right tribunal at the right time. *Guinan*, 6 F.3d at 474.

### C. The Supreme Court's Reasoning and Holding in *Massaro v. United States* Suggests that Breach of Plea Agreements May be Raised in the First Instance in a Section 2255 Motion.

The Fifth Circuit's logic and analysis in the cases *supra* is consistent with the Supreme Court's determination that ineffective assistance of counsel claims may be brought in the first instance in a Section 2255 motion.

In *Massaro v. United States*, 538 U.S. 500, 509 (2003), the Supreme Court held that "failure to raise an ineffective assistance of counsel claim on direct appeal does not bar the claim from being brought in a later, appropriate proceeding under § 2255."

> The procedural default rule is neither a statutory nor a constitutional requirement, but it is a doctrine adhered to by the courts to conserve judicial resources and to respect the law's important interest in finality of judgments[,] . . .[w]e conclude that requiring a criminal defendant to bring ineffective assistance of counsel claims on direct appeal does not promote these objectives.

*Massaro*, 538 U.S. at 504.

The Court further reasoned, "[w]hen an ineffective assistance claim is brought on direct appeal, appellate counsel and the court must proceed on a trial record not developed precisely for the object of litigating or preserving the claim and thus often and incomplete for this purpose." *Id*.

Under the rule we adopt today, ineffective assistance of counsel claims ordinarily will be litigated in the first instance in the district court, the forum best suited to developing the facts necessary to determining the adequacy of representation during an entire trial." *Id*. at 505.

The trial record here was developed for the purposes of determining whether to accept Cuff's plea, whether to allow withdrawal of his plea, and to sentence him. By contrast, the trial record was not developed for the precise purpose of determining whether the Government breached the non-prosecution term of the plea agreement. Nor was the record developed sufficiently to determine if the Government's breach deprived Cuff of the Sixth Amendment right to effective assistance of counsel, leaving his guilty plea *not* knowing and *not* intelligent. No evidence of breach whatsoever was before the sentencing court because the breach had yet to occur.

The trial record by itself is inadequate in establishing the breach and its impact on counsel's effectiveness, or the prejudice Cuff suffered due to the

48

constitutional errors. Collateral review in the trial court below was the proper forum for assessing the performance of counsel as well as the after-sentencing acquired knowledge of Governmental breach of the non-prosecution clause.

All of this to say, like *Strickland* claims, "the better-reasoned approach" is to permit breach of plea claims to be brought in the first instance when the breach is discovered after sentencing in a timely motion in the district court under § 2255 – which is already the law in this Circuit, as demonstrated more fully above.

### D.   Cuff Demonstrated Cause and Prejudice for His not Having Raised the Constitutional Breach of Plea Claim on Direct Appeal.

"A defendant ordinarily must show that both cause for his procedural default and actual prejudice resulting from the error." *United States v. Gaudet*, 81 F.3d 585, 589 (5th Cir. 1996).

In this Circuit, where an appellant or Section 2255 movant prevails on a Sixth Amendment ineffective assistance of counsel claim, he has satisfied the "cause" and "prejudice" requirement lifting a procedural bar for having failed to raise the issue on direct appeal. *United States v. Pierce*, 959 F.2d 1297, 1301 (5th Cir. 1992) ("Pierce's ineffective assistance of counsel claims are obviously of constitutional magnitude and satisfy the cause and actual prejudice standard."); *United States v. Patten*, 40 F.3d 774, 776 (5th Cir. 1994) (per curiam) (ineffective assistance claim satisfies the cause-and-prejudice standard); *United States v.*

49

*Walling*, 982 F.2d 447, 449 (10th Cir. 1992) ("The *Strickland* ineffectiveness test dovetails naturally with the cause and prejudice standard." ).

The "cause" standard requires [a defendant] to show that 'some objective factor external to the defense' prevented him from raising on direct appeal the claim he now advances." *Romero v. Collins,* 961 F.2d 1181, 1183 (5th Cir. 1992) (quoting *Murray v. Carrier,* 477 U.S. 478, 488 (1986)).

Objective factors that constitute cause include interference by officials that makes compliance with the procedural rule impracticable, a showing that the factual or legal basis for the claim was not reasonably available to counsel at the prior occasion, and ineffective assistance of counsel in the constitutional sense. *United States v. Guerra*, 1996 U.S. App. LEXIS 24982 at *10 (5th Cir. 1996).

This Court's decision in *Allen, supra,* is informative through its contrasts with the instant case. In *Allen*, the defendant entered a plea and in exchange the Government promised to apprise the court of the extent of the defendant's cooperation in a drug case and a murder case. The PSR contained information regarding the defendant's cooperation in the drug case, but not the murder case. 918 F.3d at 458-59.

Even though Allen knew the PSR did not contain information regarding his cooperation in the murder case, he did not object to the PSR or during the sentencing hearing. *Id.* This Court determined Allen procedurally defaulted his

constitutional breach of plea claim, but not his ineffective assistance of counsel claim. *Id.* at 460. This Court reasoned that Allen knew of the breach *before* sentencing and had an opportunity to object and create a record but failed to do so, hence the procedural bar applied.

Unlike Allen, Cuff did not know about the Government's breach *before* sentencing. Cuff could not know because the Government had concealed it by sealing the Indictment, failing to correct the errant PSR entry that no other charges were pending (when the Texas Indictment was indeed pending), and never disclosing the Government's intent to robustly prosecute in Texas for conduct used in Louisiana to secure a 5-point sentence enhancement to life imprisonment. ROA.255-259.

This Circuit's caselaw holds that interference by Government officials is sufficient to establish cause to excuse a procedural default. *Johnson v. Puckett*, 176 F.3d 809, 816 (5th Cir. 1999) ("a showing of 'interference by officials' is sufficient to show cause for a procedural default"); *United States v. Olis*, 2008 U.S. Dist. LEXIS 94947, 2008 WL 5046342 (S.D. Tx. 2008) (finding cause to overcome procedural default when the defendant did not know prior to trial or on appeal about the Government interference).

Appellate counsel were aware of the Texas Indictment as well as ongoing prosecutorial efforts in Texas during the time for filing the direct appeal. But the

Fifth Circuit reviews errors only "based on the record before the district court." *United States v. Ceron*, 775 F.3d 222, 226 (5th Cir. 2014). This Court "may not consider new evidence furnished for the first time on appeal and may not consider facts which were not before the district court at the time of the challenged ruling." *Theriot v. Parish of Jefferson*, 185 F.3d 477, 491 n.26 (5th Cir. 1999) citing (*Great Plains Equip., Inc. v. Koch Gathering Sys., Inc.*, 45 F.3d 962 (5th Cir. 1995)).

The district court incorrectly found that "Cuff was aware of the Texas indictment at the time of his appeal and could have established facts in order for the Fifth Circuit to review the present claim." ROA.432. To the contrary, Cuff's time to establish the trial record for the constitutional breach of plea claim had passed when he learned of the Due Process deprivation. Therefore, Cuff could not have properly raised the issue during direct appeal because of the Government's actions, which establishes sufficient "cause."

As for prejudice, Cuff has lost the opportunity to obtain a ruling from the district court on the merits of his Fifth and Sixth Amendment claims due to no fault of his own. He is serving a life sentence as a mentally disabled veteran declared incompetent by BOP medical personnel with a bleak overall health prognosis. The Government moved to dismiss the Texas Indictment, not to discharge its Due Process and contractual duties to Cuff based on the Louisiana non-prosecution

clause, but because BOP personnel, (and several other medical professionals retained by the Cuff family), determined Cuff legally incompetent.

Had the lower court conducted an evidentiary hearing, as it should have, and reached the merits of Cuff's Fifth and Sixth Amendment claims, relief would likely have been apparent. "A motion brought under 28 U.S.C. § 2255 can be denied without a hearing only if the motion, files, and records of the case conclusively show that the prisoner is entitled to no relief." *United States v. Cavitt*, 559 F.3d 430, 442 (5th Cir. 2008).

Accordingly, the lower court erred in determining that Cuff had neither "cause" nor "prejudice" to proceed on his constitutional breach of plea claim brought as part of his Section 2255 motion below. He had both.

## CONCLUSION

In *United States v. Taylor*, 77 F.3d 368, 371-72 (11th Cir. 1996), the Court noted upon finding Governmental breach of the plea agreement, the Court had the discretion to leave the plea in place and remand for sentencing before a different trial judge or permit the Appellant to withdraw his plea. The Court chose to allow Appellant to withdraw his plea based on the breach. *Taylor*, 77 F.3d. at 372.

> In closing we note that, for better or worse, plea bargains have become an essential part of our criminal justice system. It is in the best interests of the government, as well as the system as a whole, that defendants be able to count on the government keeping the promises it makes

> in order to secure guilty pleas. Those broader interests, as well as each individual defendant's interest in receiving the benefit of his bargain, require that courts stand ready and willing to hold the government to its promises.

*Id*.

The Government's secrecy, misrepresentations, lack of full disclosure, failure to correct the PSR, concealing of information which prevented counsel from discharging his *Strickland* duties, and breach of the plea agreement deprived Cuff of Due Process and Sixth Amendment protections, which thereby rendered his plea of guilty to life imprisonment unconstitutional as neither knowing nor intelligent.

For these reasons, Cuff respectfully requests this Court to hold the Government to its promises, its sacrosanct duty to honor Due Process, and authorize Cuff to withdraw the guilty plea. Specific performance is not an appropriate remedy because the Government already prosecuted Cuff for 2.5 years in Texas.

Date: January 7, 2022

*/s/* **John N. Maher**
John N. Maher
MAHER LEGAL SERVICES PC
17101 71st Avenue
Tinley Park, Illinois 60477
Tel: (708) 468-8155
Fax: (708) 781-9693
john@maherlegalservices.com
kevin@maherlegalservices.com

*Attorneys for Defendant-Appellant*

54

## CERTIFICATE OF SERVICE

I hereby certify that on January 7, 2022, I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Fifth Circuit by using the appellate CM/ECF system. Participants in the case who are registered CM/ECF users will be served by the appellate CM/ECF system.

Date: January 7, 2022

*/s/* **John N. Maher**
John N. Maher
MAHER LEGAL SERVICES PC
17101 71st Avenue
Tinley Park, Illinois 60477
Tel: (708) 468-8155
Fax: (708) 781-9693
john@maherlegalservices.com
kevin@maherlegalservices.com

*Attorneys for Defendant-Appellant*

## CERTIFICATE OF COMPLIANCE

Pursuant to Fed. R. App. P. 32(a)(7)(C), I certify that:

This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because this brief contains 12,038 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionately spaced typeface using Times New Roman 14-point font.

Date: January 7, 2022

*/s/* **John N. Maher**
John N. Maher
MAHER LEGAL SERVICES PC
17101 71st Avenue
Tinley Park, Illinois 60477
Tel: (708) 468-8155
Fax: (708) 781-9693
john@maherlegalservices.com
kevin@maherlegalservices.com

*Attorneys for Defendant-Appellant*